# EXHIBIT 1

**Int. Cl.: 42**

**Prior U.S. Cl.: 101**

**Reg. No. 1,443,606**

# United States Patent and Trademark Office

**Registered June 16, 1987**

## SERVICE MARK
## PRINCIPAL REGISTER

## PICK 'N SAVE

ROUNDY'S INC. (WISCONSIN CORPORATION)
11300 WEST BURLEIGH ST.
MILWAUKEE, WI 53222

FOR: RETAIL GROCERY STORE SERVICES, IN CLASS 42 (U.S. CL. 101).

FIRST USE 2-2-1957; IN COMMERCE 2-2-1957.

SUBJECT TO CONCURRENT USE PROCEEDING WITH NATIONAL MERCHANDISE CO. APPLICANT CLAIMS EXCLUSIVE USE FOR THE ENTIRE COUNTRY EXCEPT FOR THE STATES OF FLORIDA, GEORGIA, NORTH CAROLINA, SOUTH CAROLINA, VIRGINIA, ALABAMA, MISSISSIPPI, LOUISIANA AND TEXAS.

OWNER OF U.S. REG. NO. 1,049,869.

SER. NO. 430,780, FILED 6-17-1983.

JAMES H. JOHNSON, EXAMINING ATTORNEY

# EXHIBIT 2





ROUNDY'S®

Roundy's Supermarkets, Inc., (Roundy's) is a leading grocer in the Midwest. Roundy's is a wholly-owned subsidiary of the Kroger Co. (NYSE:KR), located in Cincinnati, Ohio. Founded in Milwaukee in 1872, Roundy's operates over 150 retail grocery stores under the Pick 'n Save, Copps, Metro Market and Mariano's retail banners in Wisconsin and Illinois. The two largest banners are Pick 'n Save, with over 100 locations throughout the State of Wisconsin, and Mariano's, with over 40 locations throughout the Chicagoland area.

If you are looking for any of the following, please click on the appropriate logo below to visit the retail website:
Store Team Member Careers • Roundy's Brand Products • Contact Us • Giving Back

For our employees,
click here:

One ROUNDY'S®

For Roundy's corporate, store management,
commissary and distribution careers,
click here:

# EXHIBIT 3

# Store Locator

Search Stores...

Enter your postal code to find a store near you.

1 **Pic-N-Sav - Andalusia**
550 Western Bypass
Andalusia, AL 36420

**Store Services:**

**Hours:**
Mon - Sun: 6am - 10pm

Pickup Services: 7am - 7pm

**Phone:**
Phone: (334) 222-1804

Pickup Service: (334) 428-3031

**Make This My Store**

Start Shopping
View Current Ad
Get Directions
About Us

2 **Pic-N-Sav - Evergreen**
320 West Front Street
Evergreen, AL 36401

**Hours:**
Mon - Sun: 6am - 10pm

**Phone:**
Phone: (251) 578-3844

**Make This My Store**

View Current Ad
Get Directions
About Us

3 **Pic-N-Sav - Crestview**
310 West James Lee Boulevard
Crestview, FL 32536

**Hours:**
Mon - Sun: 6am - 10 pm

**Phone:**
Phone: (850) 398-6916

**Make This My Store**

View Current Ad
Get Directions
About Us

4 **Pic-N-Sav - Columbia**
1110 Mississippi 13
Columbia, MS 39429

**Hours:**
Mon - Sun: 6am - 10pm

**Phone:**
Phone: (601) 736-5191

**Make This My Store**

View Current Ad
Get Directions
About Us

5 **Pic-N-Sav - Brewton**
2135 Douglas Avenue
Brewton, AL 36426

**Hours:**
Mon - Sun: 6am - 10pm

**Phone:**
Phone: (251) 867-7751

**Make This My Store**

View Current Ad
Get Directions
About Us

6 **Pic-N-Sav - Bainbridge**
1614 East Shotwell Street
Bainbridge, GA 39819

**Hours:**
Mon - Sun: 7am - 10pm

**Phone:**
Phone: (229) 248-0832

**Make This My Store**

View Current Ad
Get Directions
About Us

7 **Pic-N-Sav - Albany**
2203 East Oglethorpe Boulevard
Albany, GA 31705

**Hours:**
Mon - Sun: 8am - 9pm

**Phone:**
Phone: (229) 432-7859

**Make This My Store**

View Current Ad
Get Directions
About Us

# EXHIBIT 4

| | |
|---|---|
| **To:** | Re-Marketing Group, Inc. (gregremarketing@aol.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 85590566 - PIC 'N' SAVE BARGAINS.CLOSEOUTS - N/A |
| **Sent:** | 7/23/2012 1:45:18 PM |
| **Sent As:** | ECOM106@USPTO.GOV |
| **Attachments:** | Attachment - 1<br>Attachment - 2<br>Attachment - 3<br>Attachment - 4<br>Attachment - 5<br>Attachment - 6 |

**UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)**
**OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION**

**APPLICATION SERIAL NO.** 85590566

**MARK**: PIC 'N' SAVE BARGAINS.CLOSEOUTS

*85590566*

**CORRESPONDENT ADDRESS**:
RE-MARKETING GROUP, INC.
RE-MARKETING GROUP, INC.
3237 GARFIELD AVE
COMMERCE, CA 90040-3219

**CLICK HERE TO RESPOND TO THIS LETTER:**
**http://www.uspto.gov/trademarks/teas/response_forms.jsp**

**APPLICANT**: Re-Marketing Group, Inc.

**CORRESPONDENT'S REFERENCE/DOCKET NO** :
N/A
**CORRESPONDENT E-MAIL ADDRESS**:
gregremarketing@aol.com

***OFFICE ACTION***

## STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE: 7/23/2012**

**TEAS PLUS APPLICANTS MUST SUBMIT DOCUMENTS ELECTRONICALLY OR SUBMIT FEE:** Applicants who filed their application online using the reduced-fee TEAS Plus application must continue to submit certain documents online using TEAS, including responses to Office actions. *See* 37 C.F.R. §2.23(a)(1). For a complete list of these documents, see TMEP §819.02(b). In addition, such applicants must accept correspondence from the Office via e-mail throughout the examination process and must maintain a valid e-mail address. 37 C.F.R. §2.23(a)(2); TMEP §§819, 819.02(a). TEAS Plus applicants who do not meet these requirements must submit an additional fee of $50 per international class of goods and/or services. 37 C.F.R. §2.6(a)(1)(iv); TMEP §819.04. In appropriate situations and where all issues can be resolved by amendment, responding by telephone to authorize an examiner's amendment will not incur this additional fee.

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

EXHIBIT
143

**SECTION 2(d) REFUSAL – LIKELIHOOD OF CONFUSION**

Registration of the applied-for mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 1443606. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.* See the enclosed registration.

Trademark Act Section 2(d) bars registration of an applied-for mark that so resembles a registered mark that it is likely that a potential consumer would be confused or mistaken or deceived as to the source of the goods and/or services of the applicant and registrant. *See* 15 U.S.C. §1052(d). The court in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973) listed the principal factors to be considered when determining whether there is a likelihood of confusion under Section 2(d). *See* TMEP §1207.01. However, not all the factors are necessarily relevant or of equal weight, and any one factor may be dominant in a given case, depending upon the evidence of record. *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1355, 98 USPQ2d 1253, 1260 (Fed. Cir. 2011); *In re Majestic Distilling Co.*, 315 F.3d 1311, 1315, 65 USPQ2d 1201, 1204 (Fed. Cir. 2003); *see In re E. I. du Pont*, 476 F.2d at 1361-62, 177 USPQ at 567.

In this case, the following factors are the most relevant: similarity of the marks, similarity of the goods and/or services, and similarity of trade channels of the goods and/or services. *See In re Dakin's Miniatures Inc.* , 59 USPQ2d 1593 (TTAB 1999); TMEP §§1207.01 *et seq.*

In a likelihood of confusion determination, the marks are compared for similarities in their appearance, sound, meaning or connotation, and commercial impression. *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973); TMEP §1207.01(b)-(b)(v). Similarity in any one of these elements may be sufficient to find the marks confusingly similar. *In re White Swan Ltd.*, 8 USPQ2d 1534, 1535 (TTAB 1988); *see In re 1st USA Realty Prof'ls, Inc.* , 84 USPQ2d 1581, 1586 (TTAB 2007); TMEP §1207.01(b).

In the present instance, the proposed mark is PIC 'N' SAVE BARGAINS CLOSEOUTS in which the terms BARGAINS and CLOSEOUTS are required to be disclaimed for retail discount store services in the field of general consumer merchandise and the registered mark is PICK 'N SAVE for retail grocery store services. The proposed mark and the registered mark share the common significant phonetic equivalent phrase PIC(K) N SAVE. Furthermore, the services offered by the registrant and applicant are related.

When comparing marks, the test is not whether the marks can be distinguished in a side-by-side comparison, but rather whether the marks are sufficiently similar in their entireties that confusion as to the source of the goods and/or services offered under applicant's and registrant's marks is likely to result. *Edom Labs., Inc. v. Lichter*, 102 USPQ2d 1546, 1551 (TTAB 2012); *L'Oreal S.A. v. Marcon* , 102 USPQ2d 1434, 1438 (TTAB 2012); TMEP §1207.01(b). The focus is on the recollection of the average purchaser, who normally retains a general rather than specific impression of trademarks. *L'Oreal S.A. v. Marcon* , 102 USPQ2d at 1438; *Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106, 108 (TTAB 1975); TMEP §1207.01(b).

Consumers are generally more inclined to focus on the first word, prefix or syllable in any trademark or service mark. *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F. 3d 1369, 1372, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005); *see also Mattel Inc. v. Funline Merch. Co.*, 81 USPQ2d 1372, 1374-75 (TTAB 2006); *Presto Prods., Inc. v. Nice-Pak Prods., Inc.*, 9 USPQ2d 1895, 1897 (TTAB 1988) ("it is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered" when making purchasing decisions).

Although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression. *See In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed. Cir. 1985); TMEP §1207.01(b)(viii), (c)(ii). Disclaimed matter is typically less significant or less dominant when comparing marks. *See In re Dixie Rests., Inc.*, 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997); *In re Nat'l Data Corp.*, 753 F.2d 1056, 1060, 224 USPQ 749, 752 (Fed. Cir. 1985); TMEP §1207.01(b)(viii), (c)(ii).

The services of the parties need not be identical or directly competitive to find a likelihood of confusion. *See Safety-Kleen Corp. v. Dresser Indus., Inc.*, 518 F.2d 1399, 1404, 186 USPQ 476, 480 (C.C.P.A. 1975); TMEP §1207.01(a)(i). Rather, it is sufficient to show that because of the conditions surrounding their marketing, or because they are otherwise related in some manner, the goods and/or services would be encountered by the same consumers under circumstances such that offering the goods and/or services under confusingly similar marks would lead to the mistaken belief that they come from, or are in some way associated with, the same source. *In re Iolo Techs., LLC*, 95 USPQ2d 1498, 1499 (TTAB 2010); *see In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 1566-68, 223 USPQ 1289, 1290 (Fed. Cir. 1984); TMEP §1207.01(a)(i).

Accordingly, the registration is refused under Section 2(d).

Although the trademark examining attorney has refused registration, applicant may respond to the refusal to register by submitting evidence and arguments in support of registration. If applicant chooses to respond to the refusal(s) to register, then applicant must also respond to the following requirement(s).

