**GARY J. NELSON, CA Bar No. 184651**
gnelson@lewisroca.com
**G. WARREN BLEEKER, CA Bar No. 210834**
wbleeker@lewisroca.com
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
**655 N. Central Avenue, Suite 2300**
**Glendale, CA 91203-1445**
**Telephone: (626) 795-9900**
**Facsimile: (626) 577-8800**

Attorneys for Defendants and Counterclaimant
MARK MILLER and
WOW BARGAINS & CLOSEOUTS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RE-MARKETING GROUP, INC., a California corporation,

Plaintiff,

vs.

MARK MILLER, an individual; and WOW BARGAINS & CLOSEOUTS, INC., a California corporation,

Defendants.

WOW BARGAINS & CLOSEOUTS, INC., a California corporation,

Counterclaimant,

vs.

RE-MARKETING GROUP, INC., a California corporation, and GREGORY D. SHERWIN, an individual,

Counterclaim-Defendants.

Case No. 2:20-cv-09505-CAS (AFMx)

**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

**[Local Rule 56-1]**

**Hearing Date: November 1, 2021**
**Time: 10:00 a.m.**
**Courtroom: 8D, 8th Floor**
**First Street Courthouse**

**Pretrial Conf.: January 24, 2022**
**Trial Date: February 8, 2022**

**Hon. Christina A. Snyder**

***REDACTED VERSION OF DOCUMENT TO BE FILED PUBLICLY***



LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

# I. STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | Supporting Evidence/Citation |
|---|---|
| **History of the PIC 'N' SAVE Mark** | |
| 1. Defendant Mark Miller was an Executive Vice President and President of the original California-based Pic 'N' Save Corporation and worked there from 1988 to 2002. | Declaration of Mark J. Miller in Support of Defendants' Motion For Partial Summary Judgment ("Miller Decl.") ¶ 2. |
| 2. Roundy's Inc. is the owner of U.S. Trademark Reg. No. 1,443,606 for the mark PICK 'N SAVE for use with retail grocery store services, which issued on June 16, 1987 ("'606 Registration"). | Defendants' Request For Judicial Notice in Support of Their Motion For Partial Summary Judgment ("RJN"); Exh. 1 |
| 3. Roundy's Inc. is a subsidiary of Kroger. | RJN, Exh. 2 (Printout from Roundy's website) |
| 4. Roundy's claims a first use and first use in commerce of PICK 'N SAVE for retail grocery store services as of February 2, 1957. | RJN, Exh. 1 ('606 Registration) |
| 5. Roundy's existing '606 Registration is a concurrent use registration and Roundy's claims "exclusive use for the entire country except for the states of Florida, Georgia, North Carolina, South Carolina, Virginia, Alabama, Mississippi, Louisiana and Texas." | *Id.* |
| 6. Separate entities are currently operating PIC 'N' SAVE branded stores in Alabama, Florida, Mississippi, and Georgia and elsewhere | RJN, Exh. 3 (Pic N Save Grocery Outlet Website); Declaration of G. Warren Bleeker In Support of Defendants' Motion For Partial Summary Judgment ("Bleeker Decl."), Exh. 6 (Depo. Exh. 230 (Printout from LexisNexis)) |
| 7. In 2012, Mr. Sherwin and his company Re-Marketing Group ("RMG") filed a federal trademark application for PIC N SAVE for discount grocery services. | Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 14:23-15:1) |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445
LEWIS ROCA

| | |
|---|---|
| 8. Sherwin did not independently create the logo he used in his 2012 federal application, and admits he "basically plagiarized" a logo used by the original California-based Pic 'N Save Corporation. | *Id.* (Sherwin Depo. Tr. at 19:14-25)[1] |
| 9. Mr. Sherwin/RMG's 2012 federal trademark application was rejected by the USPTO based on a likelihood of confusion with Roundy's '606 PICK 'N SAVE Registration and went abandoned. | RJN, Exh. 4 (7.23.12 Office Action, Sherwin Depo. Exh. 143) |
| 10. Mr. Sherwin did not open any PIC N SAVE retail store at that time. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 22:10-21, 22:25-23:8) |
| **Mr. Miller's Discussions To Open A New Version of the PIC 'N' SAVE Stores** | |
| 11. During Mr. Miller's fifteen years at the original California Pic 'N Save Corporation, he "fell in love with the business and has loved it ever since." | Miller Decl., ¶ 3; Exh. 1 (WOW00000090-93) |
| 12. Since leaving the original Pic 'N Save Corporation in 2002, Mr. Miller has long considered opening up the next generation of PIC 'N' SAVE branded retail stores in southern California. | Miller Decl., ¶ 4. |
| 13. Since 1988, Mr. Miller was familiar with Emin and Artin Tersaakyan, of West Coast Dealz, Inc., who Mr. Miller knew as being in the wholesale closeout/seasonal space and as potential business partners. | Miller Decl., ¶ 5. |
| 14. In 2017, Mr. Miller contacted the Tersaakyans to discuss becoming potential wholesale suppliers for a new version of the PIC 'N' SAVE stores. | Miller Decl., ¶ 6 |

[1] Mr. Sherwin agreed that his personal deposition testimony could be treated as the 30(b)(6) testimony of RMG. Bleeker Decl., Exh. 2 (RMG 30(b)(6) (Rough) Depo. Tr. at 3:17-5:6).

| | |
|---|---|
| 15. During the 2018 and 2019 timeframe, Mr. Miller pursued several business opportunities, including the purchase of a candle company, and working on a potential PNS project. | Miller Decl., ¶ 7. |
| 16. In May 2018, Mr. Miller approached a longtime family friend and commercial real estate agent, Jodi Shoemake, to search for potential properties for a PIC 'N' SAVE retail store. | Bleeker Decl., Exh. 3 (Shoemake Depo. Tr. at 24:1-5); Miller Decl., ¶ 8. |
| 17. In May 2018, Mr. Miller introduced Ms. Shoemake to Emin and Artin Tersaakyan, of West Coast Dealz, Inc., who Mr. Miller introduced as being in the wholesale closeout/seasonal business and as potential business partners in Mr. Miller's contemplated PIC 'N' SAVE business. | Bleeker Decl., Exh. 3 (Shoemake Depo. Tr. at 25:1-22; 89:10-13; 91:22-92:3); Miller Decl. ¶ 8. |
| 18. Mr. Miller was also familiar with a wholesale grocery supplier, Greg Sherwin and his company RMG. | Miller Decl., ¶ 9. |
| 19. To this day, RMG represents on its website that RMG is "a wholesale only operation." | RJN Exh. 5 (RMG website printout). |
| 20. Mr. Miller also had preliminary discussions with Mr. Sherwin in 2018 and 2019 regarding a potential business relationship regarding a new version of the original California PIC 'N' SAVE branded retail stores. | Miller Decl., ¶ 9. |
| 21. Mr. Miller envisioned that he would oversee and manage the stores and that Mr. Sherwin/ RMG and/or Emin and Artin Tersaakyan/West Coast Dealz, would be potential suppliers for the new Pic 'N' Save business. | Miller Decl., ¶ 10; Bleeker Decl., Exh. 4 (Miller Depo. Tr. at 9:8-13). |
| 22. Mr. Miller also introduced Ms. Shoemake to Mr. Sherwin at which time Mr. Miller told Ms. Shoemake that Mr. Sherwin had experience in the grocery business, food and wholesale business. | Bleeker Decl., Exh. 3 (Shoemake Depo. Tr. at 45:16-22). |





LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| 23. Mr. Miller eventually retained Ms. Shoemake to be the commercial real estate agent for the PIC 'N' SAVE project. | Miller Decl., ¶ 8; Exh. 2 (June 5, 2019 Agreement between Lee & Associates and WOW Bargains, Shoemake Depo. Exh. 46) |
| 24. Ms. Shoemake did not consider Mr. Sherwin's input when evaluating retail spaces for the PIC 'N' SAVE project. | Bleeker Decl., Exh. 3 (Shoemake Depo. Tr. at 41:2-12; 42:4-16). |
| 25. Ms. Shoemake did not consider RMG or Mr. Sherwin to be her clients for the PIC 'N' SAVE project. | Bleeker Decl., Exh. 3 (Shoemake Depo. Tr. at 57:11-16; 60:6-8). |
| 26. Prior to the company WOW Bargains and Closeouts, Inc. being formed, Ms. Shoemake asked RMG to sign an agency disclosure agreement so she could receive any commission for a retail space. | Bleeker Decl. Exh. 3 (Shoemake Depo. Tr. at 86:22-87:22). |
| 27. Ms. Shoemake did not use the agency disclosure agreement to establish a client relationship with RMG. | Bleeker Decl. Exh. 3 (Shoemake Depo. Tr. at 86:22-87:22). |
| 28. On April 20, 2019, Mr. Miller sent an email to Mr. Sherwin and others identifying preliminary roles in the new potential business in which Mr. Miller identified his role as "El Jefe" (the boss), and identified at least two "strategic partners" (including Mr. Sherwin) and a marketing partner. | Miller Decl. ¶ 11, Exh. 3 (Depo. Exh. 156). |
| 29. From approximately March 2019 through August 2019, RMG let Mr. Miller and others involved in the new potential business to conduct business in offices/warehouse located at 3422 Garfield Avenue, Commerce, CA 90040 without requiring the payment of rent. | Miller Decl. ¶ 12; Bleeker Decl., Exh. 5 (Swisher Depo. Tr. at 150:24-151:2; 152:2-7). |
| 30. On May 5, 2019, Mr. Miller sent another email identifying preliminary key individuals and roles in the new potential business as follows:<br>Mark Miller (CEO)<br>Joe Swisher (CFO/COO) | Miller Decl., ¶ 13, Exh. 4 (Dep. Exh. 157). |





LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| Greg Sherwin (food buying, warehousing, office space)<br>West Coast Dealz (seasonal)<br>Mike Sheldon (marketing, branding)<br>Tim Conway, Jr. (marketing)<br>Mark Verge<br>Take Flight Social Media<br>Robert Adams (systems)<br>Jodi Shoemake (Real Estate)<br>Robert Campbell (Financing) | |
| 31. During the development of the potential new business, Mr. Sherwin acknowledged that Mr. Miller was taking the lead on this project. For example, in responding to a potential insurer for the new business, Mr. Sherwin confirmed to a third party that "Mark [Miller] is going to be the managing partner" and that the project is comprised of "MARK'S TEAM. ITS HIS BABY . . . ." | Miller Decl., ¶ 14, Exh. 5 (WOW00013420-13425). |
| 32. Mr. Miller consistently referred to Mr. Sherwin's potential role in the new company as a "key supplier, warehouse and office lease owner." | Miller Decl., ¶ 15; Exh. 6 (Depo. Exh. 155); Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 110:8-23). |
| 33. While Mr. Miller colloquially referred to the potential key individuals in the new business as "strategic partners" or "partners," no actual partnership was ever formed among any of these individuals. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 103:19-21); Miller Decl., ¶ 16. |
| 34. As part of the potential business relationship, Mr. Miller had conversations with all of the strategic partners regarding their potential roles in the new company and potential compensation, including conversations with Mr. Sherwin. | Miller Decl., ¶ 17. |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| 35. Mr. Miller also introduced his outside commercial real estate agent, Ms. Shoemake, as a "strategic partner." | Bleeker Decl. Exh. 3 (Shoemake Depo. Tr. at 131:10-17); Bleeker Decl., Exh. 4 (Miller Depo. Tr. at 172:13-14, 22-23). |
| 36. Mr. Miller considered outside firm Ware Malcomb a "strategic partner." | Bleeker Decl., Exh. 4 (Miller Depo. Tr. at 186: 19-20). |
| 37. Mr. Miller considered Emin and Artin Tersaakyan/West Coast Dealz to be "strategic partners." | Bleeker Decl., Exh. 4 (Miller Depo. Tr. at 253: 9-12). |
| 38. During this long process of negotiating roles and compensation, Mr. Sherwin sought compensation in the form of payment above cost for supplying wholesale grocery items and Mr. Sherwin also sought at least 15% ownership in the new business. | Miller Decl., ¶ 18; Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 101:4-6; 102: 13-15). |
| 39. Mr. Miller believed that the appropriate form of payment for Mr. Sherwin/RMG's services would be payment at a specified percentage above cost for supplying wholesale grocery items, although that percentage was never agreed upon. | Miller Decl. ¶ 18. |
| 40. At no point during the negotiations did Mr. Miller ever make an offer to Mr. Sherwin as to a specific percentage of ownership in the new business. | Miller Decl., ¶ 19. |
| 41. Despite numerous discussions over the period of many months, at no point in time did Mr. Sherwin and Mr. Miller ever come to an agreement as to Mr. Sherwin's role, responsibilities, expectations, or compensation for the new company. | Miller Decl., ¶ 19; Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 101:4-102:11; 107-24-108:2; 172:20-23). |
| 42. When asked: "And at any point in time were the terms of this business arrangement finalized?" Mr. Sherwin admitted: "No, it wasn't." | Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 107:24-108:1). |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| **Mr. Miller's Payment For and Exclusive Ownership of the Updated PIC 'N' SAVE Logo** | |
|---|---|
| 43. As part of the development of the new business, Mr. Miller retained and paid the international design firm Ware Malcomb $4000 to create a new, high-resolution logo and design for the new PIC 'N' SAVE stores. | Miller Decl., ¶ 20, Exh. 7 (Engagement Letter/Design Work WOW00029287); Exh. 8 (WOW00007306-07, Invoice from WareMalcomb); Exh. 9 (WOW00000277-281 showing payment by Mr. Miller to Ware Malcomb); |
| 44. Neither Mr. Sherwin/RMG nor the Tersaakyans/West Coast Dealz, nor any other potential business entity paid any amount of money towards the creation of the new logo and design. | Miller Decl., ¶ 20. |
| 45. On February 26, 2019, Ware Malcomb provided the latest designs to Mr. Miller. | Miller Decl., ¶ 21, Exh. 10 (RMG 1042-1052). |
| 46. On or about March 18, 2019, Ware Malcomb provided updated, high-resolution logos and designs to Mr. Miller including the following designs. | Miller Decl., ¶ 22 Exh. 11 (WOW00028516-28523). |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
|  | |
| 47. On September 18, 2019, after the WOW entity was created, Ware Malcomb assigned all exclusive rights, including any copyright rights, in the new logo and design, to WOW, in a notarized, written document. | Miller Decl., ¶ 23, Exh. 12 (WOW00007494-7499).0 |
| **2019 Federal PIC 'N' SAVE Intent-To-Use Application (Now Abandoned)** | |
| 48. Prior to creation of the new business, Pasadena attorney John Poxon recommended trademark attorney Michael Grace to Mr. Miller. | Miller Decl., ¶ 24; Exh. 13 (WOW00029345); Bleeker Decl., Exh. 4 (Miller Depo Tr. at 90:4-13). |
| 49. Prior to creation of the new business, attorney Michael Grace provided trademark counsel regarding the new potential business to Mr. Miller and Mr. Sherwin. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 123:9-11; 124:21-125:4). |

