**GARY J. NELSON, CA Bar No. 184651**
gnelson@lewisroca.com
**G. WARREN BLEEKER, CA Bar No. 210834**
wbleeker@lewisroca.com
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
**655 N. Central Avenue, Suite 2300**
**Glendale, CA 91203-1445**
**Telephone: (626) 795-9900**
**Facsimile: (626) 577-8800**

Attorneys for Defendants and Counterclaimant
MARK MILLER and
WOW BARGAINS & CLOSEOUTS, INC.

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RE-MARKETING GROUP, INC., a California corporation,<br>Plaintiff,<br>vs.<br>MARK MILLER, an individual; and WOW BARGAINS & CLOSEOUTS, INC., a California corporation,<br>Defendants.<br><br>WOW BARGAINS & CLOSEOUTS, INC., a California corporation,<br>Counterclaimant,<br>vs.<br>RE-MARKETING GROUP, INC., a California corporation, and GREGORY D. SHERWIN, an individual,<br>Counterclaim-Defendants. | Case No. 2:20-cv-9505-CAS (AFMx)<br><br>**DECLARATION OF MARK J. MILLER IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Hearing Date: November 1, 2021**<br>**Time: 10:00 a.m.**<br>**Courtroom: 8D, 8th Floor**<br>**First Street Courthouse**<br><br>**Pretrial Conf.: January 24, 2022**<br>**Trial Date: February 8, 2022**<br><br>**Hon. Christina A. Snyder** |

***REDACTED VERSION OF DOCUMENT TO BE FILED PUBLICLY***

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

I, Mark J. Miller, declare and state as follows:

1. I am Chairman/CEO/President of Defendant and Counterclaimant WOW Bargains & Closeouts, Inc. ("WOW"). I submit this declaration in support of WOW's Motion for Partial Summary Judgment. I have personal knowledge of the matters set forth in this declaration, and if called upon to testify as a witness, I could and would testify competently.

2. I was an Executive Vice President and President of the original California-based Pic 'N' Save Corporation and worked there from 1988 to 2002.

3. During my fifteen years at the original California Pic 'N Save Corporation, I fell in love with the business and have loved it ever since. Attached as Exhibit 1 is a true copy of an article published in Outlook Valley Sun dated November 5, 2020 titled "Local Man Launches Pic 'N' Save Bargains."

4. Since leaving the original Pic 'N Save Corporation in 2002, I have long considered opening up the next generation of PIC 'N' SAVE (PNS) branded retail stores in southern California.

5. Since 1988, I was familiar with Emin and Artin Tersaakyan, of West Coast Dealz, Inc., who I knew as being in the wholesale closeout/seasonal space and as potential business partners.

6. In 2017, I contacted the Tersaakyans to discuss becoming potential wholesale suppliers for a new version of the PIC 'N' SAVE stores.

7. During the 2018 and 2019 timeframe, I pursued several business opportunities, including the purchase of a candle company, and working on a potential PNS project.

8. In May 2018, I approached a longtime family friend and commercial real estate agent, Jodi Shoemake, to search for potential properties for a PIC 'N' SAVE retail store. Also, in May 2018, I introduced Ms. Shoemake to Emin and Artin Tersaakyan, of West Coast Dealz, Inc. I eventually retained Ms. Shoemake to be the commercial real estate agent for the PIC 'N' SAVE project. Attached as

Exhibit 2 is a true copy of the June 5, 2019 Agreement between Lee & Associates and WOW.

9. At that time, I was also familiar with a wholesale grocery supplier, Greg Sherwin and his company RMG. I also had preliminary discussions with Mr. Sherwin in 2018 and 2019 regarding a potential business relationship regarding a new version of the original California PIC 'N' SAVE branded retail stores.

10. I envisioned that I would oversee and manage the stores and that Mr. Sherwin/ RMG and/or Emin and Artin Tersaakyan/West Coast Dealz, would be potential suppliers for the new Pic 'N' Save business.

11. On April 20, 2019, I sent an email to Mr. Sherwin and others identifying preliminary roles in the new potential business in which I identified my role as "El Jefe" (the boss), and identified at least two "strategic partners" (including Mr. Sherwin) and a marketing partner. Attached as Exhibit 3 is a true copy of that email.

12. From approximately March 2019 through August 2019, RMG let myself and others involved in the new potential PNS business to conduct business in offices/warehouse located at 3422 Garfield Avenue, Commerce, CA 90040 without requiring the payment of rent.