**Informalities**

The applicant must respond to the following requirement(s).

**DISCLAIMER REQUIRED**

Applicant must disclaim the descriptive wording "BARGAINS" and "CLOSEOUTS" apart from the mark as shown because it merely describes an ingredient, quality, characteristic, function, feature, purpose or use of applicant's services. *See* 15 U.S.C. §§1052(e)(1), 1056(a); *In re Steelbuilding.com*, 415 F.3d 1293, 1297, 75 USPQ2d 1420, 1421 (Fed. Cir. 2005); *In re Gyulay*, 820 F.2d 1216, 1217-18, 3 USPQ2d 1009, 1010 (Fed. Cir. 1987); TMEP §§1213, 1213.03(a).

Specifically, the terms "BARGAINS" and "CLOSEOUTS" are merely descriptive of a feature or characteristic of the retail discount stores as described by the applicant in the identification of services. The term BARGAIN is defined as something obtained at a good price, esp. if it is worth more than what was given in exchange and the term CLOSEOUT is defined as a sale of goods at low prices because the store is closing or because the line of goods will be discontinued. Please see attached dictionary definitions.

Applicant may submit the following standardized format for a disclaimer:

**No claim is made to the exclusive right to use "BARGAINS" and "CLOSEOUTS" apart from the mark as shown.**

TMEP §1213.08(a)(i); *see In re Owatonna Tool Co.*, 231 USPQ 493 (Comm'r Pats. 1983).

A "disclaimer" is a statement that applicant does not claim exclusive rights to an unregistrable component of a mark; it does not affect the appearance of the mark. TMEP §1213. An unregistrable component of a mark includes wording and designs that are merely descriptive of the services, and is wording or an illustration that others would need to use to describe or show their goods and services in the marketplace. 15 U.S.C. §1052(e); *see* TMEP §§1209.03(f), 1213.03 *et seq*.

A disclaimer does not physically remove the disclaimed matter from the mark, but rather is a written statement that applicant does not claim exclusive rights to the disclaimed wording and/or design separate and apart from the mark as shown in the drawing. TMEP §§1213, 1213.10.

The following cases further explain the disclaimer requirement: *Dena Corp. v. Belvedere Int'l Inc* ., 950 F.2d 1555, 21 USPQ2d 1047 (Fed. Cir. 1991); *In re Brown-Forman Corp.*, 81 USPQ2d 1284 (TTAB 2006); *In re Kraft, Inc.*, 218 USPQ 571 (TTAB 1983).

**Response Guidelines**

For this application to proceed toward registration, applicant must explicitly address each refusal and/or requirement raised in this Office action. If the action includes a refusal, applicant may provide arguments and/or evidence as to why the refusal should be withdrawn and the mark should register. Applicant may also have other options for responding to a refusal and should consider such options carefully. To respond to requirements and certain refusal response options, applicant should set forth in writing the required changes or statements.

If applicant does not respond to this Office action within six months of the issue/mailing date, or responds by expressly abandoning the application, the application process will end, the trademark will fail to register, and the application fee will not be refunded. *See* 15 U.S.C. §1062(b); 37 C.F.R. §§2.65(a), 2.68(a), 2.209(a); TMEP §§405.04, 718.01, 718.02. Where the application has been abandoned for failure to respond to an Office action, applicant's only option would be to file a timely petition to revive the application, which, if granted, would allow the application to return to live status. *See* 37 C.F.R. §2.66; TMEP §1714. There is a $100 fee for such petitions. *See* 37 C.F.R. §§2.6, 2.66(b)(1).

**Advisory – Persons Who Can Sign Responses**

Responses to Office actions must be properly signed. *See* 37 C.F.R. §§2.62(b), 2.193(e)(2); TMEP §§712, 712.01. Where an applicant is represented by an attorney, the attorney must sign the response. 37 C.F.R. §2.193(e)(2)(i); TMEP §§611.03(b), 712.01. The only attorneys who may sign responses and otherwise practice before the USPTO in trademark matters are (1) attorneys in good standing with a bar of the highest court of any U.S. state, the District of Columbia, Puerto Rico, and other federal territories and possessions of the United States; and (2) Canadian agents/attorneys who represent applicants located in Canada and (a) are registered with the USPTO and in good standing as patent agents or (b) have been granted reciprocal recognition by the USPTO. *See* 37 C.F.R. §§2.17(e), 2.62(b), 11.1, 11.5(b)(2), 11.14(a), (c); TMEP §§602, 712.01. Attorneys who fail to meet these requirements, as well as non-attorneys, are generally not permitted to represent applicants in trademark matters before the USPTO; and thus, they may not sign responses. *See* 5 U.S.C. §500(b), (d); 37 C.F.R. §11.14(a)-(c), (e); TMEP §§602, 602.02, 608.01.

Where an applicant is represented by an attorney, and then later retains a different attorney from a different firm, the newly retained attorney may not sign responses until applicant files a new power and/or revocation of attorney. *See* 37 C.F.R. §2.18(a)(7); TMEP §604.03.

Where an applicant is not represented by an attorney, the response must be signed by the individual applicant or someone with legal authority to bind a juristic applicant (e.g., a corporate officer or general partner). *See* 37 C.F.R. §2.193(e)(2)(ii); TMEP §§611.03(b), 611.06 *et seq.*, 712.01. In the case of joint applicants, all must sign. 37 C.F.R. §2.193(e)(2)(ii); TMEP §611.06(a).

/Sally Shih/
Sally Shih
Trademark Examining Attorney
Law Office 106
571-272-9712
sally.shih@uspto.gov

**TO RESPOND TO THIS LETTER:** Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp. Please wait 48-72 hours from the issue/mailing date before using TEAS, to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov. For questions about the Office action itself, please contact the assigned trademark examining attorney. **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using Trademark Applications and Registrations Retrieval (TARR) at http://tarr.uspto.gov/. Please keep a copy of the complete TARR screen. If TARR shows no change for more than six months, call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/teas/eTEASpageE.htm.

Wordsmyth
The Premier Educational Dictionary - Thesaurus

Sign In | Sign Up

Feedback / About

Return to old site | Search Tools | Puzzle Solvers | Glossary Maker | Quiz Makers | My Activities

Support Us
Learn how to donate and remove ads.

bargain Go

Beginner's Dictionary
Children's Dictionary
Advanced Dictionary

Alphabetical Results

Multi-Word Results | Similar Spellings

Advanced Dictionary
See this entry in the Children's Dictionary
or in the Beginner's Dictionary

Use old dictionary format
Browse in wordlist
Show more results

## bar·gain

**pronunciation:** bar gən

**parts of speech:** noun, intransitive verb, transitive verb

**phrases:** into the bargain, in the bargain, bargain on, bargain for

**part of speech:** noun

**definition 1:** an agreement that contains the terms of a transaction or exchange.

synonyms: agreement, deal
similar words: arrangement, compact, contract, exchange, pact, understanding

**definition 2:** whatever is obtained as the result of such an agreement.

synonyms: barter, buy, truck
similar words: commodity, exchange, goods, purchase, services

**definition 3:** something obtained at a good price, esp. if it is worth more than what was given in exchange.

synonyms: steal
antonyms: ripoff

**related words:** barter, buy, find, haggle, treaty

**phrase:** into the bargain




**phrase:** in the bargain

**part of speech:** intransitive verb

**inflections:** bargained, bargaining, bargains

**definition 1:** to talk over the terms of a transaction or exchange; negotiate.

synonyms: chaffer, dicker, haggle, negotiate
similar words: confer, deliberate

**definition 2:** to decide the terms of a transaction or exchange; make a bargain.

similar words: agree, contract, decide, settle

**related words:** barter, deal, exchange, haggle

**part of speech:** transitive verb

**definition:** to give in exchange for; trade.
*She bargained her horse for a pony.*

synonyms: barter, exchange, swap, trade
similar words: switch, truck

**related words:** barter

**phrase:** bargain on

**phrase:** bargain for

**derivation:** bargainer (n.)

Word Explorer

See
advertise, advertisement, business




 ©2012 Wordsmyth

http://www.wordsmyth.net/?level=3&ent=closeout 07/23/2012 01:20:42 PM

**Wordsmyth**
The Premier Educational Dictionary - Thesaurus

Sign In | Sign Up

Feedback / About

Return to old site | Search Tools | Puzzle Solvers | Glossary Maker | Quiz Makers | My Activities

**Support Us**
Learn how to donate and remove ads.

closeout Go

- Beginner's Dictionary
- Children's Dictionary
- Advanced Dictionary

Alphabetical Results

Multi-Word Results | Similar Spellings

**Advanced Dictionary**

Use old dictionary format
Browse in wordlist

## close·out

**pronunciation:** kloz aUt

**part of speech:** noun

**definition:** a sale of goods at low prices because the store is closing or because the line of goods will be discontinued.









 ©2012 Wordsmyth

**Print: Jul 23, 2012** **73430780**

**TYPED DRAWING**

**Serial Number**
73430780

**Status**
REGISTERED AND RENEWED

**Word Mark**
PICK 'N SAVE

**Standard Character Mark**
No

**Registration Number**
1443606

**Date Registered**
1987/06/16

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(1) TYPED DRAWING

**Owner**
ROUNDY'S SUPERMARKETS, INC. CORPORATION 875 EAST WISCONSIN AVENUE P. O. BOX 473 MILWAUKEE WISCONSIN 532010473

**Goods/Services**
Class Status -- ACTIVE. IC 042. US 101. G & S: Retail Grocery Store Services. First Use: 1957/02/02. First Use In Commerce: 1957/02/02.

**Concurrent Use Statement**
SUBJECT TO CONCURRENT USE PROCEEDING WITH NATIONAL MERCHANDISE CO.. APPLICANT CLAIMS EXCLUSIVE USE FOR THE ENTIRE COUNTRY EXCEPT FOR THE STATES OF FLORIDA, GEORGIA, NORTH CAROLINA, SOUTH CAROLINA, VIRGINIA, ALABAMA, MISSISSIPPI, LOUISIANA AND TEXAS.

**Prior Registration(s)**
1049869

**Filing Date**
1983/06/17

**Examining Attorney**

UNKNOWN

**Attorney of Record**
Nicole J. Renouard

| | |
|---|---|
| **To:** | Re-Marketing Group, Inc. (gregremarketing@aol.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 85590566 - PIC 'N' SAVE BARGAINS.CLOSEOUTS - N/A |
| **Sent:** | 7/23/2012 1:45:19 PM |
| **Sent As:** | ECOM106@USPTO.GOV |
| **Attachments:** | |

# IMPORTANT NOTICE REGARDING YOUR TRADEMARK APPLICATION

**Your trademark application (Serial No. 85590566) has been reviewed. The examining attorney assigned by the United States Patent and Trademark Office ("USPTO") has written a letter (an "Office Action") on 7/23/2012 to which you must respond. Please follow these steps:**

**1. Read** the Office letter by clicking on this **link** **OR** go to **http://tmportal.uspto.gov/external/portal/tow** and enter your serial number to **access** the Office letter.

**PLEASE NOTE**: The Office letter may not be immediately available but will be viewable within 24 hours of this e-mail notification.

**2. Respond** within 6 months, calculated from **7/23/2012** (*or sooner if specified in the Office letter*), using the Trademark Electronic Application System **Response to Office Action form.** If you have difficulty using the USPTO website, contact TDR@uspto.gov.