| | |
|---|---|
| 50. Mr. Sherwin admitted that he never disagreed with Mr. Grace's legal advice. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 123:9-11; 124:21-125:1). |
| 51. On March 1, 2019, Mr. Grace initially advised, regarding filing an intent-to-use trademark application, that the "best order of business is to form the entity and then file the [trademark] application." | Miller Decl., ¶ 25 Exh. 14 (Depo. Exh. 158): Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 126:12-18). |
| 52. As of March of 2019, the new anticipated corporate entity had not yet been formed. | Miller Decl., ¶ 26. |
| 53. In order to expedite the trademark filing, Mr. Sherwin asked Mr. Grace if the application could be filed in RMG's name "and then Re-Marketing sells rights to use at $1.00 a year on a 5, 10, 20 year cont[r]act . . . ." | Miller Decl., ¶ 27; Exh. 14 (Depo Exh. 158 at RMG 1391). |
| 54. Mr. Grace responded on March 1, 2019: "Yes, we can make that work. Who will sign?" | *Id.* |
| 55. Mr. Sherwin responded on March 1, 2019: "I will sig[n] whatever RMG needs to sign[.] Once Newco set I will sell : assign rights to Newco[.] I believe this will expedite filing." | *Id.* at RMG 1390. |
| 56. At the time Mr. Sherwin agreed to "sig[n] whatever RMG needs to sign" and agreed to "sell : assign" rights to Newco" to expedite the trademark filing, there was no agreement in place as to Mr. Sherwin's role in the new company or his compensation. | Miller Decl., ¶ 28. |
| 57. When Mr. Sherwin agreed to "sig[n] whatever RMG needs to sign" and agreed to "sell : assign" rights to Newco" to expedite the trademark filing, Mr. Sherwin did not state that his agreement was contingent on his role or compensation with the new company. | *Id.* |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| 58. Mr. Miller then asked if RMG could file the application even though it is a "wholesaler." | Miller Decl., ¶ 29; Exh. 14 (Depo Exh. 158 at RMG 1390). |
| 59. Mr. Grace responded on March 1, 2019: "It's best to wait until newco is formed, but if it cannot be done and meet your deadline we can file under Re-Marketing and assign the registration to newco after it [the registration] issues." | *Id.* |
| 60. Mr. Miller responded: "Ok." | *Id.* |
| 61. In a related email thread between the same parties on that same topic on March 1, 2019, Mr. Miller again expressed a concern that the intent-to-use trademark application for retail services would be registered under "Re-Marketing that is a wholesaler." | Miller Decl., ¶ 30; Exh. 15 (Depo. Exh. 160). |
| 62. Again, Mr. Grace responded that same evening "Not to worry. The rights flow via license by Re-Marketing to newco[.] We will use the description of goods for newco. Assignment follows after the registration has issued." | Miller Decl., ¶ 31; Exh. 15. |
| 63. On March 2, 2019, Mr. Grace responded to Mr. Miller that Mr. Grace could file an intent-to-use application in the name of Re-Marketing and that Mr. Miller should consult corporate counsel to determine the specific corporate form of the new company. | Miller Decl., ¶ 32; Exh. 15. |
| 64. Mr. Miller gave approval for Mr. Grace to file the intent-to-use application in the name of Re-Marketing based on Mr. Grace's legal advice and based on Mr. Sherwin's agreement to license and then assign any rights to the new company. | Miller Decl., ¶ 33. |
| 65. On March 4, 2019, Mr. Grace filed an intent-to-use trademark application on behalf of "The Re-Marketing Group, Inc.," U.S. Application Serial No. 88325180 ("'180 Application"). | Miller Decl., ¶ 34 Exh. 16 (email from Michael Grace 3/5/19 with application filed, WOW00028451-28458). |

| | |
|---|---|
| 66. Mr. Sherwin admitted that "whatever trademark rights that were owned by RMG" would be licensed to the new company. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 108:19-24; 140:24-25). |
| 67. Mr. Sherwin admitted that "[e]verybody knew we were filing a trademark for Re-Marketing Group for Pic 'N' Save Outlets, Bargains & Closeouts to license it to NewCo to open stores . . . . At the end of the day, it was going to license." | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 156:8-157:4). |
| 68. In agreeing to authorize Mr. Grace to file the '180 Application in the name of RMG, Mr. Miller relied on Mr. Sherwin's unconditional written representations that RMG would initially license and then "sell: assign" the rights to the new company after it was created. | Miller Decl., ¶ 34. |
| 69. The legal services provided by Mr. Grace did not include designing the logos. | Miller Decl., ¶ 35. |
| 70. On February 26, 2019, prior to the trademark filing, Mr. Miller provided the logos to Mr. Grace that had been created by Ware Malcomb and paid for by Mr. Miller. | Miller Decl., ¶ 35, Exh. 10 (RMG 1042-1052). |
| 71. After Mr. Sherwin learned that the new company would be named WOW, Mr. Sherwin never told Mr. Miller that RMG would not license whatever rights it obtained to the new entity WOW. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 164:22-165:4). |
| **Miller Creates WOW, the "Newco" or New Company** | |
| 72. After the '180 Application was filed, Mr. Miller continued to consult with his corporate counsel who recommended converting an existing company into the new company, and call the new company WOW Bargains & Closeouts (WOW). | Miller Decl., ¶ 36. |
| 73. On April 15, 2019, Mr. Miller forwarded Mr. Sherwin an email from | Miller Decl., ¶37 Exh. 17 (WOW00009637-9638) |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| Mr. Miller's corporate counsel explaining the procedure they would use to convert an existing company owned by Mr. Miller (Dynamic Candle) into the new company for the new PIC 'N' SAVE business enterprise. | |
| 74. On April 16, 2019, Mr. Sherwin confirmed receipt of the email outlining the procedure of converting an existing business and identifying the name of the new company as WOW and Mr. Sherwin responded: "Cool. I guess." | *Id.* |
| 75. On April 18, 2019, Mr. Miller changed the name of his prior company, Dynamic Candle, to WOW Bargains & Closeouts, Inc., and publicly filed the Certificate of Amendment with the Secretary of State of California. | RJN, Exh. 6 (WOW00000122) |
| 76. As of April 18, 2019 through the present, Mr. Miller was and is the Chief Executive Officer of WOW Bargains & Closeouts. | Miller Decl., ¶ 38. |
| 77. Mr. Miller paid for the costs and attorneys' fees associated with creating the new company, WOW, and Mr. Sherwin and RMG did not pay for any of these costs. | Miller Decl., ¶ 39. |
| 78. On May 17, 2019, Mr. Miller again asked Mr. Grace (cc'ing Mr. Sherwin) if it would now be appropriate to transfer the pending intent-to-use trademark application to WOW. | Miller Decl., ¶ 40; Exh. 18 (Depo Exh. 161). |
| 79. On that same day, Mr. Grace responded to Mr. Miller and Mr. Sherwin: "It would be best to wait until the registration issues before making an assignment. In the mean time, a license to use the mark would be best." | Miller Decl. ¶ 41, Exh. 19 (Depo. Exh. 162). |
| 80. Also, on May 17, 2019, Mr. Sherwin, with full knowledge that WOW was the name of the new company, emailed Mr. | Miller Decl., ¶ 42 Exh. 20 (Depo. Exh. 164). |