13. On May 5, 2019, I sent another email identifying preliminary key individuals and roles in the new potential business as follows:

Mark Miller (CEO)

Joe Swisher (CFO/COO)

Greg Sherwin (food buying, warehousing, office space)

West Coast Dealz (seasonal)

Mike Sheldon (marketing, branding)

Tim Conway, Jr. (marketing)

Mark Verge

Take Flight Social Media

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Robert Adams (systems)

Jodi Shoemake (Real Estate)

Robert Campbell (Financing)

Attached as Exhibit 4 is a true copy of that email.

14. During the development of the potential new business, Mr. Sherwin acknowledged that I was taking the lead on this project. For example, in responding to a potential insurer for the new business, Mr. Sherwin confirmed to a third party that "Mark [Miller] is going to be the managing partner" and that the project is comprised of "MARK'S TEAM. ITS HIS BABY . . . ." Attached as Exhibit 5 is a true copy of that email that I was copied on, dated May 7, 2019.

15. I consistently referred to Mr. Sherwin's potential role in the new company as a "key supplier, warehouse and office lease owner." Attached as Exhibit 6 is a true copy of an email I sent on April 10, 2019 to Mr. Sherwin and others, to this effect.

16. While I colloquially referred to potential key individuals in the new business as "strategic partners" or "partners," no actual partnership was ever formed among any of these individuals.

17. As part of the potential business relationship, I had conversations with all of the strategic partners regarding their potential roles in the new company and potential compensation, including conversations with Mr. Sherwin.

18. During this long process of negotiating roles and compensation, Mr. Sherwin sought compensation in the form of payment above cost for supplying wholesale grocery items and he also sought at least 15% ownership in the new business. I believed that the appropriate form of payment for Mr. Sherwin/RMG's services would be payment at a specified percentage above cost for supplying wholesale grocery items, although that percentage was never agreed upon.

19. At no point during the negotiations did I ever make an offer to Mr. Sherwin as to a specific percentage of ownership in the new business. Despite

numerous discussions over the period of many months, at no point in time did Mr. Sherwin and I ever come to an agreement as to Mr. Sherwin's role, responsibilities, expectations, or compensation for the new company.

20. As part of the development of the new business, I retained and paid the international design firm Ware Malcomb $4000 to create a new, high-resolution logo and design for the new PIC 'N' SAVE stores. Attached as Exhibit 7 is a true copy of the engagement letter. Attached as Exhibit 8 is a true copy of the invoice for the logo design and creation, and attached Exhibit 9 is a true copy of the check showing that I paid for those services. Neither Mr. Sherwin/RMG nor the Tersaakyans/West Coast Dealz, nor any other potential business entity paid any amount of money towards the creation of the new logo and design.

21. On February 26, 2019, Ware Malcomb provided the latest designs to me. Attached as Exhibit 10 is a true copy of that email.

22. On or about March 18, 2019, Ware Malcomb provided me with updated, high-resolution logos and designs. Attached as Exhibit 11 is a true copy of that email.

23. On September 18, 2019, after the WOW entity was created, Ware Malcomb assigned all exclusive rights, including any copyright rights, in the new logo and design, to WOW, in a notarized, written document, a true copy of which is attached as Exhibit 12.

24. Prior to creation of the new business, I asked Pasadena attorney John Poxon for a recommendation for a trademark attorney and suggested Michael Grace. Attached as Exhibit 13 is a true and correct copy of those emails.

25. On March 1, 2019, Mr. Grace initially advised, regarding filing an intent-to-use trademark application, that the "best order of business is to form the entity and then file the [trademark] application." Attached as Exhibit 14 is a true copy of that email.

26. As of March of 2019, the new anticipated corporate entity had not yet

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

been formed.

27. As shown in Exhibit 14, in order to expedite the trademark filing, Mr. Sherwin asked Mr. Grace if the application could be filed in RMG's name "and then Re-Marketing sells rights to use at $1.00 a year on a 5, 10, 20 year cont[r]act . . . ." Mr. Grace responded on March 1, 2019: "Yes, we can make that work. Who will sign?" Mr. Sherwin responded on March 1, 2019: "I will sig[n] whatever RMG needs to sign[.] Once Newco set I will sell : assign rights to Newco[.] I believe this will expedite filing."

28. At the time Mr. Sherwin agreed to "sig[n] whatever RMG needs to sign" and agreed to "sell : assign" rights to Newco" to expedite the trademark filing, there was no agreement in place as to Mr. Sherwin's role in the new company or his compensation. When Mr. Sherwin agreed to "sig[n] whatever RMG needs to sign" and agreed to "sell : assign" rights to Newco" to expedite the trademark filing, Mr. Sherwin did not state that his agreement was contingent on his role or compensation with the new company.