**3. Contact** the examining attorney who reviewed your application with any questions about the content of the office letter:

/Sally Shih/
Sally Shih
Trademark Examining Attorney
Law Office 106
571-272-9712
sally.shih@uspto.gov

## WARNING

**Failure to file any required response by the applicable deadline will result in the ABANDONMENT of your application.**
**Do NOT hit "Reply" to this e-mail notification, or otherwise attempt to e-mail your response, as the USPTO does NOT accept e-mailed responses. Instead, please use the Trademark Electronic Application System Response to Office Action form.**

# EXHIBIT 5

Learn More

# ABOUT US

## Who we are

Re-Marketing Group was founded in 2007 by a former independent grocer who, since the early 1980's, bought and sold issue-oriented products through the family grocery stores in Southern California. They bought everything from soup

to nuts, and drove the competition, well, bananas. Truckloads of this, pallets of that, they bought anything and everything. Leftover Halloween merchandise in November, Christmas merchandise on Valentine's Day, a dropped pallet here, a truckload there. Nothing ever went to waste, continually adding value for all.

Some 36 years later, and now a wholesale only operation, that is still our founding principle - adding value for all concerned. Adding value by buying and remarketing underused or unused assets to an ever-growing group of buyers all across the USA, Canada, Mexico and South America.

We are still Southern California based, but we now pick up and warehouse all across the country and from there proudly service some of the smallest retailers you have never heard of. We help keep their business in business. We figure the big guys get their share so we don't shop for them, but rather stick to our roots - the little guy.

> *Groceries.Juices.Drinks.Water.Confection.Frozen.Deli.*
> *Meat.Bakery.Produce.Ingredients.Institutional.Bulk food.*
> *General Merchandise.Seasonal.Apparel.Health & Beauty - Sporting Goods.Toys.Hardware.Tools.Housewares*
> *Electronics. Equipment. Scrap. Metal. Wood. Paper - Overstocks. Discontinuance. Dating issues. Shelf pulls*
> *Abandonment. Theft recovery. Damage. Fire. Flood.*

## We give back

In 2015 our team donated approximately 500,000 lbs. of cereal, vegetables, juices, granola bars and other products to those in need.

**Our preferred local charity is:**

Heart of Compassion

c/o Pastor Eric Tietze

www.heartofcompassionca.org

323.727.7997

We also supported Toys for Tots, The Breast Cancer Foundation, The Ride for Rwanda, The Wounded Warrior Project, Olive Crest Home, The Los Angeles Police Department and many, many others. For additional details on any of these great charities, feel free to contact us.

## Payment partners

American Express, Visa, Mastercard, Paypal, Applepay, cold hard cash

# CONTACT US

Offices/Warehouse/Showroom

3237 Garfield Ave

Commerce CA 90040

greg@rmgdeals.com

OFFICE
**323.888.0880**
FAX
**323.888.0990**

Copyright © 2016 Re-Marketing Group.

All trademarks, service marks, trade names, trade dress, product names and logos appearing on the site are the property of their respective owners, including in some instances RMG Inc. Any rights not expressly granted herein are reserved.

Home Services Clients Team Inventory Contact

Learn More

# ABOUT US

## Who we are

Re-Marketing Group was founded in 2007 by a former independent grocer who, since the early 1980's, bought and sold issue-oriented products through the family grocery stores in Southern California. They bought everything from soup

to nuts, and drove the competition, well, bananas. Truckloads of this, pallets of that, they bought anything and everything. Leftover Halloween merchandise in November, Christmas merchandise on Valentine's Day, a dropped pallet here, a truckload there. Nothing ever went to waste, continually adding value for all.

Some 36 years later, and now a wholesale only operation, that is still our founding principle - adding value for all concerned. Adding value by buying and remarketing underused or unused assets to an ever-growing group of buyers all across the USA, Canada, Mexico and South America.

We are still Southern California based, but we now pick up and warehouse all across the country and from there proudly service some of the smallest retailers you have never heard of. We help keep their business in business. We figure the big guys get their share so we don't shop for them, but rather stick to our roots - the little guy.

> *Groceries.Juices.Drinks.Water.Confection.Frozen.Deli.*
> *Meat.Bakery.Produce.Ingredients.Institutional.Bulk food.*
> *General Merchandise.Seasonal.Apparel.Health & Beauty - Sporting Goods.Toys.Hardware.Tools.Housewares*
> *Electronics. Equipment. Scrap. Metal. Wood. Paper - Overstocks. Discontinuance. Dating issues. Shelf pulls*
> *Abandonment. Theft recovery. Damage. Fire. Flood.*

## We give back

In 2015 our team donated approximately 500,000 lbs. of cereal, vegetables, juices, granola bars and other products to those in need.

**Our preferred local charity is:**

Heart of Compassion

c/o Pastor Eric Tietze

www.heartofcompassionca.org

323.727.7997

We also supported Toys for Tots, The Breast Cancer Foundation, The Ride for Rwanda, The Wounded Warrior Project, Olive Crest Home, The Los Angeles Police Department and many, many others. For additional details on any of these great charities, feel free to contact us.

## Payment partners

American Express, Visa, Mastercard, Paypal, Applepay, cold hard cash

# CONTACT US

Offices/Warehouse/Showroom

3237 Garfield Ave

Commerce CA 90040

greg@rmgdeals.com

OFFICE
**323.888.0880**
FAX
**323.888.0990**

Copyright © 2016 Re-Marketing Group.

All trademarks, service marks, trade names, trade dress, product names and logos appearing on the site are the property of their respective owners, including in some instances RMG Inc. Any rights not expressly granted herein are reserved.

# OUR RE - MARKETPLACE

Our customer list is made up 100's of discounters, salvage outlets, dollar stores, ethnic inner city independent stores, candy outlets, pinata stores, catering houses, flea market/swapmeet vendors, online sellers, garage sale marketers and many more comprising 1000's of outlets. Additionally, we also directly or indirectly sell to food pantrys, food banks, correctional institutions, school systems, day care centers and more.




## We realize you have a choice

Our dedicated team of professionals have over 70 years of hands-on experience in the grocery/off-price/close-out/liquidation/salvage industries. Whether buying or selling, our goal is to save you time and money with timely responses, creative thinking, and profitable solutions.

# Services for secondary market retailers and wholesalers

With purchasing expertise since 1982 you can always depend on us for the latest and greatest deals and offerings.

- Targeted email offerings
- Free to join - Easy to register, simpler to save
- Buy the case, layer, pallet or truckload
- Gourmet food lots
- Manifested grocery pallets/loads
- Banana box groceries
- Case lot Health and Beauty
- Manifested GM and HBC pallets
- Private label continuity access
- Access to one of the largest IN STOCK inventories of factory case, name brand grocery closeouts on the west coast and much more.

# Services for manufacturers, retailers, wholesalers, importers and distributors

# OVERVIEW

We are one of the largest in-stock, value-priced grocery and related redistributor on the west coast. At any given time we will have 100's of sku's on 1000's of pallets on hand. Despite that, we are ALWAYS open to buy.

# EXPERIENCE

A team with over 70 years of hands on, practical knowledge in the wholesale and retail sector with a dedicated focus in the secondary market.

# SPEED AND SKILL

Buyers that know the categories and products, sales personnel that know the marketplace adds up to a quicker, cleaner transaction.

# ASSET RECOVERY/COMPARABLE ITEMS

We pick up product all across the country using one of the nation's largest logistics companies saving you time and money. We have a vast database of previously purchased items that allows you access to comparable pricing, trends and supply in the marketplace and more.

# PRODUCT PLACEMENT

Our breadth of buyers avoids channel conflicts, trade disruptions and other concerns. Our current, largest domestic customer has but 15 stores. We have active customers in Canada, Mexico and South America.



# CASE STUDIES

**Water**. A leading national water manufacturer came to us with a production problem where the UPC's on the 6 pack of bottles and the case were identical. The 6 pack would scan for the price of a case, or worse yet, the case for the price of a 6 pack. A huge problem for them and for their traditional retailers. Using our broad base of customers, we were able to sell the water to secondary market and catering outlets that do not scan.

**Pet food**. A major pet food supplier came to us with 50,000 cases of branded pet food that they wanted re-marketed from their warehouses across the country, with the added caveat that it end up in no "majors" in any retail format. Using a broad database we were able to place all 50,000 cases without any market disruption.

# Services for insurers, warehouses, transport companies

## OVERVIEW

Professional staff with expertise in the salvage and liquidation industry having bought and re-marketed a large variety of products. We have bought and sold food products, perishables, bulk commodities and raw materials, household goods, fabrics, furnishings, carpeting, electronics as well as industrial equipment, machinery, lumber, plastics, metals and scrap, commercial paper and pulp.

## EXPERIENCE

Nearly 40 years working with insurance companies, adjusters, surveyors, major railroads, freight carriers, shippers, and forwarders. Temperature variations, quality control issues, fire, flood/water

damage, derailments and other shipping accidents are but a few of the situational damage recoveries we have worked on.

## SALVAGE APPRAISAL

Thorough and professional, we offer onsite or offsite inspections, incident reports, written inventories, appraisals, offers to purchase, consignment agreements, sales and appraisals. All salvage evaluations include detailed reports with photographs.

## SALVAGE RECOVERY

In the event where additional services are required, we have years of coordinating site cleanup/clean out, acting as a liaison with shippers and consignees in emergency situations. Experience also includes hiring on-site labor, management and timekeeping of personnel and equipment.

## TRANSPORTATION

We can arrange pick up and sell anywhere in the country and have access to refrigerated and dry trucks 24/7 through a dedicated fleet of carriers.

## WAREHOUSING

We offer Los Angeles based interim secure dry and cold storage and other warehouse services including cross-docking of undamaged cargo.

## ON SITE DESTRUCTION

We can arrange supervised or unsupervised onsite or offsite destruction of product deemed unfit for sale for any reason. Certificates of destruction accompany each completed job.

## CASE STUDIES

**Honey**. An insurer approached us with 2 container loads of imported Indian honey in 55 gallon drums. Due to a fire at sea being extinguished by salt water, the drums showed some exterior rust. After testing, we used our database and located a retailer who was able to buy the bulk honey and re-pack it into retail-sized jars under their own label.

**Frozen shrimp**. An insurer approached us with a container load of retail frozen shrimp that delivered at a few degrees above set temperature. They did not want the product in any market in

their packaging. Through our network we had a buyer who would bulk out the shrimp and save the packaging for a supplier inspection upon completion. Through follow up and follow through and using multiple digital images of the work stages in process, that step was saved.

# CONTACT US

3237 Garfield Ave
Commerce CA 90040

greg@rmgdeals.com

OFFICE
**323.888.0880**
FAX
**323.888.0990**

Copyright © 2016 Re-Marketing Group.

All trademarks, service marks, trade names, trade dress, product names and logos appearing on the site are the property of their respective owners, including in some instances RMG Inc. Any rights not expressly granted herein are reserved.

# OUR CLIENTS

We are proud and fortunate to call these industry leaders and many more as valued vendor/partners.