| | |
|---|---|
| Miller that they needed to discuss the licensing agreement and that Mr. Sherwin hoped the agreement would cover the attorney fees to file the '180 Application. | |
| 81. In response, Mr. Miller stated that the attorney fees would be reimbursed at the closing and funding of WOW later that year. | *Id.* |
| 82. Mr. Sherwin confirmed there "has to be licensing of the name from RMG to Newco" per the advice of Mr. Grace. | *Id.* |
| 83. Mr. Sherwin was never an employee, officer, or director of WOW. | Miller Decl., ¶ 43; Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 37:25-38:9). |
| 84. Mr. Sherwin never invested in WOW. | Miller Decl. ¶ 44; Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 38:10-12). |
| 85. RMG is a separate entity from WOW. | Miller Decl,, ¶ 45; Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 39:2-4). |
| 86. In June 2019, after WOW was formed, the commercial real estate agent working on the PIC 'N' SAVE project at Mr. Miller's request, Ms. Shoemake, asked WOW to sign an exclusive right to represent agreement. | Bleeker Decl., Exh. 3 (Shoemake Depo. Tr. at 66:3-10); *see also* SUF 21. |
| **The New Company, WOW, Begins Using its Pic 'N' Save Logo and Design** | |
| 87. In July 2019, WOW created, ordered and began distributing business cards incorporating the new PIC 'N' SAVE design and logo that Mr. Miller had paid for. | Miller Decl. ¶ 46; Exh. 21 (WOW00013656-13659) and Exh. 22 (WOW00015940) |
| 88. The July 2019 WOW PIC 'N' SAVE business cards state that Mark J. Miller is the Chairman / CEO / President, as shown below. | *Id.* |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
|  | |
| 89. The July 2019 WOW PIC 'N' SAVE business cards accurately identify the address for WOW as 3422 Garfield Avenue, Commerce, CA 90040. | *Id.* |
| 90. WOW never made any business cards with Mr. Sherwin's name or the RMG name on them. | Miller Decl., ¶ 47. |
| 91. In July 2019, WOW distributed flyers to landlords and industry brokers incorporating the new PIC 'N' SAVE design and logo, as WOW sought retail space for its stores. | Miller Decl., ¶ 48; Exh. 23 (SHOEMAKE0002767) |
| 92. In August 2019, WOW set up signage displaying its new PIC 'N' SAVE design and logo in the office space WOW leased from RMG located at 3422 Garfield Avenue, Commerce, CA 90040. | Miller Decl., ¶ 49. |
| 93. WOW does business as Pic 'N' Save Bargains. | Bleeker Decl., Exh. 4 (Miller Depo. Tr. at 108: 5-7). |
| **WOW d/b/a Pic 'N' Save is Funded By Outside Investors** | |
| 94. For over a year and a half, Mr. Miller spent hundreds of hours working to secure outside investors in the new Pic 'N' Save business. | Miller Decl., ¶ 50. |
| 95. Mr. Miller ultimately was successful in obtaining outside funding totaling over $1.5 million. | Miller Decl., ¶ 50, Exh. 24 (Swisher Depo. Exh. 37) |
| 96. Mr. Sherwin admitted that he "didn't know what [Mr. Miller] was doing with the investors. I wasn't privy to that. I | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 102:22-25). |

| | |
|---|---|
| wasn't involved in the fundraising, I wasn't involved in the projections, the projected sales." | |
| 97. The closing date on which WOW was officially funded was July 24, 2019. | Miller Decl., ¶ 51; Exh. 24 (Swisher Depo. Exh. 37, and Exh. 25 (WOW00003433 Summary of Deal Closing Costs) |
| 98. In consultation with many advisors, and in his capacity as CEO, Mr. Miller and the Board of WOW ultimately made the decision that only monetary investors would be granted equity ownership in WOW. | Miller Decl., ¶ 52. |
| 99. The Tersaakyans/West Coast Dealz were not granted an equity ownership in WOW. | Miller Decl., ¶ 53. |
| 100. Ms. Shoemake was not granted an equity ownership in WOW. | Miller Decl., ¶ 54. |
| 101. Ware Malcomb was not granted an equity ownership in WOW. | Miller Decl., ¶ 55. |
| 102. Also, based on consultation with many advisors, and in his capacity as CEO, Mr. Miller ultimately made the decision to retain 70% of the common shares in WOW to allow WOW to accept additional rounds of outside investments and to potentially offer common shares to WOW employees. | Miller Decl. ¶ 56. |
| 103. Mr. Sherwin never expressed any interest to Mr. Miller in investing money in WOW. | Miller Decl., ¶ 57. |
| 104. Mr. Sherwin never offered to invest money in WOW. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 120: 5-7). |
| 105. Mr. Sherwin was never told he was prohibited from investing in WOW. | Miller Decl., ¶ 58; Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 120:19-121:4). |
| 106. Mr. Sherwin was never in fact prohibited from investing in WOW. | Miller Decl., ¶ 59. |
| 107. Mr. Sherwin did not invest any money in WOW. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 38: 10-12). |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| 108. At the formation of the company, WOW allocated $10,000 in funds to reimburse Mr. Sherwin for legal fees upon a submission of the bills for reimbursement. | Miller Decl., ¶ 60 Exh. 24 (Swisher Depo. Exh. 37). |
| 109. Mr. Sherwin admitted that he failed to submit any bills for reimbursement for the trademark legal fees. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 170: 24-171:2). |
| 110. If Mr. Sherwin submitted the bills for reimbursement, WOW would reimburse him now. | Miller Decl., ¶ 61. |
| **Written Lease Agreement Between RMG and WOW** | |
| 111. In August 2019, RMG and WOW negotiated a commercial lease agreement such that WOW began paying rent for the space it had been using since March 2019 to continue to conduct business in RMG's offices/warehouse located at 3422 Garfield Avenue, Commerce, CA 90040. | Miller Decl. ¶ 62; Exh. 26 (RMG 002412-002426, final version of lease); Bleeker Decl. Exh. 5 (Swisher Depo. Tr. at 150:24-151:2; 152:2-7) |
| 112. In September 2019, RMG and WOW entered into a formal written lease agreement. | Miller Decl. ¶ 62; Exh. 26 (RMG 002412-002426; Bleeker Decl., Exh. 5 (Swisher Depo. Tr. at 150: 5-9; 244:21-23). |
| 113. During the negotiation of the lease, Mr. Sherwin asked his insurance agent Marina Andrews to provide comment on the proposed drafts. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 199:7-200:10). |
| 114. Ms. Andrews "highly suggested" to Mr. Sherwin that he should consult an attorney regarding the lease, but Mr. Sherwin did not. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 200:11-13). |
| 115. Under the terms of the lease, RMG was the landlord and WOW Bargains & Closeouts was the lessee. | Miller Decl. ¶ 62; Exh. 26 (RMG 002412-002426, final version of lease); |
| 116. Under the terms of the lease, WOW paid RMG rent of $1000 per month. | *Id.* |
| 117. Under the terms of the lease, WOW was contractually required to "carry on business under the name of WOW | Miller Decl. ¶ 62; Exh. 26 (RMG 002412-002426, final version of |