29. At that same time, I asked Mr. Grace if RMG could file the application even though it is a "wholesaler." Mr. Grace responded on March 1, 2019: "It's best to wait until newco is formed, but if it cannot be done and meet your deadline we can file under Re-Marketing and assign the registration to newco after it [the registration] issues." I responded "Ok."

30. In a related email thread between the same parties on that same topic on March 1, 2019, I again expressed a concern that the intent-to-use trademark application for retail services would be registered under "Re-Marketing that is a wholesaler." Attached as Exhibit 15 is a true copy of that email correspondence.

31. Again, Mr. Grace responded that same evening "Not to worry. The rights flow via license by Re-Marketing to newco[.] We will use the description of goods for newco. Assignment follows after the registration has issued."

32. On March 2, 2019, Mr. Grace responded that Mr. Grace could file an

intent-to-use application in the name of Re-Marketing and that I should consult corporate counsel to determine the specific corporate form of the new company.

33. I gave approval for Mr. Grace to file the intent-to-use application in the name of Re-Marketing based on Mr. Grace's legal advice and based on Mr. Sherwin's agreement to license and then assign any rights to the new company for a nominal fee.

34. On March 4, 2019, Mr. Grace filed an intent-to-use trademark application on behalf of "The Re-Marketing Group, Inc.," U.S. Application Serial No. 88325180 ("'180 Application"). Attached as Exhibit 16 is a true copy of Mr. Grace's email confirming the filing and including the application as filed. In agreeing to authorize Mr. Grace to file the '180 Application in the name of RMG, I relied on Mr. Sherwin's unconditional written representations that RMG would initially license and then "sell: assign" the rights to the new company after it was created.

35. The legal services provided by Mr. Grace did not include designing the logos. On February 26, 2019, prior to the trademark filing, I provided the logos to Mr. Grace that had been created by Ware Malcomb at my request and authority and paid for by me. Attached as Exhibit 10 is a true copy of that correspondence.

36. After the '180 Application was filed, I continued to consult with my corporate counsel who recommended converting an existing company into the new company, and call the new company WOW Bargains & Closeouts (WOW).

37. On April 15, 2019, I forwarded Mr. Sherwin an email from my corporate counsel explaining the procedure they would use to convert an existing company owned by me (Dynamic Candle) into the new company for the new PIC 'N' SAVE business enterprise. Attached as Exhibit 17 is a true copy of that email correspondence. On April 16, 2019, Mr. Sherwin confirmed receipt of the email outlining the procedure of converting an existing business and identifying the name of the new company as WOW and Mr. Sherwin responded: "Cool. I guess."

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

38. As of April 18, 2019 through the present, I was and am the Chief Executive Officer of WOW Bargains & Closeouts.

39. I paid for the costs and attorneys' fees associated with creating the new company, WOW, and Mr. Sherwin and RMG did not pay for any of these costs.

40. On May 17, 2019, I again asked Mr. Grace (cc'ing Mr. Sherwin) if it would now be appropriate to transfer the pending intent-to-use trademark application to WOW. Attached as Exhibit 18 is a true copy of that correspondence.

41. On that same day, Mr. Grace responded: "It would be best to wait until the registration issues before making an assignment. In the mean time, a license to use the mark would be best." Attached as Exhibit 19 is a true copy of that correspondence.

42. Also, on May 17, 2019, Mr. Sherwin, with full knowledge that WOW was the name of the new company, emailed me that we needed to discuss the licensing agreement and that Mr. Sherwin hoped the agreement would cover the attorney fees to file the '180 Application. Attached as Exhibit 20 is a true copy of that correspondence. In response, I stated that the attorney fees would be reimbursed at the closing and funding of WOW later that year. Mr. Sherwin confirmed there "has to be licensing of the name from RMG to Newco" per the advice of Mr. Grace.

43. Mr. Sherwin was never an employee, officer, or director of WOW.

44. Mr. Sherwin never invested in WOW.

45. RMG is a separate entity from WOW.

46. In July 2019, WOW created, ordered and began distributing business cards incorporating the new PIC 'N' SAVE design and logo that I had paid for. Attached as Exhibits 21 and 22, respectively, are true copies on those designs and orders. The July 2019 WOW PIC 'N' SAVE business cards accurately identify the address for WOW as 3422 Garfield Avenue, Commerce, CA 90040.

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

47. WOW never made any business cards with Mr. Sherwin's name or the RMG name on them.

48. In July 2019, WOW distributed flyers to landlords and industry brokers incorporating the new PIC 'N' SAVE design and logo, as WOW sought retail space for its stores. Attached as Exhibit 23 is a true copy of one of those flyers.