ARIZONA CANNING COMPANY

COLGATE-PALMOLIVE COMPANY

Kern's Nectar

NATURE'S BEST
THE NATURAL PRODUCTS DISTRIBUTOR

Nestlé®
Good Food, Good Life™

Nestlé Waters®
NORTH AMERICA

Reynolds®

Shasta®

STAR®

TROPICAL®

Unified Grocers SM

# CONTACT US

Offices/Warehouse/Showroom

3237 Garfield Ave

Commerce CA 90040

greg@rmgdeals.com

OFFICE

**323.888.0880**

FAX

**323.888.0990**

Copyright © 2016 Re-Marketing Group.

All trademarks, service marks, trade names, trade dress, product names and logos appearing on the site are the property of their respective owners, including in some instances RMG Inc. Any rights not expressly granted herein are reserved.

Home Services Clients Team Inventory Contact

# MEET OUR TEAM

### Greg Sherwin

Re-Marketing and buyer

Greg@RMGdeals.com

Cell 562.370.0740

### Andy Acevedo

Re-Marketing and buyer

Andy@RMGdeals.com

Cell 714.390.8851

### Chris Crawford

Re-Marketing and sales

Chris@RMGdeals.com

Cell 562.395.2019

### Tom Adams

Insurance related salvage procurement and sales

Tom@RMGdeals.com

Cell 213.760.4600

### Bryan Haskell

Whse. Mgr. Los Angeles

Bryan@RMGdeals.com

### David Bencomo

Cash and Carry Mgr. Los Angeles

David@RMGdeals.com

**Sarah Sherwin**

Accounts receivable and payable

Sarah@RMGdeals.com

**Eva Oseland**

Accounting

Eva@RMGdeals.com

## Need more help?

**John Giacone**

**Echo Global Logistics**

600 W. Chicago Ave., Chicago, IL 60654

Phone: 312.999.2062 | Fax: 312.999.2063

Email: jgiacone@echo.com

**Majestic Freight Forwarders**

http://www.majesticfreightforwarders.com/

**Transloading Services Majestic**

http://transloadingservicesmajesticinc.com/

**LA Consolidation Cold Storage**

http://www.laconsolidation.net/

562-949-5366

# CONTACT US

Offices/Warehouse/Showroom
3237 Garfield Ave
Commerce CA 90040

greg@rmgdeals.com

OFFICE
**323.888.0880**
FAX
**323.888.0990**

Copyright © 2016 Re-Marketing Group.

All trademarks, service marks, trade names, trade dress, product names and logos appearing on the site are the property of their respective owners, including in some instances RMG Inc. Any rights not expressly granted herein are reserved.

Home Services Clients Team Inventory Contact

# CURRENT INVENTORY

Coming Soon!

# CONTACT US

Offices/Warehouse/Showroom
3237 Garfield Ave
Commerce CA 90040

greg@rmgdeals.com

OFFICE

**323.888.0880**

FAX

**323.888.0990**

Copyright © 2016 Re-Marketing Group.

All trademarks, service marks, trade names, trade dress, product names and logos appearing on the site are the property of their respective owners, including in some instances RMG Inc. Any rights not expressly granted herein are reserved.

# EXHIBIT 6

NC70

A0827403

4189949

FILED
Secretary of State
State of California
ICC APR 18 2019 (8)

CERTIFICATE OF AMENDMENT
OF
ARTICLES OF INCORPORATION
OF
DYNAMIC CANDLE COLLECTIONS, INC.

The undersigned certifies that:

1. He is the president and the secretary of Dynamic Candle Collections, Inc., a California corporation.

2. Article I of the Articles of Incorporation of this corporation is amended to read in its entirety as follows:

"I

The name of this corporation is WOW Bargains & Closeouts, Inc."

3. Article VI of the Articles of Incorporation of this corporation is amended to read in its entirety as follows:

"VI

The corporation is authorized to issue one class of shares, designated as "Common Stock." The number of shares of Common Stock authorized to be issued is Seven Million (7,000,000)."

4. The foregoing amendment of the Articles of Incorporation has been duly approved by the board of directors.

5. The corporation has issued no shares.

I further declare under penalty of perjury under the laws of the State of California that the matters set forth in this certificate are true and correct of my own knowledge.

DATE: April 18, 2019

Mark L. Miller, President & Secretary

# EXHIBIT 7

| | |
|---|---|
| **To:** | The Re-Marketing Group, Inc. (karima@kgulick.com) |
| **Subject:** | U.S. Trademark Application Serial No. 88325180 - PIC 'N SAVE OUTLETS BARGAINS & - N/A |
| **Sent:** | July 10, 2020 03:14:47 PM |
| **Sent As:** | ecom101@uspto.gov |
| **Attachments:** | Attachment - 1<br>Attachment - 2<br>Attachment - 3<br>Attachment - 4<br>Attachment - 5<br>Attachment - 6<br>Attachment - 7<br>Attachment - 8<br>Attachment - 9<br>Attachment - 10<br>Attachment - 11<br>Attachment - 12<br>Attachment - 13<br>Attachment - 14<br>Attachment - 15<br>Attachment - 16<br>Attachment - 17<br>Attachment - 18<br>Attachment - 19<br>Attachment - 20<br>Attachment - 21<br>Attachment - 22<br>Attachment - 23<br>Attachment - 24<br>Attachment - 25<br>Attachment - 26<br>Attachment - 27 |

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 88325180

**Mark:** PIC 'N SAVE OUTLETS BARGAINS &

**Correspondence Address:**
Michael K. Grace
33 Brookline
Aliso Viejo CA
92656

EXHIBIT
168

**Applicant:** The Re-Marketing Group, Inc.

**Reference/Docket No.** N/A

**Correspondence Email Address:**

karima@kgulick.com

# FINAL OFFICE ACTION

The USPTO must receive applicant's response to this letter within six months of the issue date below or the application will be **abandoned**. Respond using the Trademark Electronic Application System (TEAS) and/or Electronic System for Trademark Trials and Appeals (ESTTA). A link to the appropriate TEAS response form and/or to ESTTA for an appeal appears at the end of this Office action.

**Issue date: July 10, 2020**

This Office action is in response to applicant's communications filed on November 15, 2019 and June 15, 2020.

In previous Office actions dated May 15, 2019 and December 13, 2019, the trademark examining attorney refused registration of the applied-for mark based on the following: Trademark Act Section 2(d) for a likelihood of confusion with a registered mark. In addition, applicant was required to satisfy the following requirement(s): disclaim descriptive wording in the mark and amend the identification of services.

Based on applicant's response, the trademark examining attorney notes that the following requirement(s) have been satisfied: disclaimer provided, and definite amended identification provided. *See* TMEP §§713.02, 714.04.

Further, the trademark examining attorney maintains and now makes FINAL the refusal(s) and/or requirement(s) in the summary of issues below. *See* 37 C.F.R. §2.63(b); TMEP §714.04.

**SUMMARY OF ISSUES MADE FINAL**

- SECTION 2(d) REFUSAL—LIKELIHOOD OF CONFUSION

**FINAL REFUSAL—SECTION 2(d) REFUSAL—LIKELIHOOD OF CONFUSION**

Registration of the applied-for mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 1443606. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.* See the previously attached registration.

Applicant's mark is PIC 'N SAVE OUTLETS BARGAINS & CLOSE-OUTS for "Retail store services featuring deeply discounted consumer goods, namely packaging change merchandise, damaged packaging merchandise, discounted surplus merchandise, outlet priced merchandise, sample sales, off season merchandise, discounted merchandise and factory seconds at deeply discounted rates."

Registrant's mark is PICK 'N SAVE for "Retail grocery store services."

Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the services of the parties. *See* 15 U.S.C. §1052(d). Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors"). *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017). Any evidence of record related to those factors need be considered; however, "not all of the *DuPont* factors are relevant or of similar weight in every case." *In re Guild Mortg. Co.*, 912 F.3d 1376, 1379, 129 USPQ2d 1160, 1162 (Fed. Cir. 2019) (quoting *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis: (1) the

similarities between the compared marks and (2) the relatedness of the compared services. *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP §1207.01.

The overriding concern is not only to prevent buyer confusion as to the source of the services, but to protect the registrant from adverse commercial impact due to use of a similar mark by a newcomer. *See In re Shell Oil Co.*, 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993). Therefore, any doubt regarding a likelihood of confusion determination is resolved in favor of the registrant. TMEP §1207.01(d)(i); *see Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265, 62 USPQ2d 1001, 1003 (Fed. Cir. 2002); *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 464-65, 6 USPQ2d 1025, 1026 (Fed. Cir. 1988).

The marks are similar because the beginning of applicant's mark is nearly identical to registrant's mark and the services are related because they are overlapping retail services.

***Comparison of the Marks***

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)), *aff'd per curiam* , 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

Here, the proposed mark contains the literal element of PIC 'N' SAVE OUTLETS BARGAINS & CLOSEOUTS. The previously attached evidence from the *American Heritage Dictionary* shows that the terms "OUTLETS", "BARGAINS", and "CLOSEOUTS" are merely descriptive of applicant's services and as addressed below, must therefore be disclaimed. As such, the dominant element of applicant's appliedfor mark is PIC 'N' SAVE, which is the phonetic equivalent of registrant's mark, PICK 'N SAVE.

Although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (citing *In re Dixie Rests.*, 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)); TMEP §1207.01(b)(viii), (c)(ii). Matter that is descriptive of or generic for a party's services is typically less significant or less dominant in relation to other wording in a mark. See *Anheuser-Busch, LLC v. Innvopak Sys. Pty Ltd.*, 115 USPQ2d 1816, 1824-25 (TTAB 2015) (citing *In re Chatam Int'l Inc.* , 380 F.3d 1340, 1342-43, 71 USPQ2d 1944, 1946 (Fed. Cir. 2004)). Similarly, disclaimed matter that is descriptive of or generic for a party's services is typically less significant or less dominant when comparing marks. *In re Detroit Athletic Co.*, 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (citing I*n re Dixie Rests., Inc.*, 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)); TMEP §1207.01(b)(viii), (c)(ii). Thus, consumers are likely to focus on the dominant word portions of the marks in this comparison, which is the legally identical wording of "PICK 'N SAVE."

Further, although the applicant's mark contains minor stylized elements, the dominant word portions of the marks are nearly identical in appearance, sound, connotation, and commercial impression; therefore, the addition of a design element does not obviate the similarity of the marks in this case. *See In re Shell Oil Co*., 992 F.2d 1204, 1206, 26 USPQ2d 1687, 1688 (Fed. Cir. 1993); TMEP §1207.01(c)(ii).

Applicant argues that the marks have distinct commercial impressions because of applicant's stylization and the addition the wording "OUTLETS BARGAINS & CLOSE-OUTS". This argument, however, is unpersuasive. The first words of the marks, PIC(K) 'N' SAVE, are nearly identical. Consumers are generally more inclined to focus on the first word, prefix, or syllable in any trademark or service mark. *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1372, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005) (finding similarity between VEUVE ROYALE and two VEUVE CLICQUOT marks in part because "VEUVE . . . remains a 'prominent feature' as the first word in the mark and the first word to appear on the label"); *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 876, 23 USPQ2d 1698, 1700 (Fed Cir. 1992) (finding similarity between CENTURY 21 and CENTURY LIFE OF AMERICA in part because "consumers must first notice th[e] identical lead word"); *see also In re Detroit Athletic Co.*, 903 F.3d 1297, 1303, 128 USPQ2d 1047, 1049 (Fed. Cir. 2018) (finding "the identity of the marks' two initial words is particularly significant because consumers typically notice those words first").