| | |
|---|---|
| Bargains & Closeouts, Inc. doing business as Pic 'N' Save Outlets and will not change such name without the prior written consent of" RMG. | lease); Bleeker Decl., Exh. 5 (Swisher Depo. Tr. 245: 6-19). |
| **WOW Terminates Lease and Moves Its Operations to Vernon, CA** | |
| 118. The working relationship between Mr. Sherwin and Mr. Miller deteriorated and on October 23, 2019, WOW provided a notice of termination of the lease to RMG effective as of December 22, 2019. | Miller Decl., ¶ 63; Exh. 27 (RMG 003337-38). |
| 119. Ms. Shoemake is not aware that Mr. Sherwin asked her to perform any professional services after Mr. Sherwin's working relationship with Mr. Miller ended. | Bleeker Decl., Exh. 3 (Shoemake Depo. Tr. at 88: 4-7). |
| 120. In November 2019, WOW moved its business offices to a new location at 4519 Everett Ave. in Vernon, CA (also located in Los Angeles, County) and continued its business operations in Vernon until it opened its flagship Anaheim store in 2020. | Miller Decl., ¶ 64. |
| 121. In January 2020, WOW updated its business cards to reflect the new business address as shown below.<br><br>Mark J. Miller<br>CHAIRMAN / CEO / PRESIDENT<br><br>(818) 454-8864<br><br>mmiller@pnsoutlets.com<br><br>PIC 'N' SAVE℠<br>BARGAINS & CLOSE-OUTS | Miller Decl., ¶ 65, Exh. 28 (WOW00029348-29353). |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| Wendell Daniel<br>CFO<br>(949) 375-8566<br>wdaniel66@gmail.com<br>PIC 'N' SAVE[SM]<br>BARGAINS & CLOSE-OUTS | |
| 122. WOW paid rent for its rented office space from RMG through December 22, 2019. | Miller Decl., ¶ 66 |
| 123. WOW continued to use its PIC 'N' SAVE trademark / logo /design in connection with setting up its first retail store from July 2019 through the present. | Miller Decl., ¶ 67. |
| **The USPTO Rejects The '180 Application/RMG Abandons The '180 Application** | |
| 124. On July 10, 2020, the USPTO issued a Final Office Action rejecting the '180 Application based on a likelihood of confusion with Roundy's Inc.'s Trademark Reg. No. 1,443,606 for the mark PICK 'N SAVE, also for grocery services. | RJN Exh. 7 (Depo Exh. 168) |
| 125. RMG failed to respond to the Final Office Action within the six-month response period and on January 21, 2021, the '180 Application was deemed abandoned by the USPTO. | RJN Exh. 8 (Depo Exh. 169) |
| 126. Mr. Sherwin stated at his deposition that he personally decided that RMG would not license any rights it obtained at the point when Mr. Sherwin learned that only investors would receive equity in the new company WOW, but Mr. | Bleeker Decl, Exh. 1 (Sherwin Depo. Tr. at 165:18-166:1); Miller Decl., ¶ 68. |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| Sherwin concealed this from Mr. Miller and WOW. | |
| **RMG's Token Use of WOW's Exclusive Trademark/Logo/Design** | |
| 127. Unbeknownst to Mr. Miller or WOW at the time, in early December of 2019, while WOW was still a lessor paying rent at RMG's warehouse (but had already moved offices), RMG created an advertising flyer using an unauthorized screen shot of WOW's PIC 'N' SAVE signage including WOW's exclusive logo/design ("December Flyer"). | Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 70:1-15); Exh. 7 (Sherwin Depo. Exh. 152); and Exh. 8 (Acevedo (Rough) Depo. Tr. at 26:5-17). |
| 128. RMG admits it obtained the image of WOW's exclusive logo/design from Mr. Miller's former office space that WOW was still leasing from RMG. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 70:1-15). |
| 129. The PIC 'N' SAVE mark is shown only once in the December Flyer and that only instance depicts WOW's exclusive trademark/logo/design. | Bleeker Decl., Exh. 7 at Depo. Exh. 152. |
| 130. RMG did not have permission from WOW for RMG to use WOW's exclusive trademark/logo/design for any purpose. | Miller Decl., ¶ 69. |
| 131. RMG did not have permission from WOW to take any items from the office space still leased by WOW at that time. | Miller Decl., ¶ 70. |
| 132. At the time RMG created and claims to have circulated the flyer on or around December 6, 2019, WOW was not aware of RMG's unauthorized use of WOW's exclusive logo and design. | Miller Decl., ¶ 71. |
| 133. On or about, December 6, 2019, Mr. Sherwin stated that RMG made 1000 copies of the December Flyer. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 65:4-8). |
| 134. Mr. Sherwin stated that following the printing on the December Flyer on December 6, 2019, at least some of the flyers were dispersed in an area located near RMG's warehouse/WOW's office | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 66:20-67:5). |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| space in Commerce, CA including at a nearby medical clinic, toy wholesaler, and on nearby car windshields and homes. | |
| 135. Mr. Sherwin could not remember if all 1000 copies of the December Flyer were actually distributed. | Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 68:25-69:4). |
| 136. Mr. Sherwin stated that the December Flyer was meant to promote a "pop-up" store located in a portion of RMG's warehouse located at 3424 Garfield in Commerce, CA in December 2019. | Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 62:12-14). |
| 137. RMG presented no evidence that anyone who saw the December flyer came to any RMG warehouse pop-up store. | Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 70:24:71:3). |
| 138. RMG's employee Mr. Acevedo recalls making additional flyers but did not know if they were ever circulated. | Bleeker Decl. Exh. 8 (Acevedo (Rough) Depo. Tr. at 29:15-20 |
| 139. Mr. Sherwin stated that RMG moved the location of the pop-up store in January 2020 to 3422 Garfield in Commerce, CA and it ceased operations in March or April of 2020. | Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 60:9-13). |
| 140. RMG's pop-up store from January 2020 to March or April 2020, was located at the same address, 3422 Garfield, Commerce, CA, as WOW's business address from March through December 2019, and this address was listed on WOW's business cards that WOW distributed a few months earlier. | Miller Decl., ¶ 72. |
| 141. The properties at 3422 Garfield and 3424 Garfield are within 25 feet of one another and share an alley. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 53:4-11). |
| 142. Mr. Sherwin remembers only one instance of use of the words PIC 'N' SAVE on signage inside of either pop-up store. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 75:19-76:1; 79:15-80:781: 5-9). |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| 143. Mr. Sherwin could only recall one sign with PIC 'N' SAVE that RMG had located inside either pop-up store. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 75:19-76:1; 79:15-80:781: 5-9). |
| 144. The one sign inside either pop-up store was WOW's signboard depicting WOW's exclusive PIC 'N' SAVE logo and design that RMG physically took from WOW's office while WOW was leasing that office space from RMG. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 75:19-76:1; 78:17-79:11; 82: 10-14); Exh. 9 (Depo. Exh. 153 at RMG 000002). |
| 145. WOW's signboard that RMG took without permission from WOW's offices sat on a warehouse shelf in plastic wrap and protective corner coverings, set among other products on shelves as shown below.     | Bleeker Decl. Exh. 9 (Depo. Exh. 153 at RMG 000001, 000002). |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| 146. RMG asserts that it hung a "warehouse sale" sign outside its first pop-up store during December 2019 that included a small Pic 'N' Save logo, shown below, but took the sign down every night.    | Bleeker Decl. Exh. 9 (Depo. Exh. 153 at RMG 000024); Exh. 1 (Sherwin Depo. Tr. at 87:21-24; 89:3-7). |
| 147. RMG's pop-up sign states that items are for sale in connection with a "warehouse sale." | Bleeker Decl. Exh. 9 (Depo. Exh. 153 at RMG 000024). |
| 148. RMG asserts that it hung a different sign outside the pop-up stores advertising for t-shirts, shown below, but took the sign down every night.    | *Id.* at RMG 000023 |
| 149. Mr. Sherwin does not recall any other banners used in connection with either pop-up store. | Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 87:25-88:4). |
| 150. RMG did not maintain any records of its purported sales at the pop-up store other than paper copies of certain cash register receipt tapes for certain days. | Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 45: 20-22; 50:13-15; 56:16-21). |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| 151. Mr. Sherwin testified that RMG did not regularly keep its cash register receipt tapes from its purported sales at the pop-up store and instead would throw them away. | Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 40:24-42:4; 50:6-15). |
| 152. Mr. Sherwin testified that the cash register receipt tapes from the pop-up store that RMG did not throw away were provided for production. | Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 40:24-42:2-6). |
| 153. The cash register receipt tapes produced by RMG indicate all sales were cash sales only. | Bleeker Decl. Exhs. 10-12 (Depo. Exhs. 148-150) |
| 154. The cash register receipt tapes produced by RMG do not indicate that any sales tax was charged. | *Id.* |
| 155. Mr. Sherwin admitted that RMG did not charge any customers sale tax for any of the warehouse pop-up sales. | Bleeker Decl. Exh. 2 (RMG 30(b)(6) (Rough) Depo. Tr. at 5:17-21). |
| 156. RMG produced cash register receipt tapes that included purported dates of sale for the following dates: Dec. 21-24, 2019, Feb. 11-15, 20-22, 27-28, March 4-6, 12-14, 19 and April, 21, 2020. | Bleeker Decl. Exhs. 10-12 (Depo. Exhs. 148-150). |
| 157. One of RMG's draft flyers indicates the warehouse pop-up store was only open two days a week. | Bleeker Decl., Exh. 13 (RMG002289 to 002291). |
| 158. The total cash sales during this entire period shown by the cash register receipt tapes was less than $14,000. | Bleeker Decl. Exhs. 10-12 (Depo Exhs. 148-150) and Exh. 14 summary chart of total sales by day) |
| 159. Mr. Sherwin testified that the only documentation for the purported sales in January 2019 (the paper receipts) were all thrown away. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 50: 6-12) |
| 160. Mr. Sherwin testified that RMG did not "determine the volume of total sales for the pop-up store." | Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 48: 3-5) |
| 161. Mr. Sherwin testified that many of the purported customers at the RMG pop-up store in Commerce, CA worked nearby. | Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 52:8-13) |