49. In August 2019, WOW set up signage displaying its new PIC 'N' SAVE design and logo in the office space WOW leased from RMG located at 3422 Garfield Avenue, Commerce, CA 90040.

50. For over a year and a half, I spent hundreds of hours working to secure outside investors in the new Pic 'N' Save business. I ultimately was successful in obtaining outside funding totaling over $1.5 million. Attached as Exhibit 24 is a true copy of WOW's business records, kept and maintained in WOW's regular course of business, reflecting the funding amounts.

51. The closing date on which WOW was officially funded was July 24, 2019. Attached as Exhibits 24 and 25, respectively, are true copies of WOW's business records, kept and maintained in WOW's regular course of business, reflecting the funding amounts, dates, and closing.

52. In consultation with many advisors, and in my capacity as CEO, I and the Board of WOW ultimately made the decision that only monetary investors would be granted equity ownership in WOW.

53. The Tersaakyans/West Coast Dealz were not granted an equity ownership in WOW.

54. Ms. Shoemake was not granted an equity ownership in WOW.

55. Ware Malcomb was not granted an equity ownership in WOW.

56. Also, based on consultation with many advisors, and in my capacity as CEO, I ultimately made the decision to retain 70% of the common shares in WOW to allow WOW to accept additional rounds of outside investments and to

potentially offer common shares to WOW employees.

57. Mr. Sherwin never expressed any interest to me in investing money in WOW.

58. I am not aware that anyone ever told Mr. Sherwin he was prohibited from investing in WOW.

59. Mr. Sherwin was never in fact prohibited from investing in WOW.

60. At the formation of the company, WOW allocated $10,000 in funds to reimburse Mr. Sherwin for legal fees upon a submission of the bills for reimbursement. Attached as Exhibit 24 is a true copy of WOW's business records, kept and maintained in the ordinary course of business by WOW, reflecting this.

61. If Mr. Sherwin submitted the bills for reimbursement, WOW would reimburse him now.

62. In August 2019, RMG and WOW negotiated a commercial lease agreement such that WOW began paying rent for the space it had been using since March 2019 to continue to conduct business in RMG's offices/warehouse located at 3422 Garfield Avenue, Commerce, CA 90040. Attached as Exhibit 26 is a true copy of what I understand to be the operative lease agreement. My understanding is that this is the final version that was agreed to and executed. After the litigation was commenced, WOW was unable to locate the fully executed version. Exhibit 26 includes the lease terms that WOW and RMG operated under.

63. The working relationship between Mr. Sherwin and me deteriorated and on October 23, 2019, WOW provided a notice of termination of the lease to RMG effective as of December 22, 2019. Attached as Exhibit 27 is a true copy of that notice.

64. In November 2019, WOW moved its business offices to a new location at 4519 Everett Ave. in Vernon, CA (also located in Los Angeles, County) and continued its business operations in Vernon until it opened its flagship Anaheim store in 2020.

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

65. In January 2020, WOW updated its business cards to reflect the new business address. Attached as Exhibit 28 is a true copy of the image of the new business cards.

66. WOW paid rent for its rented office space from RMG through December 22, 2019.

67. WOW continued to use its PIC 'N' SAVE trademark / logo /design in connection with setting up its first retail store from July 2019 through the present.

68. When WOW was formed and Mr. Sherwin did not receive equity in the new company, Mr. Sherwin never told me he that RMG would not license any rights it obtained in the PNS marks.

69. RMG did not have permission from WOW for RMG to use WOW's exclusive trademark/logo/design for any purpose.

70. RMG did not have permission from WOW to take any items from the office space still leased by WOW at that time.

71. At the time RMG created and claims to have circulated the flyer on or around December 6, 2019, WOW was not aware of RMG's unauthorized use of WOW's exclusive logo and design.

72. RMG's pop-up store, which I later learned ran from January 2020 to March or April 2020, was located at the same address, 3422 Garfield, Commerce, CA, as WOW's business address from March through December 2019, and this address was listed on WOW's business cards that WOW distributed a few months earlier.

73. In March of 2020, WOW first learned of RMG's California trademark application, and in turn, first learned of the existence of RMG's December 2019 Flyer, and RMG's unauthorized copying of WOW's exclusive PIC 'N' SAVE trademark/logo/design. After learning this in March 2020, I attempted to locate the pop-up store but did not see any signage or any operating pop-up store.