Additionally, incorporating the entirety of one mark within another does not obviate the similarity between the compared marks, as in the present case, nor does it overcome a likelihood of confusion under Section 2(d). *See Wella Corp. v. Cal. Concept Corp.*, 558 F.2d 1019, 1022, 194 USPQ 419, 422 (C.C.P.A. 1977) (finding CALIFORNIA CONCEPT and surfer design and CONCEPT confusingly similar); *Coca-Cola Bottling Co. v. Jos. E. Seagram & Sons, Inc.*, 526 F.2d 556, 557, 188 USPQ 105, 106 (C.C.P.A. 1975) (finding BENGAL LANCER and design and BENGAL confusingly similar); *In re Integrated Embedded*, 120 USPQ2d 1504, 1513 (TTAB 2016) (finding BARR GROUP and BARR confusingly similar); *In re Mr. Recipe, LLC*, 118 USPQ2d 1084, 1090 (TTAB 2016) (finding JAWS DEVOUR YOUR HUNGER and JAWS

confusingly similar); TMEP §1207.01(b)(iii). In the present case, the marks are legally identical in part.

Based on the foregoing, the applicant's applied-for and registrant's marks are sufficiently similar to find a likelihood of confusion.

***Comparison of the Services***

The services are compared to determine whether they are similar, commercially related, or travel in the same trade channels. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §§1207.01, 1207.01(a)(vi).

The compared services need not be identical or even competitive to find a likelihood of confusion. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000); TMEP §1207.01(a)(i). They need only be "related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i).

In this case, the application uses broad wording to describe "retail store services featuring deeply discounted consumer goods", which presumably encompasses all services of the type described, including some of registrant's "grocery store services." See, e.g., In re Solid State Design Inc., 125 USPQ2d 1409, 1412-15 (TTAB 2018); Sw. Mgmt., Inc. v. Ocinomled, Ltd. , 115 USPQ2d 1007, 1025 (TTAB 2015) . Thus, applicant's and registrant's services are legally identical. See, e.g., In re i.am.symbolic, llc, 127 USPQ2d 1627, 1629 (TTAB 2018) (citing Tuxedo Monopoly, Inc. v.Gen. Mills Fun Grp., Inc. , 648 F.2d 1335, 1336, 209 USPQ 986, 988 (C.C.P.A. 1981); Inter IKEA Sys. B.V. v. Akea, LLC, 110 USPQ2d 1734, 1745 (TTAB 2014); Baseball Am. Inc. v. Powerplay Sports Ltd., 71 USPQ2d 1844, 1847 n.9 (TTAB 2004)).

Additionally, the services of the parties have no restrictions as to nature, type, channels of trade, or classes of purchasers and are "presumed to travel in the same channels of trade to the same class of purchasers." *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (quoting *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1268, 62 USPQ2d 1001, 1005 (Fed. Cir. 2002)). Thus, applicant's and registrant's services are related.

Applicant argues that the services are dissimilar because the goods they feature are different, and that registrant's website lists goods different from those applicant features. Determining likelihood of confusion, however, is based on the description of the goods and/or services stated in the application and registration at issue, not on extrinsic evidence of actual use. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1307, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018) (citing *In re i.am.symbolic, llc*, 866 F.3d 1315, 1325, 123 USPQ2d 1744, 1749 (Fed. Cir. 2017)). Additionally, as the attached evidence from *Investopedia* shows, applicant's identified services featuring "consumer goods" include those featured in registrant's retail grocery store services.

Further, the attached Internet evidence from *Money Crashers*, *Aldi*, *The Simple Dollar*, and *The Spruce Eats* establishes that the same entity commonly provides the relevant "retail store services featuring deeply discounted consumer goods" and retail grocery store services and markets the services under the same mark. It also shows that the relevant services are provided through the same trade channels and used by the same classes of consumers in the same fields of use. Thus, applicant's and registrant's services are considered related for likelihood of confusion purposes. *See, e.g.*, *In re Davey Prods. Pty Ltd.*, 92 USPQ2d 1198, 1202-04 (TTAB 2009); *In re Toshiba Med. Sys. Corp.*, 91 USPQ2d 1266, 1268-69, 1271-72 (TTAB 2009).

Finally, applicant has submitted a list of registrations purporting to show that similar marks, and those with similar goods and services coexist on the register. However, the mere submission of a list of registrations or a copy of a private company search report does not make such registrations part of the record. *See In re Peace Love World Live, LLC*, 127 USPQ2d 1400, 1405 n.17 (TTAB 2018) (citing *In re 1st USA Realty Prof'ls* , 84 USPQ2d 1581, 1583 (TTAB 2007); *In re Duofold Inc.*, 184 USPQ 638, 640 (TTAB 1974)); TBMP §1208.02; TMEP §710.03.

To make third party registrations part of the record, an applicant must submit copies of the registrations, or the complete electronic equivalent from the USPTO's automated systems, prior to appeal. *In re Star Belly Stitcher, Inc.*, 107 USPQ2d 2059, 2064 (TTAB 2013); TBMP §1208.02; TMEP §710.03. Accordingly, these registrations will not be considered.

Based on the analysis above, applicant's and registrant's services are related.

Because applicant's and registrant's marks are similar and the services are related, there is a likelihood of confusion and applicant's applied-for mark must be refused under Section 2(d) of the Lanham Act. Based on the foregoing, the refusal based on a likelihood of confusion is maintained and now made **FINAL**.

**Assistance**

Please call or email the assigned trademark examining attorney with questions about this Office action. Although an examining attorney cannot provide legal advice, the examining attorney can provide additional explanation about the refusal(s) and/or requirement(s) in this Office action. *See* TMEP §§705.02, 709.06.

The USPTO does not accept emails as responses to Office actions; however, emails can be used for informal communications and are included in the application record. *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05.

**How to respond.** **Click to file a request for reconsideration of this final Office action** that fully resolves all outstanding requirements and refusals **and/or** **click to file a timely appeal to the Trademark Trial and Appeal Board (TTAB)** with the required filing fee(s).

/Catherine Caycedo/
Catherine Caycedo
Trademark Examining Attorney
Law Office 101
(571) 272-7066
Catherine.Caycedo@uspto.gov

## RESPONSE GUIDANCE

- **Missing the response deadline to this letter will cause the application to abandon.** A response or notice of appeal must be received by the USPTO before midnight **Eastern Time** of the last day of the response period. TEAS and ESTTA maintenance or unforeseen circumstances could affect an applicant's ability to timely respond.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon.** If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant. If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.

Advertiser Disclosure

Lifestyle

# Discount Grocery Stores: Are They Worth the Savings?

By
Rebecca VanderMeulen




Views 37.1K
Shares 13

Share This Article

Join Our Facebook Group

Dig Deeper

LIFESTYLE
FOOD & DRINK
MONEY MANAGEMENT
SHOPPING
SPENDING AND SAVING

FOLLOW @MONEYCRASHERS

24,392 Fans
23,953 Followers
41,931 Followers

TRENDING ARTICLES

Keeping to a household budget often means trimming unnecessary expenses, but some items are indispensable – food, for one.

You probably already cut coupons and buy store brands just like any budget-conscious shopper. But did you know that some grocery stores specialize in cut-rate food and household goods not "good enough" for your average supermarket?

They might be called "salvage," "bargain," or "discount" grocery stores. You might find them in a strip mall or tucked into an industrial neighborhood. Either way, these stores

1 21 Best New Bank Account Promotions & Offers – July 2020

2 36 Best Ways to Make Money from Home (Legitimate)

3 COVID-19 Economic Stimulus Payments – Eligibility & How to Get Yours

4 12 Best Stock Market Investment News, Analysis & Research Sites

5 7 Small Business Ideas for Teenagers & Kids

BECOME A MONEY CRASHER! JOIN OUR COMMUNITY.

Enter Your Name

Enter Your Email Here

Subscribe

them in a strip mall or tucked into an industrial neighborhood. Either way, these stores can cut a nice chunk of change from your food bill and enable you to save money on groceries.

## Types of Bargain Grocery Stores

Each cut-rate retailer is different. Some are large chains, like ALDI and Bottom Dollar Food. These chains sell some products branded with their own generic label, in addition to non-generic items. They're largely able to offer lower prices because they feature few, if any, of the departments you'll find at a supermarket, like in-house butchers and bakers. Most carry the same types of merchandise you'd find in a supermarket, including produce, milk, frozen dinners, and shampoo.

"Salvage" groceries or "outlet" stores, on the other hand, are stocked with second-rate goods. The shelves are full of dented cans, banged-up boxes, and items past the manufacturer's use-by dates. You'll see cereal boxes promoting movies that are no longer in theaters, and store brands made for chains in other parts of the country.

Many salvage groceries are operated independently, but chains include Amelia's Grocery Outlet in Pennsylvania and Grocery Outlet on the West Coast.




## Pros & Cons of Discount Groceries

Discount grocery stores have both strong points and drawbacks.

### Advantages

1. If you liken garage sales to treasure hunts, you'll love bargain grocery stores. My prizes have included scented candles I've given as gifts, and all-natural peanut butter discounted at more than half off the regular grocery store price.

butter discounted at more than half off the regular grocery store price.

2. Some accept manufacturer's coupons. For instance, if you have a coupon for $1.50 off a 12-ounce bag of ground coffee, you'd pay $6.99 if you went to a supermarket charging a normal rate of $8.49. However, at a bargain store selling the same bag of coffee for $3.99, you'd pay only $2.49!
3. If you have brand loyalty for certain products, you can occasionally find them for a much lower price at a no-frills grocery. I recently saw Softsoap hand soap bottles for $0.99, compared to $1.49 at a Wegmans supermarket.

### Disadvantages

1. Some discount grocery stores do not accept credit cards. This is no big deal if you normally pay for your groceries with cash or a debit card, but my husband and I buy almost everything with cash back credit cards in order to rack up rewards points.
2. Discount grocery stores have a smaller selection than a supermarket, and you'll likely need to visit a supermarket afterward to find remaining items on your list. Are you looking for tarragon or brie? A supermarket is most likely your best bet.
3. Discount retailers generally don't stay open as late as a supermarket, so you have to plan your shopping accordingly.

## Safety Concerns

Chances are, most bargain groceries are perfectly safe. But keep an eye out for these warning signs:

### Damaged Cans and Jars

The U.S. Department of Agriculture warns against eating anything from cans that are leaking, rusting, bulging, or badly dented. The same goes for jars that are broken or have bulging lids. Otherwise, you might get a deadly disease or food poisoning along with your dinner.

### Dates on Food Packaging

The dates on food packages are slightly nebulous. Here's how the USDA defines them:

- **Sell By**: Buy the product before this date.
- **Best if Used By**: This is a recommendation for best quality, but the food is still safe to eat after the date has passed, within reason.
- **Use By**: Federal law requires this date for baby formula or baby food – never give an infant formula past its "use by" date. But for other products, "use by" is similar to "best if used by."



## What to Buy and What *Not* to Buy

You may want to avoid purchasing certain staples at a discount grocery store. This decision comes down to personal preference and the quality of the merchandise you find.

- **Produce**. I'm extra-cautious about bargain-store produce. The first time I visited the Bottom Dollar Food store that opened near my house, the avocados were softer than the pillows on my couch. Ew.
- **Meat**. Bottom Dollar's cheap steaks excited me at first, even though they were slightly discolored and thinner than what I normally buy. Regardless, I gave them a try. My husband requested that I not buy steak from that store again.
- **Dairy**. This might be a matter of personal taste, but if you're uncomfortable with dairy products near or even past their expiration date, stick to the supermarket.