| | |
|---|---|
| 162. RMG did not produce any evidence that any person who entered the pop-up store or purchased an item from its pop-up store resided outside of Commerce, CA. | Bleeker Decl., Exh. 2 (RMG 30(b)(6) (Rough) Depo. Tr. at 15:11-17). |
| 163. RMG did not produce any evidence that any person who entered the pop-up store or purchased an item from its pop-up store resided outside of Los Angeles County, CA. | *Id.* |
| 164. RMG did not produce any evidence that any person who entered the pop-up store or purchased an item from its pop-up store resided in Orange County, CA. | *Id.* |
| 165. RMG did not produce any evidence that any person who entered the pop-up store or purchased an item from its pop-up store resided outside of California. | *Id.* |
| 166. RMG did not use PIC 'N' SAVE in any advertisement or promotion of its pop-up store on the internet or on social media. | Bleeker Decl, Exh. 2 (RMG 30(b)(6) (Rough) Depo. Tr. at 16:23-17:18,19:22-25). |
| 167. The discounted products that RMG claims to have offered for sale in its pop-up store included 15 pallets of merchandise damaged in a fire, and which showed signs of "[s]ome extinguisher residue, [and] faint odor." | *Id.* at 23:9-14; 24:12-17; Bleeker Decl. Exh. 15 (RMG 002304-11-redacted). |
| 168. 100% of the items sold at the warehouse pop-up stores were "salvaged" goods. | Bleeker Decl. Exh. 2 (RMG 30(b)(6) (Rough) Depo. Tr. at 26:8-14). |
| 169. Mr. Sherwin testified that the customer receipt that was printed after a purchase at the pop-up store included the words "Pic 'N' Save Outlets." | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 56:2-15). |
| 170. Mr. Sherwin testified that many of the customers of the pop-up store said they "don't need the receipt" in which case "we'd crumple it up and throw it in the trashcan." | *Id.* at 52:8-13. |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| 171. RMG's cash register used at the pop-up store at some point "crapped out" according to Mr. Sherwin. | *Id.* at 55:6-11. |
| 172. RMG has never licensed any purported rights to any PIC 'N' SAVE trademark. | *Id.* at 204:15-17. |
| 173. RMG has never taken a license from someone else who claimed to own rights to a PIC 'N' SAVE related mark. | *Id.* at 205:2-4. |
| 174. RMG does not assert any other trademark use in Los Angeles County other than the purported use from the pop-up stores. | *Id.* at 207:14-19. |
| **RMG Files A Trademark Application For WOW's Exclusive Trademark/Logo/Design With the California Secretary of State** | |
| 175. On March 5, 2020, unbeknownst to WOW, and without WOW's permission or authorization, RMG filed a trademark application with the California Secretary of State for the mark: PIC 'N' SAVE OUTLETS BARGAINS & CLOSEOUTS for "Retail store services featuring deeply discounted consumer goods." | RJN Exh. 9 (Depo. Exh. 170). |
| 176. An authorized representative for RMG declared, subject to a civil penalty of up to $10,000, that the information contained in the application to the California Secretary of State "is accurate, true and correct" and that the representative is "authorized to sign" the application on behalf of the applicant. | *Id.* |
| 177. The only specimen of (purported) use submitted by RMG with its 2020 California application was its December 2019 flyer, in which RMG used an unauthorized screen shot of WOW's exclusive trademark/logo/design. | RJN Exh. 9; Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 196:16-197:4). |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| 178. The California Secretary of State is statutorily authorized to "require a statement as to whether the application to register the mark, or portions thereof or a composite thereof, has been filed by the applicant or a predecessor in interest with the United States Patent and Trademark Office and, if so, the applicant shall provide full particulars with respect thereto, including the filing date and serial number of each application, the status thereof, and, if any application was finally refused registration or has otherwise not resulted in a registration, the reasons for the refusal or result." | Cal. Bus. & Prof. Code Section 14207(b). |
| 179. In section 8 of the official form for the trademark application submitted to the California Secretary of State, each trademark applicant is asked to identify "U.S. Patent and Trademark Information" including "File Date", Serial/File Number"; "Status of Application"; and "If Refused, Why?" | RJN Exh. 9 (Depo Ex. 170) |
| 180. As of the March 5, 2020 filing date of RMG's California application, RMG knew that the USPTO had rejected RMG's initial 2012 federal trademark application for PIC 'N' SAVE BARGAINS CLOSEOUTS as confusingly similar to the existing Roundy's '606 PICK 'N SAVE Registration, and that RMG had abandoned that federal application as of January 2013. | RJN Exhs. 4, 9; Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 29:15-30:7; 154:14-24; 193:18-24). |
| 181. As of the March 5, 2020 filing date of RMG's California application, RMG knew the USPTO had initially rejected RMG's 2019 '180 Application for PIC 'N SAVE OUTLETS BARGAINS & CLOSE-OUTS as being confusingly | RJN Exhs. 7, 9; Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 193:18-24). |





LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| similar to the existing Roundy's '606 PICK 'N SAVE Registration. | |
| 182. Mr. Sherwin admits that RMG decided not to use PIC 'N' SAVE back in 2012 after RMG "got a punch back from the USPTO." | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 96:6-19). |
| 183. RMG did not ever file a petition to revive its 2012 federal trademark application for PIC 'N' SAVE because "it was going to be turbulent and we needed to come up with a different name." | *Id.* at 36:21-37:3 |
| 184. The trademark image RMG submitted to the California Secretary of State is the identical trademark/image/logo submitted to, and rejected by, the USPTO in the '180 Application, and is also the identical trademark/image/logo that is owned exclusively by WOW. | RJN Exh. 9 (Depo Ex. 170); Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 196:16-197:4). |
| 185. In its March 5, 2020 trademark application submitted to the California Secretary of State, RMG failed to disclose any information on Section 8 of the application regarding U.S. Patent and Trademark Information. | RJN Exh. 9 (Depo Ex. 170) |
| **WOW's Actions To Enforce Its Rights** | |
| 186. In March of 2020, WOW first learned of RMG's California trademark application, and in turn, first learned of the existence of RMG's December 2019 Flyer, and RMG's unauthorized copying of WOW's exclusive PIC 'N' SAVE trademark/logo/design. | Miller Decl., ¶ 73. |
| 187. After learning this in March 2020, Mr. Miller attempted to locate the pop-up store but did not see any signage or any operating pop-up store. | *Id.* |
| 188. Also after learning of this, WOW prepared and filed a Complaint against RMG. | *Id.* at ¶ 74. |





LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| 189. On June 19, 2020, WOW filed suit to protect its rights and its ability to use its exclusive PIC 'N' SAVE trademark / logo / design for its retail stores and to stop RMG from unlawfully using its trademark, logos, and designs. | *Id.* |
| 190. After WOW's Complaint was drafted and was in the process of being filed, WOW received a cease and desist letter from RMG. | *Id.* at ¶ 75. |
| 191. WOW learned after filing suit that RMG's purported pop-up warehouse use had stopped in the spring of 2020 and that as of the time of the first lawsuit, RMG was not currently using any PIC 'N' SAVE mark for retail services. | *Id.* at ¶ 76. |
| 192. On or about August 21, 2020, Mr. Miller received a phone call from Ian Esterhuizen of Caliber Construction, the company building out the Anaheim PIC 'N' SAVE retail store for WOW, who informed Mr. Miller that Mr. Esterhuizen learned that a different Pic 'N' Save store was being built at the Marketplace At Ontario, in Ontario, California, and Mr. Esterhuizen asked Mr. Miller if this was also WOW's PIC 'N' SAVE store. | *Id.* at ¶ 77. |
| 193. Mr. Esterhuizen expressed concern to Mr. Miller that WOW was building a second PIC 'N' SAVE store without using Caliber Construction. | Miller Decl., ¶ 78; Bleeker Decl., Exh. 4 (Miller Depo. Tr. at 127:7-11). |
| 194. Mr. Esterhuizen and his company Caliber Construction were previously involved in the PIC 'N' SAVE business project with Mr. Miller and Mr. Sherwin. | Miller Decl. ¶ 79. |
| 195. After receiving this information about a new potential PIC 'N' SAVE being developed in Ontario, Mr. Miller asked WOW's real estate agent Jodi | *Id.* at ¶ 80. |





LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| Shoemake to find out more information about this Ontario location. | |
| 196. Ms. Shoemake researched publicly available information, spoke with the agent for the property, Paul Galmarini, with Progressive, and learned from Mr. Galmarini that the property was still vacant and owned by Brian Johnson. | Bleeker Decl. Exh. 3 (Shoemake Depo. Tr. at 103:12-25; 111:17-23). |
| 197. Mr. Galmarini also told Ms. Shoemake that the other Pic 'N' Save company interested in the property was associated with Greg Sherwin, who was a relative of Brian Johnson. | *Id.* at 115:10-18. |
| 198. Mr. Galmarini also encouraged Ms. Shoemake to make an offer on the property because the potential deal with the other Pic 'N' Save company (Mr. Sherwin's) was probably going to be temporary and month-to-month and Mr. Galmarini and Mr. Johnson were interested in a long-term lease. | *Id.* at 117:16-118:15. |
| 199. WOW made no offer on the Ontario property. | Miller Decl., ¶ 81. |
| 200. On September 9, 2020, the parties exchanged confidential mediation briefs in the first lawsuit. | *Id.* at ¶ 82. |
| 201. As of September 9, 2020, Mr. Miller independently knew that Mr. Sherwin was potentially looking to open a Pic 'N' Save store at 921 Milliken Ave. in Ontario, CA. | *Id.* |
| 202. Mr. Sherwin and Mr. Miller attended a mediation on September 16, 2020 in front of the Hon. James L. Smith (Ret.) and the case did not settle. | *Id.* at ¶ 83. |
| 203. On September 22, 2020, following mediation, WOW voluntarily dismissed the first lawsuit without prejudice because WOW understood RMG was no longer using the Pic 'N' Save trademark/logo/design so an injunction | Miller Decl. ¶ 84; RJN Exh. 10 (9/22/2020 Notice of Voluntary Dismissal Without Prejudice, Dkt. 032, Case No. 20-01090) |





LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| was no longer needed, and because WOW had considered selecting another mark altogether to avoid further disputes with Mr. Sherwin and RMG (but never stopped using the PNS mark). | |
| 204. After WOW voluntarily dismissed the lawsuit, however, WOW's landlord for its Anaheim flagship store (which had not yet opened), took the position that WOW was contractually required to open the store under the Pic 'N' Save marks, and WOW therefore continued with its existing plans to open its Anaheim flagship store under the PIC 'N' SAVE marks. | Miller Decl., ¶ 85, Exh. 30 (WOW00001094-1095). |
| **WOW Prepares For and Opens Its Flagship PIC 'N' SAVE Anaheim Store** | |
| 205. In June 2020, WOW entered into a lease agreement to lease retail space at the Anaheim Towne Center in Anaheim, CA from NewMark Merrill to open its flagship PIC 'N' SAVE retail store. | Miller Decl. ¶ 85; Exh. 29 (Depo Exh. 58). |
| 206. On June 29, 2020, WOW launched a Facebook page to promote its retail stores utilizing its exclusive PIC 'N' SAVE trademark and logo/design. | Miller Decl., ¶ 86, Exh. 31 (WOW's Facebook page capture (WOW00002579-WOW00002613) |




LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| 207. Around this same timeframe WOW launched a website, pnsbargains.com, to promote its retail stores utilizing its exclusive PIC 'N' SAVE trademark and logo/design.<br><br> | Miller Decl., ¶ 87. |
| 208. On October 7, 2020, WOW launched an Instagram page to promote its retail stores utilizing its exclusive PIC 'N' SAVE trademark and logo/design.<br><br> | Miller Decl. ¶ 88, Exhs. 32-33 (WOW00002614-2619 (Instagram capture with all posts) and WOW00002620-2622 (first Instagram post dated 10/7/2020)) |
| 209. On November 12, 2020, WOW opened its flagship Anaheim retail store in the Anaheim Town Square with extensive use of its exclusive PIC 'N' SAVE trademark and logo and design, and this flagship store remains open to this day. | Miller Decl. ¶ 89. |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| <br><br><br><br><br> | |
| 210. At the time WOW opened its flagship PIC 'N' SAVE retail store in Anaheim, RMG was not using any PIC 'N' SAVE mark for retail services or for any other services. | Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 60:9-13). |
| 211. At the time WOW opened its flagship PIC 'N' SAVE retail store in Anaheim, RMG had never operated a retail store or warehouse or business at all in Orange County in connection with any PIC 'N' SAVE mark. | Bleeker Decl. Exh. 1 (Sherwin Depo. Tr. at 60:9-13). |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| | |
|---|---|
| 212. The opening of WOW's Anaheim PIC 'N' SAVE Store garnered media coverage in Southern California. | Miller Decl., Exh. 1 (WOW00000090-93). |
| 213. From November 12, 2020 through August 31, 2021 (the latest monthly records), WOW's PIC 'N' SAVE Anaheim flagship store has had sales totaling close to [redacted] | Miller Decl., ¶ 90, Exh. 34 (WOW00029194-29202) |
| 214. Prior to opening the Anaheim flagship store, WOW's PIC 'N' SAVE had an additional [redacted] in sales from its offices in Vernon. | Miller Decl., ¶ 91. |
| 215. WOW has signed a lease and intends to open its next PIC 'N' SAVE retail store in Whittier, CA in the fall of 2021. | Miller Decl. ¶ 92. |
| 216. WOW has signed a lease and intends to open another PIC 'N' SAVE retail store in Monrovia, CA in 2022. | Miller Decl. ¶ 93. |
| **RMG Opens Its First Retail Store Using Pic 'N' Save After WOW Opens Its Anaheim Flagship Store** | |
| 217. RMG opened its Pic 'N' Save-branded retail store in Ontario, CA in "late November" 2020. | Bleeker Decl. Exh. 1 Sherwin Depo. Tr. at 207: 22-24. |
| 218. RMG has never used the Pic 'N' Save marks at a retail or wholesale location in Orange County, California. | *Id.* at 208:14-17. |
| 219. RMG is not contractually required to use the PIC 'N' SAVE trademark as part of its current lease obligations. | *Id.* at 225:12-17. |
| 220. There is no outside permanent signage at the Ontario store. The main signage is a temporary banner and temporary paint and could be removed at a moment's notice. | Miller Decl., ¶ 94. |
| 221. Mr. Sherwin/RMG admitted that RMG's use of the words "Pic 'N' Save" describe the "type of retail store" that RMG was operating. | Bleeker Decl., Exh. 1 (Sherwin Depo. Tr. at 213:21-23). |

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

## II. CONCLUSIONS OF LAW

### A. Legal Standard For Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Becton Dickinson & Co. v. C. R. Bard, Inc.*, 922 F.2d 792, 795 (Fed. Cir. 1990). As the moving party, WOW bears the initial responsibility of "informing the district court of the basis for its motion" and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. A fact is considered genuinely disputed if a reasonable jury could return a verdict for RMG. *Becton Dickinson & Co.*, 922 F.2d at 796.

### B. RMG's Common Law Infringement and Unfair Competition Claims Fail As a Matter of Law

To prevail on a claim for trademark infringement under the Lanham Act, a plaintiff must prove: (1) ownership of a valid trademark; (2) use of the mark without its consent; and (3) that such use is likely to cause confusion. *Credit One Corp v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134, 1137 (C.D. Cal. 2009); *see also Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012). The ownership of a valid trademark is established through priority of use in commerce. *Sengoku Works Ltd. v. RMC Int'l Ltd.*, 96 F.3d 1217, 1219 (9th Cir.), as modified, 97 F.3d 1460 (9th Cir. 1996). A mark is "deemed to be in use in commerce . . . on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." *Rearden*, 683 F.3d at 1203-1204. In determining whether the two elements of the "use in commerce" test have been satisfied, the Ninth Circuit follows a "totality of the circumstances" approach that turns on showing: (1) adoption of the mark, and (2) use that is "sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind." *Id.* at 1205. "E]vidence of actual sales, or lack thereof, is not

dispositive." *Id.*

**1. RMG Cannot Prove Ownership/Bona Fide Use Prior to WOW**

Under the Lanham Act, "when a mark is not registered . . . , the plaintiff is left with the task of satisfying its burden of proof of establishing a valid mark." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005).