74. Also after learning of this, WOW prepared and filed a Complaint

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

against RMG. On June 19, 2020, WOW filed suit to protect its rights and its ability to use its exclusive PIC 'N' SAVE trademark / logo / design for its retail stores and to stop RMG from unlawfully using its trademark, logos, and designs.

75. After WOW's Complaint was drafted and was in the process of being filed, WOW received a cease and desist letter from RMG.

76. WOW learned after filing suit that RMG's purported pop-up warehouse use had stopped in the spring of 2020 and that as of the time of the first lawsuit, RMG was not currently using any PIC 'N' SAVE mark for retail services.

77. On or about August 21, 2020, I received a phone call from Ian Esterhuizen of Caliber Construction, the company building out the Anaheim PIC 'N' SAVE retail store for WOW, who informed me that Mr. Esterhuizen learned that a different Pic 'N' Save store was being built at the Marketplace At Ontario, in Ontario, California, and Mr. Esterhuizen asked me if this was also WOW's PIC 'N' SAVE store.

78. Mr. Esterhuizen expressed concern that WOW was building a second PIC 'N' SAVE store without using Caliber Construction.

79. Mr. Esterhuizen and his company Caliber Construction were previously involved in the PIC 'N' SAVE business project with Mr. Sherwin and me.

80. After receiving this information about a new potential PIC 'N' SAVE being developed in Ontario, I asked WOW's real estate agent Jodi Shoemake to find out more information about this Ontario location.

81. WOW made no offer on the Ontario property.

82. On September 9, 2020, the parties exchanged confidential mediation briefs in the first lawsuit. As of this date, I already knew that Mr. Sherwin was potentially looking to open a Pic 'N' Save store at 921 Milliken Ave. in Ontario, CA.

83. Mr. Sherwin and I attended a Court-ordered mediation on September

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

16, 2020 in front of the Hon. James L. Smith (Ret.) and the case did not settle.

84. On September 22, 2020, following mediation, WOW voluntarily dismissed the first lawsuit without prejudice because WOW understood RMG was no longer using the Pic 'N' Save trademark/logo/design so an injunction was no longer needed, and because WOW had considered selecting another mark altogether to avoid further disputes with Mr. Sherwin and RMG (but WOW never stopped using the PNS mark).

85. In June 2020, WOW entered into a lease agreement to lease retail space at the Anaheim Towne Center in Anaheim, CA from NewMark Merrill to open its flagship PIC 'N' SAVE retail store. Attached as Exhibit 29 is a true copy of that lease. After WOW voluntarily dismissed the lawsuit, however, NewMark Merrill took the position that WOW was contractually required to open the store under the Pic 'N' Save marks, and WOW therefore continued with its existing plans to open its Anaheim flagship store under the PIC 'N' SAVE marks. Attached as Exhibit 30 is a true copy of that correspondence.

86. On June 29, 2020, WOW launched a Facebook page to promote its retail stores utilizing its exclusive PIC 'N' SAVE trademark and logo/design. Attached as Exhibit 31 is a true copy of that page.

87. Around this same timeframe WOW launched a website, pnsbargains.com, to promote its retail stores utilizing its exclusive PIC 'N' SAVE trademark and logo/design.

88. On October 7, 2020, WOW launched an Instagram page to promote its retail stores utilizing its exclusive PIC 'N' SAVE trademark and logo/design. Attached as Exhibit 32 is a true copy of the WOW PNS Instagram page and attached as Exhibit 33 is a true copy of the first Instagram post on October 7, 2020.

89. On November 12, 2020, WOW opened its flagship Anaheim retail store in the Anaheim Town Square with extensive use of its exclusive PIC 'N' SAVE trademark and logo and design, and this flagship store remains open to this

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

day.

90. From November 12, 2020 through August 31, 2021 (the latest monthly records), WOW's PIC 'N' SAVE Anaheim flagship store has had sales totaling close to [redacted]. Attached as Exhibit 34 is a true copy of WOW's business records, kept and maintained in the normal course of business, reflecting the sales information.

91. Prior to opening the Anaheim flagship store, WOW's PIC 'N' SAVE had an additional [redacted] in sales from its offices in Vernon from customers who personally knew someone at WOW, or was referred to me specifically.

92. WOW has signed a lease and intends to open its next PIC 'N' SAVE retail store in Whittier, CA in the fall of 2021.

93. WOW has signed a lease and intends to open another PIC 'N' SAVE retail store in Monrovia, CA in 2022.

94. I have viewed the outside of RMG's Ontario location and there is no outside permanent signage. The main signage is a temporary banner and temporary paint and could be removed at a moment's notice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 4th day of October 2021, at Vernon, California.

Mark J. Miller