## Discount Grocery Shopping Tips

1. Create a grocery list and head to the discount store first. If you need two boxes of cereal this week, you may as well get them for half-price.
2. Shop when you're not in a rush. You'll need extra time to examine sell-by dates and assess the freezer burn on that chocolate cream pie.
3. See something you'll use later but don't need right away? Stock up if you have the space and will consume your finds while they're still safe to eat. The inventory at discount grocery stores changes all the time, so it might not be there next week.
4. Be willing to try a few new things. You might discover a new favorite food – but

7. Be willing to try a few new things. You might discover a new favorite food – but don't stock up on something you've never tried just because it's cheap. Groceries are never a good deal if they're just going to sit unused in your pantry.

## Final Word

Cut-rate grocery stores are a great way to save money on your food bill as long as you're willing to keep an open mind and take the time to closely examine what you're putting in your cart. As long as your pantry is stocked with food that tastes fine, who cares if the packaging isn't pretty? You can eat healthy on a budget, regardless of how much you pay.

Have you discovered any tricks for saving money while food shopping? What are your thoughts on discount groceries?

citi
Checking Account Offer
Earn $700. Open new eligible accounts w/ required activities, limited time only.
Open Account

ally
Ally Bank, Member FDIC
1.00% APY
on all balance tiers
Online Savings Account
Open Account

Sponsors of GOBankingRates
Advertiser Disclosure

Related Articles

- How to Save Money on Groceries - Top 21 Ways to Save
- Is an Online Grocery Delivery Service Worth It? - Pros & Cons
- Grocery Delivery Services - How They Work, Cost & Benefits
- How to Make a Grocery Price Book to Save at the Supermarket
- What Is a Food Co-op and Is It Worth Joining? - Costs, Benefits & Drawbacks
- Is a Warehouse Store (Costco, Sam's Club, BJ's) Membership Worth

https://www.aldi.us/en/weekly-specials/this-weeks-aldi-finds/ 07/10/2020 03:09:38 PM



https://www.aldi.us/en/weekly-specials/this-weeks-aldi-finds/ 07/10/2020 03:09:38 PM

Huntington Home Full Sheet Set
each $8.99*

Huntington Home Reversible Comforter
each $16.99*

Huntington Home 2' x 6' Berber Stripe Utility Runner
each $9.99*

Huntington Home Plush Bolster Pillow
each $9.99*

Huntington Home 20" x 28" Smartloft Bed Pillow
each $5.99*

Huntington Home Wedge Pillow
each $14.99*

Huntington Home 2' x 4' Plush or Berber Rug
each $5.99*

Huntington Home 5' x 7' Plush or Berber Area Rug
each $19.99*

Gardenline Chaise Lounge
each $39.99*

Gardenline Adirondack Chair
each $12.99*

Gardenline Folding Web Chair
each $12.99*

Gardenline Resin Stacking Side Table
each $6.99*

Gardenline Crackle Solar Light
each $2.99*

Gardenline Solar Pathlight
each $6.99*

Gardenline 6-Pack Solar Lights
each $12.99*

https://www.aldi.us/en/weekly-specials/this-weeks-aldi-finds/ 07/10/2020 03:09:38 PM



https://www.aldi.us/en/weekly-specials/this-weeks-aldi-finds/ 07/10/2020 03:09:38 PM



Easy Home 4-Tier Chrome Shelving
each $39.99*

Never Any! Fresh Ground Bison
each $7.99*
16 oz.

Fresh Korean BBQ or Asian Sesame Salmon on a Cedar Plank
per lb. $9.99*

4" Lucky Bamboo
each $5.99*
1 ea.

Coco Bay Coconut Specialty
* see price in store *
750 mL

Rosé-Vous? South of France Rosé
* see price in store *
750 mL

Wicked Grove Green Apple Hard Cider Cans
* see price in store *
64 oz.

https://www.aldi.us/en/weekly-specials/this-weeks-aldi-finds/ 07/10/2020 03:09:38 PM



https://www.aldi.us/en/weekly-specials/this-weeks-aldi-finds/ 07/10/2020 03:09:38 PM



https://www.aldi.us/en/weekly-specials/this-weeks-aldi-finds/ 07/10/2020 03:09:38 PM



https://www.aldi.us/en/weekly-specials/this-weeks-aldi-finds/ 07/10/2020 03:09:38 PM



HOUSEHOLD ESSENTIALS

Cloralen Triple Action Bleach
each 99¢*
32.12 oz.

Gonzo Disinfectant Trigger Citrus
each $3.49*
24 oz.

Gonzo Disinfectant Trigger Lavender
each $3.49*
24 oz.

Lander Hand Soap Refill
each $3.49*
56 oz.

Lysol All Purpose Cleaner
each $2.44*
32 oz.

OxiClean Versatile Stain Remover
each $7.96*
3 lb.

Easy Home Bamboo Dish or Palm Brush
each $2.99*

to the top

Print page | Share this page

CA Supply Chains Act | CA Privacy Rights | Online Privacy Notice | Terms of Use | Contact Us | Gift Card Balance | © 2020 by ALDI

Grocery & Goods
- Quality Brands
- Seasonal Products
- Fresh Right Now
- ALDI Finds
- Baby
- Wine & Beer

Be Inspired
- Healthy Living
- Recipes
- The ALDI Blog

About ALDI
- Our Mission
- FAQs
- Twice As Nice Guarantee
- Ingredients
- Store Locator
- Grand Openings
- Product Awards
- Community Giving
- Warranties & Manuals
- Product Recalls
- Contact Us
- Newsroom
- Mobile App

Weekly Specials
- Our Weekly Ads
- This Week's ALDI Finds
- Upcoming ALDI Finds

We use cookies to improve your experience and to show you personalized ads. Learn More

› Cookie Settings ✓Accept Cookies

Dollar

# ALDI, Fareway, and the Value of Discount Grocery Stores

Trent Hamm, Founder of The Simple Dollar • Dec 13, 2017 Shopping

Advertiser Disclosure



Financial Wellness TOOLBOX

Drowning in credit card debt?
Try a Balance Transfer Card

Join our new newsletter "Two Cents" for exclusive financial advice you won't get anywhere else.

Your email address SUBSCRIBE

Privacy policy

Tired of huge interest payments?
Consider Debt Consolidation

Latest from Trent

Recently, I came across a great article about ALDI in Forbes Magazine. For those unfamiliar, ALDI is a discount retailer in the eastern half of the United States (and in Germany) that focuses almost entirely on having the lowest prices on its merchandise.

One method ALDI uses is relying entirely on store-brand products – you're hard-pressed to find *any* name brand there. The article outlines several other methods ALDI uses to keep its overhead low:

*ALDI's retail strategy has combined a control label National Brand Equivalent (NBE) portfolio with an equally impressive deletion of conventional supermarket services:*

https://www.thesimpledollar.com/save-money/aldi-fareway-and-the-value-of-discount-grocery-stores/
07/10/2020 03:10:11 PM

Join our new newsletter "Two Cents" for exclusive financial advice you won't get anywhere else.
Your email address
SUBSCRIBE
Privacy policy

*– Carts must be paid for by deposit (25 cents) and returned by the shopper to eliminate staff needed to wrangle shopping carts.*
*– There are no baskets to manage.*
*– The only staff in an ALDI store are: forklift operators bringing in new pallets, a cashier (or two) and possibly a third-party loss-prevention agent.*



4 Surprising Steps to Achieve Your Long-Term Financial Goals

Why You Should Try Microsoft's New "Money in Excel"

The shopping experience at ALDI is a bit different than most other grocery stores, as you might imagine. The thing I notice the most when I go in there is that the aisles are a bit narrower than I might expect and that there are only store brand items, which means there's very little choice when you're buying a particular item. There is only one kind of whole wheat bread, for example, and only one kind of sliced American cheese.

Join our new newsletter "Two Cents" for exclusive financial advice you won't get anywhere else.
Your email address
SUBSCRIBE
Privacy policy

*entire shopping experience on a simple aggregation of cost savings, a slow and steady cartwheeling trade-down ritual whose foundation, price leadership, has been rigidly defended in virtually every market they've entered.*

Read more from Trent

I actually enjoy shopping at ALDI quite a lot. It's very easy to just blow through a shopping list there. I need whole wheat bread? Well, there's only one option and it's really cheap, so I can just grab a loaf and put it in the cart and move on with life.

This is explained even better a little bit further into the article:

Join our new newsletter "Two Cents" for exclusive financial advice you won't get anywhere else.
Your email address
SUBSCRIBE
Privacy policy

*stores are only about 18-20,000 square feet.*

So, what's the point here?

First, **when you shop at a grocery store, part of your expense goes toward a lot of things that aren't obvious.** The store has expenses like maintaining service departments, having shelf stockers, having people who retrieve carts, having wider aisles, keeping produce constantly clean (think of the misters in the produce area), and on and on and on.

https://www.thesimpledollar.com/save-money/aldi-fareway-and-the-value-of-discount-grocery-stores/
07/10/2020 03:10:11 PM

Do these things have value? Sure they do. They contribute a lot to the flexibility and comfort you experience in a grocery store. It's easier to get rid of your cart when you're done shopping. It's easier to ask questions and find help when you need it. It's easier to find clean and fresh produce.

×
Join our new newsletter "Two Cents" for exclusive financial advice you won't get anywhere else.
Your email address
SUBSCRIBE
Privacy policy

That's a big reason why I shop at the discount grocers near me – ALDI and Fareway top the list – when my grocery list is short and simple. I can usually get everything I need there quite quickly.

Second, **when you shop at a grocery store, you have to make a lot of decisions.** As the article alludes to, the typical shopping trip involves "brands, BOGOs, deals, price comparisons, coupons, sudden endcap promotions, [and] in-aisle shopper marketing." There are size variations, packaging variations, coupons on some packages, and so on.

Those things form a rather large tree of decisions. You have to make several decisions at a typical grocery store prior to buying anything. Yes, many people make these decisions very quickly and almost instinctively, as described in the popular book *Blink by Malcolm Gladwell* but they still contribute to decision fatigue, especially at the end of the day. It's very easy to find yourself buying things that you didn't intend to buy in a grocery store mostly because of that decision fatigue.

×
Join our new newsletter "Two Cents" for exclusive financial advice you won't get anywhere else.
Your email address
SUBSCRIBE
Privacy policy

Why is decision fatigue so bad? It means that the more decisions you make, the worse you are at making good decisions. That manifests itself at the grocery store by adding items to your cart that you didn't plan on buying, thus costing you money for things you don't really need or even want.

Third, **discount grocers don't really help if they're not conveniently located.** Right now, I live in rural Iowa, which means that I have to travel at least 10 minutes one way to get to *any* grocery store. I don't have an option in that regard.

The nearest grocery store to my house is a Fareway. After that, there are two Hy-Vees (a Midwestern full-service grocery store chain with higher prices than the discount grocers) that are about equidistant, then several stores that are roughly the same distance (a Super Target, two Wal-Mart Supercenters, an ALDI, two Sam's Clubs, and so on).