**a) RMG Failed To Prove A Sufficient Association With Consumers Between WOW's Mark and RMG**

In order to establish enforceable trademark rights, a mark must be "used in public in a manner that creates an association among consumers between the mark and the mark's owner." *Brookfield Commc'ns., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999). Moreover, the purported trademark owner must show use in commerce in a way "sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind." *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1200 (9th Cir. 1979) (internal quotation marks omitted); *see also* 15 U.S.C. § 1127 ("The term 'trademark' includes any word, name, symbol, or device, or any combination thereof . . . used by a person, or . . . which a person has a bona fide intention to use in commerce and applies to register . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods . . . ."). A "mark cannot serve a source-identifying function if the public has never seen the mark." *Brookfield*, 174 F.3d at 1051.

In *Social Technologies, LLC v. Apple Inc.*, 4 F.4th 811, 815 (9th Cir. 2021), the plaintiff owned a federal registration. The Ninth Circuit held that the existence of 5100 downloads of the plaintiff's Memoji app was not sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind and therefore not sufficient to establish bona fide trademark use.

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

**b) <u>RMG's Use Was Not Bona Fide Use in Commerce</u>**

"[O]nly *lawful* use in commerce can give rise to trademark priority. *CreAgri, Inc. v. USANA Health Sci., Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) (no bona fide use for sales of product made without FDA approval). The Ninth Circuit explained that "to hold otherwise would be to put the government in the 'anomalous position' of extending the benefits of trademark protection to a seller based upon actions the seller took in violation of that government's own laws." *Id.*

**c) <u>RMG's Attempt To Reserve Rights To Later Sue WOW Is Not a Bona Fide Trademark Use</u>**

"Mere adoption of a mark without bona fide use in commerce, in an attempt to reserve rights for the future, is insufficient to establish rights in the mark under the Lanham Act." *Social Techs*, 4 F.4th at 817. A product or service that is "rushed to market solely to reserve its right in the mark" is "not bona fide use in commerce." *Id.* at 819.

Moreover, as an equitable matter, in cases where it is public knowledge that a company will begin use of a trademark in the future, courts are loathe to reward opportunistic trademark trolls who rush to file state-law applications or claim token use to claim priority. *See generally Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 433-34 (7th Cir. 1999) (denying trademark priority to Johnny Blastoff, Inc. for ST. LOUIS RAMS trademark after it rushed to file a Wisconsin state trademark application and sell two shirts following the public announcement that the Los Angeles Rams would be moving to St. Louis.)

**d) <u>RMG Fails to Show Use in Interstate Commerce</u>**

Trademark rights under the Lanham Act require use in interstate commerce. 15 U.S.C. §§ 1125, 1127.

**e) <u>RMG Admits *Their* Use Was Solely Descriptive</u>**

"Trademark law groups terms into four categories: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. . . . Descriptive terms,

however, describe[ ] a person, a place or an attribute of a product [or service].") *See Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 872 (9th Cir. 2002) (internal citations and quotations omitted).

"A 'descriptive' mark may be entitled to protection ***only*** if it has acquired distinctiveness through secondary meaning." *Marketquest Grp., Inc. v. BIC Corp.*, 316 F.Supp.3d. 1234, 1257 (S.D. Cal. 2018) (emphasis in original).

**2. Any Common Law Rights Are Limited in Geographic Scope**

Common law trademark rights are limited to the narrow geographic scope of actual use and consumer association. *See Credit One*, 661 F.Supp.2d at 1138 ("A party asserting common law rights must not only establish that it is the senior user, it must also show that it has 'legally sufficient market penetration' in a certain geographic market to establish those trademark rights.")

**3. RMG's Unfair Competition/State Law Claims Similarly Fail**

Plaintiffs' unfair competition and state law claims rise and fall with the federal infringement claim. 15 U.S.C. §§ 1114, 1125(a). *See also E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 n.2 (9th Cir. 1992) (elements of infringement and unfair competition claims are essentially the same, and their respective rulings "stand or fall together"); *Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 70 F.Supp.3d 1105, 1134 (N.D. Cal. 2014) ("To successfully maintain an action for . . . false designation of origin [or] unfair competition under the Lanham Act or California law, plaintiff must show that it has a valid trademark and that defendant's use of the mark is likely to cause confusion") (alteration in original).

**C. RMG's MALICIOUS PROSECUTION CLAIM FAILS**

To prevail on its malicious prosecution claim, RMG must prove that the prior action was (1) commenced by WOW and pursued to a legal termination in RMG's favor; (2) brought without probable cause; and (3) initiated with malice. *Zamos v.*





LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

*Stroud*, 32 Cal. 4th 958, 965-66 (2004). "A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him." *Soukup v. Law Offices of Herbert Hafif*, 39 Cal.4th 260, 292 (2006). Malice is present "when a suit is actuated by hostility or ill will, or for some purpose other than to secure relief." *Drummond v. Desmarais*, 176 Cal.App.4th 439, 451-52 (2009).

"A plaintiff has an absolute right voluntarily to dismiss his action prior to service by the defendant of an answer or a motion for summary judgment … Even if the defendant has filed a motion to dismiss, the plaintiff may terminate his action voluntarily by filing a notice of dismissal under Rule 41(a)(1)." *Concha v. London* 62 F.3d 1493, 1506 (9th Cir. 1995) (internal citations omitted); *RFR Indus. Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1351-52 (Fed. Cir. 2007). Where a plaintiff voluntarily dismisses an action, it suffers no impairment (beyond its fee for filing) and is "free to return to the dismissing court or other courts at a later date with the same claim." *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 324 (5th Cir. 2005). In other words, there is no "legal determination" when a proceeding is voluntarily dismissed.

A plaintiff's motive in dismissing an action does not affect its power to do so. *Eells v. Rosenblum*, 36 Cal.App.4th 1848, 1855 (1995). Rule 41(a)(1) entitles a plaintiff who complies with its terms to dismiss an action regardless of its reasons for doing so. *In re Skinner & Eddy Corp.*, 265 U.S. 86, 93-94 (1924); *see also Pilot Freight Carriers, Inc. v. Int'l Brotherhood of Teamsters*, 506 F.2d 914, 917 (5th Cir. 1975); *Plain Growers, Inc. By & Through Florists' Mut. Ins. Co. v. Ickes-Braun Glasshouses, Inc.,* 474 F.2d 250 (5th Cir. 1973).

Moreover, a "dismissal without prejudice does not alter the legal relationship of the parties," and thus does not confer "prevailing party" status, because the

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445
LEWIS ROCA

plaintiff is free to file another lawsuit. *Oscar v. Alaska Dept. of Ed. & Early Develop.*, 541 F.3d 978, 981 (9th Cir. 2008).

**D. RMG's CALIFORNIA REGISTRATION SHOULD BE CANCELLED**

Under Cal. Bus. & Prof. Code § 14230, a California trademark registration shall be canceled if a district court finds, *inter alia*, that "The registrant is not the owner of the mark" or "The registration was obtained fraudulently." The Ninth Circuit applies analogous federal law in construing the statute. *See Grupo Gigante S.A. de C.V. v. Dallo & Co., Inc.*, 391 F.3d 1088, 1105-1106 (9th Cir. 2004).

Under analogous federal law, "[a] party may seek cancellation of a registered trademark on the basis of fraud under 15 U.S.C. § 1064(c); *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990).

Dated: October 4, 2021

Respectfully submitted,

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By /s/G. Warren Bleeker
G. Warren Bleeker

Attorneys for Defendants and Counterclaimant MARK MILLER and WOW BARGAINS & CLOSEOUTS, INC.