×
Join our new newsletter "Two Cents" for exclusive financial advice you won't get anywhere else.
Your email address
SUBSCRIBE
Privacy policy

of groceries to make the longer trip worthwhile – and it's worth noting that this is just a rough estimation in my head, not an exact science. So, if my list is huge, I'll drive quite a bit further to a discount grocer. If my list is short? I'll just go to the closest place.

So, **what's our family's shopping approach?**

I personally prefer to buy most of my groceries at a discount grocer such as ALDI or Fareway. Fareway exists in a "middle ground" between ALDI and a typical grocery store in that they do some things much like ALDI (limited selection, tight cart control, narrower aisles, smaller stores), but other things like a typical grocer (multiple brand choices for many items).

×
Join our new newsletter "Two Cents" for exclusive financial advice you won't get anywhere else.
Your email address
SUBSCRIBE
Privacy policy

that I prefer.

Because of that, **I usually do some "double-store" (or even "triple-store") shopping.** I shop at Fareway and/or ALDI for most of the items on my list, then head to another grocery store for produce, cold/frozen items, and a few other miscellaneous items that I'm willing to pay a little more for. I'll also stop by the warehouse club if I know that I need some bulk items, too. (Sometimes, I can actually buy everything I need at Fareway, making my trip as short as possible.)

The end result is that I do end up saving quite a bit on groceries, but it does make the trip a bit longer than before.

I'm lucky in that a new Fareway is actually opening not too far from my home, making it the closest grocery store by far. I can easily walk or bicycle to this new Fareway if I so choose. Unless absolutely necessary, I will likely be doing almost

×
Join our new newsletter "Two Cents" for exclusive financial advice you won't get anywhere else.
Your email address
SUBSCRIBE
Privacy policy



Trent Hamm
*Founder of The Simple Dollar*

Trent Hamm founded The Simple Dollar in 2006 after developing innovative financial strategies to get out of debt. Since then, he's written three books (published by Simon & Schuster and Financial Times Press), contributed to Business Insider, US News & World Report, Yahoo Finance, and Lifehacker, and been featured in The New York Times, TIME, Forbes, The Guardian, and elsewhere.

0 Comments The Simple Dollar Disqus' Privacy Policy Login

×
Join our new newsletter "Two Cents" for exclusive financial advice you won't get anywhere else.
Your email address
SUBSCRIBE
Privacy policy

the spruce Eats




Learning How To Cook

# Salvage Grocery Stores Can Be Your Guide to Big Savings

Written by Erin Huffstetler | Updated 08/07/19



Advertisement



PeopleImages / Getty Images




IN THIS ARTICLE

What Is a Salvage Grocery Store? | Is the Food Safe? | Tips and Warnings | Locating a Salvage Grocery Store | What to Know Before You Go | Considerations

If you need to make drastic cuts to your grocery bill and are willing to step outside of your favorite grocery market, shopping at a salvage grocery store could be the answer. Salvage grocery stores, sometimes referred to as outlet or discount grocery stores, specialize in selling items that traditional grocery stores can't or won't sell. Here's a look at what salvage grocery stores are all about.

## What Is a Salvage Grocery Store?

Most salvage grocery stores buy their merchandise from grocery reclamation centers, which include:

- Food that is near or past its expiration
- Items in dented or torn packaging
- Items in seasonal or otherwise-dated packaging
- Store closeouts

Advertisement


- Manufacturer overstock
- Salvage from truck wrecks

Unlike a traditional grocery store, which stocks the same items each week, salvage grocery stores stock different items weekly depending on what's available. The prices at a salvage grocery store are typically half of what you'd expect to pay at the grocery store—but could be even cheaper.




## Is the Food Safe?

As long as you follow a few rules, the food at a salvage grocery store is just as safe as the food you'd get at a grocery store. Salvage grocery stores are inspected and regulated by the government just like regular grocery stores.

All items are also inspected for serious damage at the reclamation center before they're shipped to stores. Leaking or bulging cans and broken jars are tossed immediately. Torn or dented boxes are OK, as long as the plastic bag that the food is wrapped in is still sealed. If it's something like macaroni, where the food sits directly inside the box, you should probably pass on torn boxes.

## Tips and Warnings

If you decide to shop at a salvage grocery store, there are a few things to consider:

01 Frozen foods are still safe after their expiration date as long as they've been kept frozen. If you see any evidence of improper food storage at the store, skip them.

02 Sell-by, use-by, and best-buy dates all mean different things. Educate yourself on the difference, so you understand what you're buying.

03 Never buy expired baby formula and baby food at a salvage store. It's the only food product that the federal government requires dating on.

04 Avoid expired over-the-counter drugs. They may lose their potency or undergo an

Advertisement


adverse chemical change after expiration.

05 Dented cans aren't always safe to buy. A small dent is fine, but if you see cans with big dents or any dent along the top or side seam, leave them at the store. Ditto for bulging or leaking cans. They could be a botulism risk.

06 Recalled items shouldn't end up at salvage stores, but it's good to stay on top of recent recalls just in case.

Additionally, salvage grocery stores may not be as organized as a regular grocery store, but they should be just as clean. If a store appears dirty or you see signs of bug or rodent activity, take your business elsewhere.

## Locating a Salvage Grocery Store

Extremebargains.net maintains a directory of salvage and discount grocery stores in the United States. Check there first. Then, look in your local phone book under "grocers" to see if you can turn up any more. Any listing with the word "salvage," "outlet," or "discount" in the name is a good bet.

If you live near an Amish community, there's probably an Amish-run salvage store nearby. Just ask around, and you're sure to turn up at least one salvage grocery store in your area.

Advertisement



## What to Know Before You Go

Salvage stores may not accept credit cards or out-of-town checks. Many take cash or debit cards only. Salvage stores may only be open on certain days or for a limited number of hours each day. Call ahead before you go. Some salvage stores even take manufacturer coupons.

While the prices are great, you may still be able to do better at the grocery store by buying store brands or by taking advantage of coupons and sales. Know your price points before you go. Salvage grocery stores sell more than food. You may also find deals on cleaners, health and beauty products, pet food, party supplies, paper products, office supplies, and more

You probably won't be able to do all of your grocery shopping at the salvage store. Start your

shopping there; then, finish up at the grocery store. Since inventory changes rapidly, you can't count on salvage grocery stores to have the same things from week to week. Stock up when you see something you want and check back regularly to see what else they're stocking.

Advertisement




## Considerations

There are a few more things to keep in mind before shopping at a salvage grocery store.

- If you're trying a new brand or product for the first time, buy a small amount. Stock up later, if you like it.
- Since you're likely to be buying older items, only stock up on as much as you can use in a reasonable time.
- Salvage grocery stores don't usually accept returns. You may get a bad item on occasion, but the overall savings will more than make up for it.

If you don't like the first salvage store you go to, try another one. It could just be the way that particular store is run or an issue with their supplier.

READ NEXT: Learn How to Grocery Shop to Save Time and Money



Beautycounter | Color Pinch Cream...

$38 A radiant flush—and so much more. Featuring beautifully rich pigment and a natural,...

Beautycounter

Advertisement

Betterment
A SMARTER HOME FOR YOUR MONEY
Whether you're spending, saving, or investing, Betterment can help you make the most of your money and achieve your financial goals.
HASSLE-FREE, NO-FEE¹ CHECKING
A SECURE SOLUTION FOR YOUR CASH
INVESTING FOR WHAT MATTERS MOST
Advertisement

FUNDAMENTAL ANALYSIS › SECTORS & INDUSTRIES ANALYSIS

Fundamental Analysis
TOOLS FOR FUNDAMENTAL ANALYSIS
SECTORS & INDUSTRIES ANALYSIS

# Fast-Moving Consumer Goods (FMCG)

By WILL KENTON | Reviewed By GORDON SCOTT | Updated Mar 12, 2020

## What Are Fast-Moving Consumer Goods (FMCG)?

Fast-moving consumer goods are products that sell quickly at relatively low cost. These goods are also called consumer packaged goods.

FMCGs have a short shelf life because of high consumer demand (e.g., soft drinks and confections) or because they are perishable (e.g., meat, dairy products, and baked goods). These goods are purchased frequently, are consumed rapidly, are priced low, and are sold in large quantities. They also have a high turnover when they're on the shelf at the store.

> Important: Slow-moving consumer goods, which have a longer shelf life and are purchased over time, include items like furniture and appliances.

## Understanding Fast-Moving Consumer Goods (FMCG)

Consumer goods are products purchased for consumption by the average consumer. They are divided into three different categories: durable, nondurable goods, and services. Durable goods have a shelf life of three

Advertisement
WARNING: This product contains nicotine. Nicotine is an addictive chemical.
BUY 2, SAVE BIG!
SAVE $5
blu

years or more while nondurable goods have a shelf life of less than one year. Fast-moving consumer goods are the largest segment of consumer goods. They fall into the nondurable category, as they are consumed immediately and have a short shelf life.



Advertisement

Nearly everyone in the world uses fast-moving consumer goods (FMCG) every day. They are the small-scale consumer purchases we make at the produce stand, grocery store, supermarket, and warehouse outlet. Examples include milk, gum, fruit and vegetables, toilet paper, soda, beer, and over-the-counter drugs like aspirin.

FMCGs account for more than half of all consumer spending, but they tend to be low-involvement purchases. Consumers are more likely to show off a durable good such as a new car or beautifully designed smartphone than a new energy drink they picked up for $2.50 at the convenience store.

## Types of Fast-Moving Consumer Goods

As mentioned above, fast-moving consumer goods are nondurable goods, or goods that have a short lifespan, and are consumed at a rapid or fast pace.

Advertisement


Advertisement

FMCGs can be divided into several different categories including:

- **Processed foods**: Cheese products, cereals, and boxed pasta
- **Prepared meals**: Ready-to-eat meals
- **Beverages**: Bottled water, energy drinks, and juices
- **Baked goods**: Cookies, croissants, and bagels
- **Fresh, frozen foods, and dry goods**: Fruits, vegetables, frozen peas and carrots, and raisins and nuts
- **Medicines**: Aspirin, pain relievers, and other medication that can be purchased without a prescription
- **Cleaning products**: Baking soda, oven cleaner, and window and glass cleaner
- **Cosmetics and toiletries**: Hair care products, concealers, toothpaste, and soap
- **Office supplies**: Pens, pencils, and markers

The Fast-Moving Consumer Goods Industry

Because fast-moving consumer goods have such a high turnover rate, the market is not only very large, it is also very competitive. Some of the world's largest companies compete for market share in this industry including Dole,

Coca-Cola, Unilever, Procter & Gamble, Nestlé, Kellogg's, and General Mills. Companies like these need to focus their efforts on marketing fast-moving consumer goods to entice and attract consumers to buy their products.

That's why packaging is a very important factor in the production process. The logistics and distribution systems often require secondary and tertiary packaging to maximize efficiency. The unit pack or primary package is critical for product protection and shelf life, and also provides information and sales incentives to consumers.

FCMGs are sold in large quantities, so they are considered a reliable source of revenue. This high volume of sales also offsets the low profit margins on individual sales as well.

As investments, FMCG stocks generally promise low-growth but are safe bets with predictable margins, stable returns, and regular dividends.

Advertisement

Advertisement


Advertisement

## Special Considerations

Fast-Moving Consumer Goods and E-Commerce

Shoppers across the globe increasingly purchase things they need online because it offers certain conveniences—from delivering orders right to the door to broad selection and low prices—that brick-and-mortar stores can't.

The most popular e-commerce categories, not surprisingly, are non-consumable goods—durables and entertainment-related products. The online market for buying groceries and other consumable products is growing, as companies redefine the efficiency of delivery logistics which shorten delivery times. While non-consumable categories may continue to lead consumable products in sheer volume, gains in logistics efficiency have increased the use of e-commerce channels for acquiring FMCGs.

Advertisement


Advertisement

KEY TAKEAWAYS

- Fast-moving consumers goods are nondurable products that sell quickly at relatively low cost.
- FMCGs have low profit margins, but they account for more than half of all consumer spending.
- Examples of FMDBs include milk, gum, fruit and vegetables, toilet paper, soda, beer, and over-the-counter drugs like aspirin.

When shopping for non-consumable goods where consumers typically have something in mind, there is mostly a one-to-one correlation between online searching and shopping. Consumable products have lower online browse/buy intention than non-consumable ones, but they do boast just as strong browse-to-buy correlations, which may be a factor in their increasing online sales.


## Save More for Retirement with the Right Financial Advisor

SPONSORED

The right financial advisor can help you reach your long-term financial goals. SmartAsset's free tool matches you with fiduciary financial advisors in your area in 5 minutes. Each advisor has been vetted by SmartAsset and is legally bound to act in your best interests. If you're ready to be matched with local advisors that will help you achieve your financial goals, get started now.

## Take the Next Step to Invest

Advertiser Disclosure

| SERVICE | Vanguard | | Betterment |
|---|---|---|---|
| NAME | Vanguard Personal Advisor | IG | Betterment |
| DESCRIPTION | Get trusted advice at a low cost. Start the conversation with a Vanguard advisor. LEARN MORE | Trade using technical analysis on IG's award-winning Forex trading platforms LEARN MORE | Betterment will build you a personalized portfolio for a low annual fee of LEARN MORE |


## Related Terms

### Consumer Goods Definition

Consumer goods are the products purchased by the average consumer. more

### Consumer Goods Sector Definition

The consumer goods sector is a category of stocks and companies that relate to


$1.50 per futures contract

TD Ameritrade Ready to roll over? We'll help.

Open an account. E*TRADE

PRACTICE TRADING

| | |
|---|---|
| **To:** | The Re-Marketing Group, Inc. (karima@kgulick.com) |
| **Subject:** | U.S. Trademark Application Serial No. 88325180 - PIC 'N SAVE OUTLETS BARGAINS & - N/A |
| **Sent:** | July 10, 2020 03:14:48 PM |
| **Sent As:** | ecom101@uspto.gov |
| **Attachments:** | |

**United States Patent and Trademark Office (USPTO)**

## USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued
on **July 10, 2020** for
**U.S. Trademark Application Serial No. 88325180**

Your trademark application has been reviewed by a trademark examining attorney. As part of that review, the assigned attorney has issued an official letter that you must respond to by the specified deadline or your application will be abandoned. Please follow the steps below.

**(1) Read the official letter.**

**(2) Direct questions** about the contents of the Office action to the assigned attorney below.

/Catherine Caycedo/
Catherine Caycedo
Trademark Examining Attorney
Law Office 101
(571) 272-7066
Catherine.Caycedo@uspto.gov

Direct questions about navigating USPTO electronic forms, the USPTO website, the application process, the status of your application, and/or whether there are outstanding deadlines or documents related to your file to the Trademark Assistance Center (TAC).

**(3) Respond within 6 months** (or earlier, if required in the Office action) from **July 10, 2020**, using the Trademark Electronic Application System (TEAS). The response must be received by the USPTO before midnight **Eastern Time** of the last day of the response period. See the Office action for more information about how to respond

## GENERAL GUIDANCE

- **Check the status of your application periodically** in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.
- **Update your correspondence email address**, if needed, to ensure you receive important USPTO notices about your application.
- **Beware of misleading notices sent by private companies about your application.** Private companies not associated with the USPTO use public information available in trademark registrations to mail and email trademark-related offers and notices – most of which require fees. All **official USPTO correspondence** will only be **emailed from the domain "@uspto.gov."**

# EXHIBIT 8

**From:** TMOfficialNotices@USPTO.GOV
**Sent:** Thursday, January 21, 2021 06:09 PM
**To:** karima@kgulick.com
**Cc:** trademarks@kgulick.com ; admin@kgulick.com
**Subject:** Official USPTO Notification: U.S. Trademark SN 88325180

OFFICIAL USPTO NOTICE OF ABANDONMENT

**TRADEMARK APPLICATION ABANDONED FAILURE TO TIMELY RESPOND TO OFFICE ACTION**

**U.S. Application Serial No.** 88325180
**Mark:** PIC 'N SAVE OUTLETS BARGAINS & CLOSE-OUT etc. (Stylized/Design)
**Owner:** The Re-Marketing Group, Inc.
**Docket/Reference No.**

**Issue Date:** January 21, 2021

**The application above is abandoned** because we did not receive a response to the previous Office action within the six-month response period.

If you did not receive the Office action or if the delay in filing your response was unintentional, you can file a Petition to Revive Abandoned Application - Failure to Respond Timely to Office Action form. **You must file the petition within two months of the issue date of this notice. The petition must include the following:**

(1) A signed statement by someone with firsthand knowledge of the facts, stating that the delay in responding by the due date was unintentional;

(2) A complete response to the Office action if the Office action was received, or, if the Office action was not received, a clear statement of this fact; and

(3) A petition fee.

If you have proof that the application was abandoned due to USPTO error, you can file a Request for Reinstatement of the application and include the proof (such as a copy of an email confirmation issued by the USPTO that includes the date of receipt and a summary of the online submission). You must file the request **within two months of the issue date of this notice**. There is no fee for this request.

For more information on filing a petition, see our webpage on petitions.

For questions about this notice, filing a petition, or filing a request for reinstatement, contact the Trademark Assistance Center at 1-800-786-9199 (select option 1) or at TrademarkAssistanceCenter@uspto.gov.

View this notice and other documents for this application online in the Trademark Status and Document Retrieval (TSDR) database.

EXHIBIT
169

# EXHIBIT 9

**California Secretary of State**
Electronic Filing

FILED
Secretary of State
State of California

# Trademark/Service Mark - Application for Registration

| | |
|---|---|
| Type of Mark: | Service Mark |
| Name of Owner (Registrant): | The Re-Marketing Group, Inc |
| Registration Number: | 02004475 |
| Classification Code(s): | 35 |
| File Date: | 03/05/2020 |

**Detailed Filing Information**

1. Application for Registration of: Service Mark
2. Owner (Registrant) Information:
   a. Name of Owner (Registrant): The Re-Marketing Group, Inc
   b. Business Address: 3424 A Garfield Avenue, Commerce, California, 90040, United States
   c. Declaration of Ownership:
   Registrant declares that the Registrant is the owner of the mark, that the mark is in use, and that to the Registrant's knowledge, no other person has registered the mark in this state, or has the right to use the mark, either in the identical form or in such near resemblance as to be likely, when applied to the goods or services of the other person, to cause confusion, to cause mistake, or to deceive.
   d. Business Structure: Corporation California
   e. Name of General Partner(s): None
3. Description of Mark:
   PIC 'N' SAVE OUTLETS BARGAINS & CLOSE-OUTS

EXHIBIT
170

See drawing page attached and incorporated by reference.

Use bizfile.sos.ca.gov *for online filings, searches, business records, and resources.*

Registration Number: 02004475

# California Secretary of State
Electronic Filing

4. Design Code(s):

5. Disclaimer:
   OUTLETS, BARGAINS & CLOSE-OUTS

6. Date of First Use of Mark
   a. Date Mark was First Used Anywhere: 12/06/2019
   b. Date Mark was First Used in California: 12/06/2019

7. Identification of Goods or Products/Services:
   a. List specific Goods or Products/Services:
      Retail store services featuring deeply discounted consumer goods
   b. Classification Code(s): 35

8. U.S. Patent and Trademark Information
   a. File Date:
   b. Serial/File Number:
   c. Status of Application:
   d. If Refused, Why?:

9. How is the Mark Used:
   On Business Signs, On Advertising Brochures, On Advertising Leaflets

10. Type of Specimen:
    Advertising Leaflets

See Specimen attached and incorporated by reference.

Registration Number: 02004475

# California Secretary of State
Electronic Filing

11. Authorized Representative: Yes

**Declaration of Accuracy and Signature**

I declare that all the foregoing information contained in this Application is accurate, true and correct and that I am authorized to sign this Application. I understand that if I willfully state in the Application any material fact that I know to be false, I will be subject to a civil penalty of not more than ten thousand dollars ($10,000.00).

Registrant or Authorized Representative: Karima Gulick

Date Electronically Signed: 03/05/2020

*The remainder of this page is intentionally left blank.*

**Pop Up Christmas Shop!**

**Follow the signs to savings round the back!**

# PIC 'N' SAVE OUTLETS
BARGAINS & CLOSE-OUTS

3424A Garfield Ave
Commerce, CA 90040
***Warehouse Entrance at rear of building***

## Bargains, Closeouts, Samples, one of a kind finds...and more!

**Quality Comforter Sets**
**$15.00 /7pc set**
*Compare to $49.99



**16pc Porcelain Dinnerware Set**
**$15.00**
*Originally $49.88



**Fleece Blankets**
**$5.00**
*Compare to $10.00




**T-Shirts Misprints/IR's**
**$1.00**
*Assorted Styles



**Razor 2500W Subwoofer Amp**
**$50.00**
*Compare to $100.00




**K-Cup 36ct**
**$7.00**
*Less than $0.20 a cup!




**Hoodie Blankets**
**$10.00**
*Assorted Styles




**Phone Accessories**
**$1.00 & Up**
*Assorted Types



## Plus much, much more. Tell your friends!
## Join Our Email List & Watch for Store Openings in 2020!

PIC 'N' SAVE OUTLETS BARGAINS & CLOSE-OUTS

# EXHIBIT 10

**GARY J. NELSON, CA Bar No. 184651**
gnelson@lrrc.com
**G. WARREN BLEEKER, CA Bar No. 210834**
wbleeker@lrrc.com
**SAMI I. SCHILLY, CA Bar No. 301653**
sschilly@lrrc.com
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
**655 N. Central Avenue, Suite 2300**
**Glendale, CA 91203-1445**
**Telephone: (626) 795-9900**
**Facsimile: (626) 577-8800**

Attorneys for Plaintiff
WOW BARGAINS & CLOSEOUTS, INC.

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445
Lewis Roca ROTHGERBER CHRISTIE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WOW BARGAINS & CLOSEOUTS, INC., a California corporation,

Plaintiff,

vs.

RE-MARKETING GROUP, INC., a California corporation; and GREGORY D. SHERWIN, an individual who resides in California,

Defendants.

Case No. 8:20-cv-01090-DOC-KES

**NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE**

**[Fed. R. Civ. P. 41(a)(1)(A)(i)]**

**Hon. David O. Carter**

Lewis Roca
ROTHGERBER CHRISTIE
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Please take notice that Plaintiff WOW Bargains & Closeouts, Inc. hereby dismisses its Complaint against Defendants Re-Marketing Group, Inc. and Gregory D. Sherwin without prejudice under Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure.

Dated: September 22, 2020

Respectfully submitted,

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By /s/G. Warren Bleeker
G. Warren Bleeker

Attorneys for Plaintiff
WOW BARGAINS & CLOSEOUTS, INC.