**GARY J. NELSON, CA Bar No. 184651**
gnelson@lewisroca.com
**G. WARREN BLEEKER, CA Bar No. 210834**
wbleeker@lewisroca.com
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
**655 N. Central Avenue, Suite 2300**
**Glendale, CA 91203-1445**
**Telephone: (626) 795-9900**
**Facsimile: (626) 577-8800**

Attorneys for Defendants and Counterclaimant
MARK MILLER and
WOW BARGAINS & CLOSEOUTS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RE-MARKETING GROUP, INC., a California corporation,

Plaintiff,

vs.

MARK MILLER, an individual; and WOW BARGAINS & CLOSEOUTS, INC., a California corporation,

Defendants.

WOW BARGAINS & CLOSEOUTS, INC., a California corporation,

Counterclaimant,

vs.

RE-MARKETING GROUP, INC., a California corporation, and GREGORY D. SHERWIN, an individual,

Counterclaim-Defendants.

Case No. 2:20-cv-09505-CAS (AFMx)

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Hearing Date: November 1, 2021**
**Time: 10:00 a.m.**
**Courtroom: 8D, 8th Floor**
**First Street Courthouse**

**Pretrial Conf.: January 24, 2022**
**Trial Date: February 8, 2022**

**Hon. Christina A. Snyder**

***REDACTED VERSION OF DOCUMENT TO BE FILED PUBLICLY***

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. SUMMARY OF UNCONTROVERTED FACTS ........ 2

A. Mr. Miller's New Generation of PIC 'N' SAVE Retail Stores ........ 2

1. Mr. Miller Assembles His PNS Team ........ 2

2. Mr. Miller Retains Ware Malcomb To Create A PNS Logo ........ 3

3. Sherwin Voluntarily Assists With Trademark Protection ........ 3

B. WOW Is Formed and Funded By Outside Investors ........ 5

C. WOW Begins Use of its PNS Logo and Design ........ 6

D. Further Discussions As To Mr. Sherwin's Role In WOW ........ 7

E. Written Lease Agreement Between RMG and WOW ........ 8

F. WOW Moves Its Operations to Vernon, CA ........ 9

G. RMG Uses WOW's Exclusive Logo Without Permission ........ 9

H. RMG Files A Trademark Application For WOW's Logo ........ 11

I. WOW's Actions To Enforce Its Rights ........ 12

J. WOW Opens Its Flagship PIC 'N' SAVE Anaheim Store ........ 13

K. Sherwin/RMG Then Open Their Ontario Store ........ 14

III. LEGAL STANDARD FOR SUMMARY JUDGMENT ........ 14

IV. RMG'S COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION CLAIMS FAIL AS A MATTER OF LAW ........ 15

A. RMG Cannot Prove Ownership/Bona Fide Use Prior to WOW ........ 15

1. RMG Failed To Prove A Sufficient Association With Consumers Between WOW's Mark and RMG ........ 15

2. RMG's Use Was Not Bona Fide Use in Commerce ........ 17

3. RMG's Attempt To Reserve Rights To Later Sue WOW Is Not a Bona Fide Trademark Use ........ 18

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

4. RMG Fails to Show Use in Interstate Commerce ............... 19

B. RMG Fails To Prove WOW's Use Is Without its Consent ........... 19

C. RMG Admits *Their* Use Was Solely Descriptive ......................... 20

D. Any Common Law Rights Are Limited in Geographic Scope ........................................................................ 21

E. RMG's Unfair Competition/State Law Claims Similarly Fail ........................................................................ 21

V. RMG'S MALICIOUS PROSECUTION CLAIM FAILS ....................... 22

A. Voluntary Dismissal Without Prejudice is Not a Decision on the Merits ......................................................... 22

B. RMG Fails to Prove That No Reasonable Person Would Have Believed There Were Reasonable Grounds to Bring the Lawsuit ........................................................ 23

C. Plaintiffs Can Offer No Evidence That WOW Acted Primarily For A Purpose Other Than Succeeding on the Merits ........................................................................ 23

VI. RMG'S CALIFORNIA REGISTRATION SHOULD BE CANCELLED ........................................................ 24

A. RMG Cannot Prove Ownership of the PNS Mark ......................... 24

B. RMG Committed Fraud ........................................................ 24

VII. CONCLUSION ........................................................................ 25


LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adray v. Adry-Mart, Inc.*,
76 F.3d 984 (9th Cir. 1995) .......... 21

*Becton Dickinson & Co. v. C. R. Bard, Inc.*,
922 F.2d 792 (Fed. Cir. 1990) .......... 14

*Brookfield Commc'ns., Inc. v. West Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 1999) .......... 15, 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 14

*Concha v. London*
62 F.3d 1493 (9th Cir. 1995) .......... 22

*CreAgri, Inc. v. USANA Health Sci., Inc.*,
474 F.3d 626 (9th Cir. 2007) .......... 17

*Credit One Corp v. Credit One Fin., Inc.*,
661 F. Supp. 2d 1134 (C.D. Cal. 2009) .......... 15, 19, 21

*Drummond v. Desmarais*,
176 Cal.App.4th 439 (2009) .......... 22

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
967 F.2d 1280 (9th Cir. 1992) .......... 21

*Eells v. Rosenblum*,
36 Cal.App.4th 1848 (1995) .......... 23

*Grupo Gigante S.A. de C.V. v. Dallo & Co., Inc.*,
391 F.3d 1088 (9th Cir. 2004) .......... 24

*Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*,
434 F.3d 320 (5th Cir. 2005) .......... 22

*Ingrid & Isabel, LLC v. Baby Be Mine, LLC*,
70 F.Supp.3d 1105 (N.D. Cal. 2014) .......... 21

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866 (9th Cir. 2002)....................20

*Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427 (7th Cir. 1999)....................18

*Marketquest Grp., Inc. v. BIC Corp.*, 316 F.Supp.3d. 1234 (S.D. Cal. 2018) ....................20

*Masters v. UHS of Del.*, 631 F.3d 464 (8th Cir. 2011)....................20

*New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194 (9th Cir. 1979)....................16

*Oscar v. Alaska Dept. of Ed. & Early Develop.*, 541 F.3d 978 (9th Cir. 2008)....................23

*Petrella v. Metro-Goldwyn Mayer, Inc.*, 572 U.S. 663 (2014)....................20

*Pilot Freight Carriers, Inc. v. Int'l Brotherhood of Teamsters*, 506 F.2d 914 (5th Cir. 1975)....................23

*Plain Growers, Inc. By & Through Florists' Mut. Ins. Co. v. Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250 (5th Cir. 1973)....................23

*Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190 (9th Cir. 2012)....................15

*RFR Indus. Inc. v. Century Steps, Inc.*, 477 F.3d 1348 (Fed. Cir. 2007)....................22

*Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990)....................24, 25

*S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921 (9th Cir. 2014)....................18

*Sengoku Works Ltd. v. RMC Int'l Ltd.*, 96 F.3d 1217 (9th Cir.) ....................15

*In re Skinner & Eddy Corp.*, 265 U.S. 86 (1924)....................23



LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

*Social Technologies, LLC v. Apple Inc.*,
4 F.4th 811 (9th Cir. 2021) .......... 16, 18

*Soukup v. Law Offices of Herbert Hafif*,
39 Cal.4th 260 (2006) .......... 22

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*,
419 F.3d 925 (9th Cir. 2005) .......... 15

*Zamos v. Stroud*,
32 Cal. 4th 958 (2004) .......... 22

**Statutes**

15 U.S.C. § 1064(c) .......... 24

15 U.S.C. § 1114 .......... 21

15 U.S.C. § 1125 .......... 19

15 U.S.C. § 1125(a) .......... 21

15 U.S.C. § 1127 .......... 16, 19

Cal. Bus. & Prof. Code § 14207(b) .......... 25

Cal. Bus. & Prof. Code § 14230 .......... 24

Cal. Bus. & Prof. Code § 14230(c)(2) .......... 24

Lanham Act .......... 14, 15, 18, 19, 21

Tax Code §6051 .......... 17

**Other Authorities**

Fed R. Civ. P. 41(a)(1) .......... 22, 23

Fed. R. Civ. P. 56(a) .......... 14

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

# I. INTRODUCTION

In the fall of 2019, Defendant WOW Bargains and Closeouts (WOW) was a fully-capitalized company. WOW's CEO was a former president of the original California Pic 'N' Save stores, and WOW had sophisticated investors including a former dean of USC School of Business. Plaintiff Re-Marketing Group (RMG) knew that WOW would soon be opening its new line of Pic 'N' Save (PNS) stores.

For some time, RMG and its principal Greg Sherwin had attempted to negotiate an agreement to be a formal part of WOW, but those talks never led to any agreement. Sherwin, therefore, with knowledge of WOW's business plans to use the Pic 'N' Save mark, attempted to reserve trademark rights ahead of WOW. After Mr. Sherwin's and Mr. Miller's falling out, and before WOW opened its first store, RMG went into WOW's offices without permission. RMG stole WOW's signboard featuring WOW's new PNS logo and took an unauthorized screen shot of WOW's new PNS logo, which was commissioned and paid for by ***WOW's*** CEO.

RMG also located and purchased "salvaged" goods, some with fire "extinguisher residue" and an "odor" that were recovered from a fire. RMG, who represents itself as a "wholesale only operation," made a few cash-only sales of these goods from the back of a wholesale warehouse in City of Commerce. RMG's so-called "pop-up" warehouse store appears to have been open two or three days a week for a few months and then shut down. RMG admits its cash-only operation did not charge sales tax and RMG kept no record of total sales (both violations of law). RMG claims less than $14,000 in purported cash sales.

RMG owns no federal registration. RMG claims common law trademark priority based on its unlawful use of ***WOW's own logo*** to make a few unlawful cash sales of fire-damaged goods from the back of a warehouse in City of Commerce. On this record, RMG asks this Court to award it hundreds of thousands of dollars in "lost profits" and to enjoin WOW from operating its new generation of Pic 'N' Save retail stores in southern California. RMG's claims fail as a matter

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

of law. RMG cannot prove such use was sufficient to create any enforceable rights.

## II. SUMMARY OF UNCONTROVERTED FACTS

### A. Mr. Miller's New Generation of PIC 'N' SAVE Retail Stores

Defendant Mark Miller led the retail operations of the original California-based Pic 'N' Save companies from 1988 to 2002. Statement of Uncontroverted Facts ("SUF") 1. During Mr. Miller's fifteen years at the original California Pic 'N Save, he "fell in love with the business and has loved it ever since." SUF 11-12.

#### 1. Mr. Miller Assembles His PNS Team

During the 2018 and 2019 timeframe, Mr. Miller pursued several business opportunities, including the purchase of a candle company, and working on a potential PNS project. SUF 15. Mr. Miller utilized his numerous business relationships and connections made during his many decades in retail business to help develop the PNS project. In May 2018, Mr. Miller approached longtime family friend and commercial real estate agent, Jodi Shoemake, to discuss the possibility of searching for potential properties for PNS retail stores. SUF 16. During that same timeframe, Mr. Miller introduced Ms. Shoemake to Emin and Artin Tersaakyan and their company West Coast Dealz (collectively "WCD") as potential business partners in the contemplated PNS project. SUF 17. WCD was known to Mr. Miller as being well connected in the wholesale closeout/seasonal business. *Id.* During this same timeframe, Mr. Miller reconnected with a business acquaintance Greg Sherwin and his company RMG ("a wholesale only operation"), also with experience in the grocery/closeout wholesale business. SUF 18-20. Despite having no actual connection to the original California PNS stores, other than plagiarizing its original logo,[1] Mr. Sherwin also expressed an interest in opening a new

[1] In 2012, Mr. Sherwin/RMG filed a federal trademark application for PIC N SAVE for discount grocery stores using a logo Mr. Sherwin admits he "plagiarized" from the original Pic 'N Save Corporation. SUF 7-10. The USPTO rejected the application as confusingly similar to an existing PICK 'N SAVE registration owned by Roundy's, a subsidiary of Kroger, with prior use going back to February 2,





LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

generation of PNS stores.

**2. <u>Mr. Miller Retains Ware Malcomb To Create A PNS Logo</u>**

In 2019, the potential business opportunity to purchase a candle company did not come to fruition, and Mr. Miller began focusing more on the PNS project. In early 2019, Mr. Miller retained the well-known design and architectural firm, Ware Malcomb, to independently create and design the next generation PNS logo for Mr. Miller. SUF 43-44. Because Mr. Miller had not yet created a company in connection with the PNS project, Mr. Miller personally paid $4000 to Ware Malcomb for their services and for the exclusive rights, including the exclusive copyright rights, for use of the PNS logo. *Id.* Ware Malcomb provided updated, high-resolution logos and design to Mr. Miller as shown below. SUF 46.

Once Mr. Miller consulted with corporate counsel and identified a corporate entity to be associated with the PNS project, on September 18, 2019, Ware Malcomb assigned all exclusive rights, including any copyright rights, to the new company, WOW Bargains and Closeouts, Inc. dba Pic 'N' Save Bargains. SUF 47.

**3. <u>Sherwin Voluntarily Assists With Trademark Protection</u>**

Prior to the eventual company, WOW, being formed in connection with the PNS project, Mr. Miller was proactive in attempting to protect the trademark rights associated with the new logo for which Mr. Miller commissioned and funded. Mr. Miller received a referral for trademark attorney Michael Grace to assist with

---

1957—U.S. Trademark Reg. No. 1,443,606 for use with retail grocery store services ("'606 Registration"). SUF 2-6, 9. RMG did not use PNS in 2012 after RMG "got a punch back from the USPTO" and because "it was going to be turbulent and we needed to come up with a different name." SUF 10,182-183.

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

the PNS project. SUF 48-49. Both Mr. Miller and Mr. Sherwin were involved in this process. SUF 49. They wanted to file an intent-to-use (ITU) trademark application in order to create a priority date prior to actual use. On March 1, 2019, Mr. Grace initially advised, regarding filing an ITU trademark application, that the "best order of business is to form the entity and then file the [trademark] application." SUF 51. Because the new company, WOW, was not yet formed, Mr. Sherwin asked Mr. Grace if the ITU application could be filed in RMG's name "and then Re-Marketing sells rights to use at $1.00 a year on a 5, 10, 20 year cont[r]act . . . ." SUF 53. Mr. Grace responded on March 1, 2019: "Yes, we can make that work. Who will sign?" SUF 54. Mr. Sherwin responded on March 1, 2019: "I will sig[n] whatever RMG needs to sign[.] Once Newco set I will sell : assign rights to Newco[.] I believe this will expedite filing." SUF 55. There was never an agreement as to Sherwin's role (if any) in the new company, nor was there ever agreement as to Mr. Sherwin's compensation. SUF 41, 42, 56.

Mr. Miller asked trademark attorney Mr. Grace if wholesaler RMG could file the ITU application for retail services given that RMG was a "wholesaler." SUF 58. Mr. Grace responded on March 1, 2019: "It's best to wait until newco is formed, but if it cannot be done and meet your deadline we can file under Re-Marketing and assign the registration to newco after it [the registration] issues." SUF 59. Mr. Miller responded: "Ok." SUF 60.

In a separate email thread that same evening, Mr. Miller again expressed concern that the ITU trademark application for retail services would be registered under "Re-Marketing that is a wholesaler." SUF 61. Again, Mr. Grace responded that same evening "Not to worry. The rights flow via license by Re-Marketing to newco[.] We will use the description of goods for newco. Assignment follows after the registration has issued." SUF 62. The next day, March 2, 2019, Mr. Grace further responded to Mr. Miller that Mr. Grace could file an ITU application in the name of RMG and that Mr. Miller should consult corporate counsel to determine

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

the specific corporate form of the new company. SUF 63.

Based on Mr. Grace's legal advice and Mr. Sherwin's agreement to license and then assign any rights to the new company for a nominal amount, Mr. Miller gave approval to Mr. Grace to file the ITU application in the name of RMG. SUF 64, 68. On March 4, 2019, Mr. Grace filed an ITU application on behalf of "The Re-Marketing Group, Inc.," U.S. Application Serial No. 88325180 ("'180 ITU Application"). SUF 65.[2]

Ultimately, the USPTO rejected the '180 ITU Application, again based on a likelihood of confusion with the still-existing '606 PICK 'N SAVE registration with prior use going back to February 2, 1957. SUF 2-6, 124. RMG failed to respond and the '180 ITU Application was abandoned. SUF 125.

### B. WOW Is Formed and Funded By Outside Investors

In March 2019, Mr. Miller continued to consult with his corporate counsel who recommended converting an existing company into the new company, and call the new company WOW Bargains & Closeouts (WOW). SUF 72. On April 18, 2019, Dynamic Candle became WOW Bargains & Closeouts, Inc., and the Certificate of Amendment was publicly filed with the Secretary of State of California. SUF 75.[3] Only Mr. Miller paid for the costs and attorneys' fees associated with creating the new company, WOW. SUF 77. After WOW was formed, Mr. Sherwin confirmed there "has to be licensing of the name from RMG

---

[2] Mr. Sherwin and RMG paid Mr. Grace's legal bills and asked for reimbursement from WOW. When WOW was fully funded by outside investors in July 2019, WOW allocated $10,000 in funds to reimburse Mr. Sherwin for legal fees upon a submission of the bills for reimbursement, reflected in WOW's Board Minutes. SUF 108. Mr. Sherwin failed to submit any bills for reimbursement. SUF 109.

[3] Before the transaction, on April 15, 2019, Mr. Miller forwarded Mr. Sherwin an email from Mr. Miller's corporate counsel explaining the procedure they would use. SUF 73. On April 16, 2019, Mr. Sherwin confirmed receipt of the email outlining the procedure and identifying the name of the new company as WOW and Mr. Sherwin responded: "Cool. I guess." SUF 74.

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

to Newco" per the advice of Mr. Grace. SUF 82. Mr. Sherwin never disagreed with Mr. Grace's legal advice and admitted that "whatever trademark rights that were owned by RMG" would be licensed to the new company, and that "[e]verybody knew we were filing a trademark for Re-Marketing Group for Pic 'N' Save Outlets, Bargains & Closeouts to license it to NewCo to open stores . . . . At the end of the day, it was going to license." SUF 50, 66-67.

For over a year and half prior to the creation of WOW, Mr. Miller spent hundreds of hours working to secure outside investors in the new Pic 'N' Save business. SUF 94. Mr. Miller ultimately was successful in obtaining outside funding totaling over $1.5 million. SUF 95. Although Mr. Sherwin had met with potential investors, Mr. Sherwin admitted that he "didn't know what [Mr. Miller] was doing with the investors. I wasn't privy to that. I wasn't involved in the fundraising, I wasn't involved in the projections, the projected sales." SUF 96.

The closing date on which WOW was officially funded was July 24, 2019. SUF 97. As of April 18, 2019 through the present, Mr. Miller was and is the Chief Executive Officer of WOW Bargains & Closeouts. SUF 76. In consultation with many advisors, and in his capacity as CEO, Mr. Miller and the Board of WOW ultimately made the decision that only monetary investors would be granted equity ownership in WOW. SUF 98. Mr. Sherwin never expressed any interest to Mr. Miller in investing money in WOW nor did Mr. Sherwin ever offer to invest money in WOW. SUF 103-107. Because Mr. Sherwin was not an investor, he was not granted any equity ownership. SUF 107.

### C. <u>WOW Begins Use of its PNS Logo and Design</u>

In July 2019, WOW created, ordered, and began distributing business cards incorporating the new PIC 'N' SAVE design and logo that Mr. Miller had paid for. SUF 87. The July 2019 WOW PIC 'N' SAVE business cards state that Mark J. Miller is the Chairman / CEO / President, as shown below. SUF 88.


Mark J. Miller
CHAIRMAN / CEO / PRESIDENT
(818) 454-8864
mmiller@pnsoutlets.com
www.pnsoutlets.com
3422 Garfield Avenue I Commerce, CA 90040
PIC 'N' SAVE OUTLETS
BARGAINS & CLOSE-OUTS

WOW made no business cards with Mr. Sherwin's name or the RMG name on them, as they never had any official role with WOW. SUF 90.

Also in July 2019, WOW distributed flyers to landlords and industry brokers incorporating the new PIC 'N' SAVE design and logo, as WOW sought retail space for its stores. SUF 91. In August 2019, WOW set up signage displaying its new PIC 'N' SAVE design and logo in the office space WOW leased from RMG located at 3422 Garfield Avenue, Commerce, CA 90040. SUF 92.

### D. <u>Further Discussions As To Mr. Sherwin's Role In WOW</u>

From the outset, Mr. Miller envisioned that he would oversee and manage the new PNS stores and that RMG and/or WCD would be potential suppliers. SUF 21. Mr. Miller consistently referred to Mr. Sherwin's potential role in the new company as a "key supplier, warehouse and office lease owner." SUF 32. This was well-documented. For example, on April 20, 2019, Mr. Miller sent an email to Mr. Sherwin and others identifying preliminary roles in the new potential business in which Mr. Miller identified his role as "El Jefe" (the boss), and identified at least two "strategic partners"[4] (including Mr. Sherwin) and a marketing partner. SUF 28. On May 5, 2019, Mr. Miller sent another email identifying preliminary key individuals and roles in the new potential business as follows: Mark Miller (CEO), Joe Swisher (CFO/COO), Greg Sherwin (food buying, warehousing, office space),

---

[4] Throughout the PNS project, Mr. Miller colloquially referred to many individuals as his "strategic partners," "business partners," and/or "partners," including Ms. Shoemake, Ware Malcomb, West Coast Dealz, Emin and Artin Tersaakyan, Mr. Sherwin, and RMG. SUF 33-37. No actual legal partnership was ever formed between or among any of these individuals or entities and none of these individuals or entities ended up investing in, or obtaining equity ownership in WOW. SUF 33, 41-42, 98-102, 107.

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

West Coast Dealz (seasonal), Mike Sheldon (marketing, branding), Tim Conway, Jr. (marketing), Mark Verge, Take Flight Social Media, Robert Adams (systems), Jodi Shoemake (Real Estate), Robert Campbell (Financing). SUF 30.

At the time, Mr. Sherwin also acknowledged that Mr. Miller was the leader of the project. On May 7, 2019, in responding to a potential insurer for the new PNS business, Mr. Sherwin confirmed that "Mark [Miller] is going to be the managing partner" and that the project is comprised of "MARK'S TEAM. ITS HIS BABY . . . ." SUF 31.

Mr. Miller and Mr. Sherwin had numerous conversations throughout the process as to Mr. Sherwin's and RMG's ultimate role in WOW. Mr. Sherwin sought compensation in the form of payment above cost for supplying wholesale grocery items and Mr. Sherwin also sought at least 15% ownership in the new business. SUF 38. Mr. Miller believed that the appropriate form of compensation for Mr. Sherwin/RMG's services would be payment at a specified percentage above cost for supplying wholesale grocery items, although that percentage was never agreed upon. SUF 39, 41-42. At no point did Mr. Miller ever offer Mr. Sherwin any percentage ownership in the new business. SUF 40. At no point in time did Mr. Sherwin and Mr. Miller ever come to an agreement as to Mr. Sherwin's/RMG's role, responsibilities, expectations, or compensation for the new company. SUF 41. Even now when asked: And at any point in time were the terms of this business arrangement finalized?" Mr. Sherwin admits: "No, it wasn't." SUF 42.

### E. <u>Written Lease Agreement Between RMG and WOW</u>

From approximately March through July 2019, Mr. Sherwin and RMG had volunteered office space at no cost for the PNS project. SUF 111. With no finalized business arrangement between WOW and Mr. Sherwin, in August 2019, after WOW was funded, RMG and WOW negotiated a commercial lease agreement such that WOW began paying rent in exchange for using office space located at RMG's offices/warehouse located at 3422 Garfield Avenue, Commerce, CA 90040.

SUF 112. Under the terms of the lease, WOW was contractually required to "carry on business under the name of WOW Bargains & Closeouts, Inc. doing business as Pic 'N' Save Outlets and will not change such name without the prior written consent of" RMG. SUF 117. RMG, therefore, ***required*** WOW to do business under the Pic 'N' Save mark before RMG ever claims to have used the PNS mark.

### F. WOW Moves Its Operations to Vernon, CA

The working relationship between Mr. Sherwin and Mr. Miller deteriorated and on October 23, 2019, WOW provided a notice of termination of the lease to RMG effective as of December 22, 2019. SUF 118. In November 2019, WOW moved its business offices to Vernon, CA until it opened its flagship Anaheim store in 2020. SUF 120. In January 2020, WOW updated its business cards to reflect the new business address. SUF 121. WOW paid rent for its rented office space to RMG through December 22, 2019. SUF 122.

### G. RMG Uses WOW's Exclusive Logo Without Permission

Unbeknownst to Mr. Miller or WOW at the time, in early December of 2019, while WOW was still a lessor paying rent at RMG's warehouse (but had already moved offices), RMG, without permission, obtained an image of WOW's exclusive trademark/logo/design ("logo") from Mr. Miller's former office space that WOW was still leasing from RMG. SUF 127-128. RMG created an advertising flyer using an unauthorized screen shot of WOW's exclusive logo ("December 2019 Flyer"). SUF 127-132. RMG claims to have printed 1000 or less copies of the December 2019 Flyer on December 6, 2019 and distributed them in an area located near RMG's warehouse/WOW's office space in Commerce, CA. SUF 133-135.

RMG used the flyer to promote a warehouse "pop-up" store located in the back portion of RMG's warehouse located at 3424 Garfield in Commerce, CA in December 2019. SUF 136. RMG apparently moved the location across the alley in January 2020 to 3422 Garfield in Commerce, CA and it ceased operations altogether in March or April of 2020. SUF 138.





LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

RMG's warehouse "pop-up" stores had minimal signage. RMG produced no evidence of any permanent signage bearing any PNS mark. Mr. Sherwin can recall only one sign with PIC 'N' SAVE that RMG had located inside either pop-up store, which was actually ***WOW's signboard*** depicting WOW's exclusive PIC 'N' SAVE logo and design that RMG ***physically took*** from WOW's office while WOW was leasing that office space from RMG. SUF 142-145. WOW's signboard sat on a warehouse shelf in plastic wrap and protective corner coverings set among other products on shelves, as if the sign itself was for sale. SUF 145.




RMG also produced images of a "Holiday Warehouse Sale" sign, apparently hung on a fence during December 2019, and a "T-Shirt Liquidation" sign, both taken down at night and both with very small, unauthorized, uses of WOW's logo. SUF 146-148.







Mr. Sherwin did not recall any other banners used with any warehouse pop-up store. SUF 149. RMG did not advertise or promote its warehouse pop-up store online. SUF 166.[5]

RMG purchased some "salvaged" goods, some with fire "extinguisher residue" and an "odor" from another discount store that had caught on fire. RMG sold this from the back of its warehouse. SUF 167. One-hundred percent of goods

[5] Mr. Sherwin also claimed there were yard signs placed outside the warehouse, but RMG failed to produce any documentation that any yard sign was ever ordered or paid for, and produced no image of any such yard sign.



LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

sold from the back of the warehouse were "salvaged" goods. SUF 168.

RMG did not regularly keep its cash register receipt tapes from the warehouse pop-up store and instead would throw them away.[6] SUF 151. RMG did not "determine the volume of total sales" for the warehouse pop-up store. SUF 160. RMG made cash sales only, ***charging no sales tax***. SUF 153-155. It operated on four days in December 2019, zero days in January 2020, ten days in February 2020, seven days in March 2020 and one day in April 2020. SUF 156-157.[7] The total cash sales for April was $1, and the total cash sales during this entire period shown by the cash register receipt tapes (not thrown away) was less than $14,000. SUF 158.

Mr. Sherwin claims that the receipts generated from the cash sales included the words PIC 'N' SAVE, but that many of the customers of the warehouse pop-up store said they "don't need the receipt" in which case "we'd crumple it up and throw it in the trashcan." SUF 170.

### H. RMG Files A Trademark Application For WOW's Logo

On March 5, 2020, unbeknownst to WOW, and without WOW's permission or authorization, RMG filed a trademark application with the California Secretary of State for the mark: PIC 'N' SAVE OUTLETS BARGAINS & CLOSEOUTS for "Retail store services featuring deeply discounted consumer goods." SUF 175. The only specimen of (purported) use submitted by RMG with its 2020 California application was its December 2019 Flyer, on which RMG had used an unauthorized screen shot of ***WOW's exclusive*** logo paid for by Mr. Miller. SUF 177, 184.

The California application requires disclosure of any related federal applications. SUF 178-179. Despite the fact that as of March 5, 2020, RMG had previously filed ***two*** federal applications for a PIC 'N' SAVE mark (in 2012 and

[6] The cash register used at the warehouse store at some point "crapped out" according to Mr. Sherwin. SUF 171.

[7] Mr. Sherwin claims the warehouse pop-up store was open additional days during that time period, but RMG failed to provide any corroborating documentation.

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

2019), that both federal applications had been rejected as confusingly similar to an existing '606 PICK 'N SAVE Registration, and that the logo in the new California application was identical to the logo in the 2019 application, RMG failed to disclose either federal application (one abandoned/one pending at the time) to the California Secretary of State. SUF 180-183, 185.

**I. <u>WOW's Actions To Enforce Its Rights</u>**

In March of 2020, WOW first learned of RMG's California trademark application, and in turn, first learned of the existence of RMG's December 2019 Flyer, its purported warehouse pop-up store, and RMG's unauthorized copying of WOW's exclusive PIC 'N' SAVE trademark/logo. SUF 186. After learning this in March 2020, Mr. Miller attempted to locate the pop-up store at RMG's warehouse facility but never located any signage or any operating pop-up store. SUF 187.

In light of this unauthorized use, however, WOW filed suit to protect its rights. SUF 188-189. In June 2020, WOW entered into a lease agreement to lease retail space at the Anaheim Towne Center in Anaheim, CA from NewMark Merrill to open its flagship PIC 'N' SAVE retail store. SUF 205.

On or about August 21, 2020, Mr. Miller learned from his contractor for the flagship Anaheim PNS store that Mr. Sherwin was attempting to open up a PNS store in Ontario, CA, and further learned through the commercial agent that the property was owned by Mr. Sherwin's relative. SUF 192-199. The listing agent for the commercial property in Ontario, CA encouraged WOW's agent, Ms. Shoemake, to make an offer on the property because the potential deal with Mr. Sherwin was probably going to be temporary and month-to-month and the owner (Mr. Sherwin's relative) was more interested in a long-term lease at market value. SUF 195. WOW never made any offer on the Ontario location. SUF 198.[8]

---

[8] RMG falsely claims that Mr. Miller first learned of Mr. Sherwin's connection to the Ontario property in RMG's mediation brief. Mr. Miller independently learned this public information much earlier from his contractor. SUF 192-198.

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Mr. Sherwin and Mr. Miller attended a mediation on September 16, 2020 in front of the Hon. James L. Smith (Ret.) and the case did not settle. SUF 202. On September 22, 2020, following mediation, WOW voluntarily dismissed the first lawsuit without prejudice because WOW understood RMG at the time was not using any PNS mark, RMG's store in Ontario was not open, the lease in Ontario was temporary, and because WOW had considered selecting another mark altogether[9] to avoid further disputes with Mr. Sherwin and RMG. SUF 203. It also appeared at that time that Mr. Sherwin was attempting to take his token use of WOW's logo and leverage that into a substantial payout, because Mr. Sherwin was still bitter he was not an equity owner in WOW. After WOW voluntarily dismissed the lawsuit, and prior to even selecting another mark, WOW's landlord for its Anaheim flagship store (which had not yet opened), took the position that WOW was contractually required to open the store under the Pic 'N' Save marks, and WOW therefore continued with its existing plans to open its Anaheim flagship store using the PIC 'N' SAVE marks, with continuous use of the mark. SUF 203, 204.

### J. WOW Opens Its Flagship PIC 'N' SAVE Anaheim Store

On June 29, 2020, WOW launched a Facebook page and separately launched a website to promote its retail stores utilizing its exclusive PIC 'N' SAVE trademark and logo/design. SUF 206. On October 7, 2020, WOW launched an Instagram page to promote its retail stores utilizing its exclusive PIC 'N' SAVE trademark and logo/design. SUF 208.[10]

On November 12, 2020, WOW opened its flagship Anaheim retail store in the Anaheim Towne Center with extensive and exclusive use of its PIC 'N' SAVE trademark and logo and design, and this flagship store remains open to this day.

---

[9] WOW, however, never stopped using the PNS mark. SUF 203.

[10] WOW worked with Ware Malcomb to make some slight modifications to the logo and design, including shortening the name to PIC 'N' SAVE BARGAINS.

SUF 209, 212. At the time WOW opened its flagship store in Anaheim, RMG was not using any PIC 'N' SAVE mark anywhere, RMG had never operated a retail store or warehouse or business at all in Orange County in connection with any PIC 'N' SAVE mark, and RMG's only prior purported use of any PIC 'N' SAVE mark was done exclusively with WOW's own design and logo, without WOW's authorization. SUF 210-211.

To date, WOW has sales approaching [redacted] in its flagship Anaheim store, and intends to open its next PNS retail stores in Whittier, CA in fall 2021 and in Monrovia, CA in 2022. SUF 213-216.

### K. <u>Sherwin/RMG Then Open Their Ontario Store</u>

RMG opened its Pic 'N' Save-branded retail store in Ontario, CA in "late November" 2020, still using WOW's trademark/logo. SUF 217. There is no outside permanent signage at the Ontario store. The main signage is a temporary banner and temporary paint and could be removed at a moment's notice. SUF 220. RMG is not contractually required to use the PIC 'N' SAVE name as part of its current lease obligations. SUF 219.

## III. <u>LEGAL STANDARD FOR SUMMARY JUDGMENT</u>

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Becton Dickinson & Co. v. C. R. Bard, Inc.*, 922 F.2d 792, 795 (Fed. Cir. 1990). As the moving party, WOW bears the initial responsibility of "informing the district court of the basis for its motion" and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. A fact is considered genuinely disputed if a reasonable jury could return a verdict for RMG. *Becton Dickinson & Co.*, 922 F.2d at 796.

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

## IV. RMG'S COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION CLAIMS FAIL AS A MATTER OF LAW

To prevail on a claim for trademark infringement under the Lanham Act, a plaintiff must prove: (1) ownership of a valid trademark; (2) use of the mark without its consent; and (3) that such use is likely to cause confusion. *Credit One Corp v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134, 1137 (C.D. Cal. 2009); *see also Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012). The ownership of a valid trademark is established through priority of use in commerce. *Sengoku Works Ltd. v. RMC Int'l Ltd.*, 96 F.3d 1217, 1219 (9th Cir.), as modified, 97 F.3d 1460 (9th Cir. 1996). A mark is "deemed to be in use in commerce . . . on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." *Rearden*, 683 F.3d at 1203-1204. In determining whether the two elements of the "use in commerce" test have been satisfied, the Ninth Circuit follows a "totality of the circumstances" approach that turns on showing: (1) adoption of the mark, and (2) use that is "sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind." *Id.* at 1205. "E]vidence of actual sales, or lack thereof, is not dispositive." *Id.*

### A. RMG Cannot Prove Ownership/Bona Fide Use Prior to WOW

Under the Lanham Act, "when a mark is not registered . . . , the plaintiff is left with the task of satisfying its burden of proof of establishing a valid mark." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005). RMG does not have a federal registration for the PNS Mark. RMG thus bears the burden of proving that it has rights in the PNS mark and the scope of those rights, which it cannot prove.

#### 1. RMG Failed To Prove A Sufficient Association With Consumers Between WOW's Mark and RMG

In order to establish enforceable trademark rights, a mark must be "used in

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

public in a manner that creates an association among consumers between the mark and the mark's owner." *Brookfield Commc'ns., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999). Moreover, the purported trademark owner must show use in commerce in a way "sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind." *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1200 (9th Cir. 1979) (internal quotation marks omitted); *see also* 15 U.S.C. § 1127 ("The term 'trademark' includes any word, name, symbol, or device, or any combination thereof . . . used by a person, or . . . which a person has a bona fide intention to use in commerce and applies to register . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods . . . ."). A "mark cannot serve a source-identifying function if the public has never seen the mark." *Brookfield*, 174 F.3d at 1051.

In *Social Technologies, LLC v. Apple Inc.*, 4 F.4th 811, 815 (9th Cir. 2021), the plaintiff owned a federal registration. The Ninth Circuit held that the existence of 5100 downloads of the plaintiff's Memoji app was not sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind and therefore not sufficient to establish bona fide trademark use.

RMG's minimal use here is far less than that in *Social Tech*. None of the salvaged goods RMG sold were even marked with Pic 'N' Save. The only signage inside the store was ***WOW's own*** signboard, wrapped in plastic, sitting inconspicuously among the salvaged goods. RMG's flyers (featuring ***WOW's*** logo) were distributed near the warehouse. RMG's small temporary outside banners (taken down at night) featured a barely-noticeable logo. RMG produced ***no consumer surveys*** and no evidence to show that any customer would link these minimal (less than $14,000) cash sales to PNS, or that ***any*** segment of the public would associate PNS with RMG. RMG produced no evidence that RMG was ever promoted or linked at all to the minimal logo use. Moreover, there are numerous

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

other uses of Pic 'N' Save for retail services. SUF 2-6.

Further, RMG cannot show that any cash sales in the wholesale warehouse were understood as retail services, particularly where RMG had no actual indoor signage and did not collect sales tax. In summary, RMG cannot show that its minimal use of ***WOW's logo*** featuring the PNS Mark created an association among consumers generally between the mark and RMG.

**2. <u>RMG's Use Was Not Bona Fide Use in Commerce</u>**

"[O]nly *lawful* use in commerce can give rise to trademark priority. *CreAgri, Inc. v. USANA Health Sci., Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) (no bona fide use for sales of product made without FDA approval). The Ninth Circuit explained that "to hold otherwise would be to put the government in the 'anomalous position' of extending the benefits of trademark protection to a seller based upon actions the seller took in violation of that government's own laws." *Id.*

First, RMG admits it ***only*** used unauthorized images of WOW's exclusive logo for its warehouse pop-up store. Mr. Miller paid for the logos and WOW owns the exclusive right to use these logos and designs. SUF 143-149. Plaintiffs' unauthorized use of WOW's logo is therefore not bona fide and is unlawful.[11]

Second, RMG, who is asserting common law trademark rights for "retail sales," admits it failed to collect sales tax on ***any sale***. SUF 153-155. In fact, RMG admits it kept ***no record*** of the total sales, and it ***intentionally destroyed evidence*** of many of the warehouse pop-up sales by discarding the cash register receipts. SUF 151, 159-160. Such actions are unlawful. Cal. Rev. and Tax Code §6051 (imposing sales tax on retail sales); Cal. Code of Regs. Title 18, §1698(b) (requiring taxpayer to maintain all records necessary to determine the correct tax liability).

In addition, there is a strong nexus between RMG's asserted trademark rights

[11] Or in the alternative, because WOW is the exclusive owner of that PNS logo, the benefit of any use should inure to the benefit of the rightful owner, WOW.

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

and its unlawful acts. RMG again failed to create its own logo, and unlawfully used WOW's logo, for which WOW holds the exclusive rights. SUF 47. Thus, the subject trademark itself is an unlawful use—RMG had no right to use WOW's exclusive logo. There can be no stronger nexus between the asserted rights and the nature of the unlawful use.

Moreover, a seller in California is required by law to collect sales tax on any retail sale from the customer and maintain sales records. RMG's failure to collect sales tax and its destruction of evidence of such sales is directly related to whether RMG made a bona fide sale. RMG committed multiple violations of law in performance of the claimed service (retail sales) for which RMG seeks common law trademark protection. In addition, RMG cannot show that such sales made in violation of the law even constitute a retail sale. Again, the nexus between the purported trademark use and unlawful activity could not be stronger.[12]

**3. <u>RMG's Attempt To Reserve Rights To Later Sue WOW Is Not a Bona Fide Trademark Use</u>**

"Mere adoption of a mark without bona fide use in commerce, in an attempt to reserve rights for the future, is insufficient to establish rights in the mark under the Lanham Act." *Social Techs*, 4 F.4th at 817. A product or service that is "rushed to market solely to reserve its right in the mark" is "not bona fide use in commerce." *Id.* at 819. Here, RMG fully knew that WOW was planning to open retail stores under the PNS marks. RMG's rush to haphazardly sell a few fire-damaged goods from a warehouse is merely an attempt to reserve rights to later sue WOW.

Moreover, as an equitable matter, in cases where it is public knowledge that a company will begin use of a trademark in the future, courts are loathe to reward

[12] *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 931 (9th Cir. 2014) is inapposite. The trademark owner there was not asserting rights for retail services, the alleged general tax violation was not substantiated, and was not related to the claimed services. *Id.*

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

opportunistic trademark trolls who rush to file state-law applications or claim token use to claim priority. *See generally Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 433-34 (7th Cir. 1999) (denying trademark priority to Johnny Blastoff, Inc. for ST. LOUIS RAMS trademark after it rushed to file a Wisconsin state trademark application and sell two shirts following the public announcement that the Los Angeles Rams would be moving to St. Louis.)

### 4. RMG Fails to Show Use in Interstate Commerce

Trademark rights under the Lanham Act require use in interstate commerce. 15 U.S.C. §§ 1125, 1127. RMG failed to produce any evidence of use of any PNS mark in interstate commerce. The only purported use of the PNS Mark by Plaintiffs was use of the mark on flyers handed out near the warehouse in the City of Commerce and small temporary banners, also in the city of Commerce. RMG admits it had no website or social media featuring the PNS mark. SUF 166.[13] Because Plaintiffs cannot prove use of the PNS Marks in interstate commerce, for this additional reason their claim of federal trademark rights must fail.

### B. RMG Fails To Prove WOW's Use Is Without its Consent

RMG also fails to prove the second required element, that WOW's use of its own PNS logo is without consent. *Credit One*, 661 F.Supp.2d at 1137.

First, WOW owns the exclusive rights to the logo, not RMG, which by itself precludes such a claim.

Second, RMG entered into a written lease agreement with WOW in September 2019, the terms of which ***require*** WOW to use the PNS marks in connection with retail services. This is not only consent by RMG, it is a legal obligation that RMG imposed on WOW.

Third, in March of 2019, when RMG was going to be the placeholder until

[13] RMG asserts that certain items were promoted on sales apps, RMG produced no evidence that any PNS mark was ever used with these apps. SUF 166.

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

the new company was created, RMG agreed to exclusively license any rights it may gain in the PNS Mark to NewCo, i.e., WOW, and then assign the rights if it obtained a trademark registration. None of these facts can be disputed. Each of these facts precludes RMG from claiming that WOW's use constitutes infringement.

This same set of facts also supports WOW's legal claim that RMG is legally estopped from seeking to enjoin WOW's use of its own PNS logo. Based on Mr. Sherwin's representations and also on WOW's contractual obligations, WOW sought and obtained investors for its stores operating under the PNS Mark and sought and obtained leases to open its retail stores using the PNS Mark. RMG is therefore estopped from taking a contrary position with regard to the PNS Mark. *See Petrella v. Metro-Goldwyn Mayer, Inc.*, 572 U.S. 663, 684 (2014) ("The gravamen of estoppel, a defense long recognized as available in actions at law, is misleading and consequent loss.") (internal citations omitted); *see, e.g., Masters v. UHS of Del.*, 631 F.3d 464, 469 (8th Cir. 2011) ("estoppel bars a claim when an innocent defendant relies in good faith upon the claimant's misleading conduct or representations and changes its position to its detriment . . . .").

### C. <u>RMG Admits *Their* Use Was Solely Descriptive</u>

Mr. Sherwin/RMG admitted that RMG's use of the words "Pic 'N' Save" describe the "type of retail store" that RMG was operating. SUF 221. This is an admission that the PNS Mark, as used by RMG, is a descriptive mark on the spectrum of trademarks. *See Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 872 (9th Cir. 2002) ("Trademark law groups terms into four categories: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. . . . Descriptive terms, however, describe[ ] a person, a place or an attribute of a product [or service].") (internal citations and quotations omitted).

"A 'descriptive' mark may be entitled to protection ***only*** if it has acquired distinctiveness through secondary meaning." *Marketquest Grp., Inc. v. BIC Corp.*, 316 F.Supp.3d. 1234, 1257 (S.D. Cal. 2018) (emphasis in original). RMG bears the

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

burden of proving secondary meaning in its asserted mark. *Id.* Yet RMG failed to offer any evidence to support a claim of secondary meaning. An order that RMG does not own trademark rights in the PNS Mark is therefore warranted.

**D. <u>Any Common Law Rights Are Limited in Geographic Scope</u>**

Common law trademark rights, which RMG asserts here, are limited to the narrow geographic scope of actual use and consumer association. *See Credit One*, 661 F.Supp.2d at 1138 ("A party asserting common law rights must not only establish that it is the senior user, it must also show that it has 'legally sufficient market penetration' in a certain geographic market to establish those trademark rights.") To the extent there was any bona fide use at all prior to WOW's use, or use sufficient to create an association between the mark and the source, it was limited, at best, to the City of Commerce, California and such use ended in March 2019 and has never resumed. *See, e.g., Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1995).

RMG offers no evidence that it used any PNS mark outside the City of Commerce prior to WOW's opening of its Anaheim flagship store, or that anyone outside of City of Commerce saw RMG's flyer, visited its purported warehouse store, or purchased any product from RMG in connection with any use of any PNS mark. SUF 162-165. RMG's purported rights, therefore, are legally insufficient to seek to enjoin WOW's alleged trademark use outside City of Commerce.

**E. <u>RMG's Unfair Competition/State Law Claims Similarly Fail</u>**

Plaintiffs' unfair competition and state law claims rise and fall with the federal infringement claim. 15 U.S.C. §§ 1114, 1125(a). *See also E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 n.2 (9th Cir. 1992) (elements of infringement and unfair competition claims are essentially the same, and their respective rulings "stand or fall together"); *Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 70 F.Supp.3d 1105, 1134 (N.D. Cal. 2014) ("To successfully maintain an action for . . . false designation of origin [or] unfair competition under the Lanham

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Act or California law, plaintiff must show that it has a valid trademark and that defendant's use of the mark is likely to cause confusion") (alteration in original).

## V. RMG'S MALICIOUS PROSECUTION CLAIM FAILS

RMG's malicious prosecution claim is premised on WOW's prior suit against RMG, which WOW voluntarily dismissed without prejudice prior to RMG's filing of an answer in the prior proceeding. To prevail on its malicious prosecution claim, RMG must prove that the prior action was (1) commenced by WOW and pursued to a legal termination in RMG's favor; (2) brought without probable cause; and (3) initiated with malice. *Zamos v. Stroud*, 32 Cal. 4th 958, 965-66 (2004). "A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him." *Soukup v. Law Offices of Herbert Hafif*, 39 Cal.4th 260, 292 (2006). Malice is present "when a suit is actuated by hostility or ill will, or for some purpose other than to secure relief." *Drummond v. Desmarais*, 176 Cal.App.4th 439, 451-52 (2009). RMG cannot prove *any* of these elements of its claim.

### A. Voluntary Dismissal Without Prejudice is Not a Decision on the Merits

"A plaintiff has an absolute right voluntarily to dismiss his action prior to service by the defendant of an answer or a motion for summary judgment … Even if the defendant has filed a motion to dismiss, the plaintiff may terminate his action voluntarily by filing a notice of dismissal under Rule 41(a)(1)." *Concha v. London* 62 F.3d 1493, 1506 (9th Cir. 1995) (internal citations omitted); *RFR Indus. Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1351-52 (Fed. Cir. 2007). Where a plaintiff voluntarily dismisses an action, it suffers no impairment (beyond its fee for filing) and is "free to return to the dismissing court or other courts at a later date with the same claim." *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 324 (5th Cir. 2005). In other words, there is no "legal determination"

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

when a proceeding is voluntarily dismissed.

A plaintiff's motive in dismissing an action does not affect its power to do so. *Eells v. Rosenblum*, 36 Cal.App.4th 1848, 1855 (1995). Rule 41(a)(1) entitles a plaintiff who complies with its terms to dismiss an action regardless of its reasons for doing so. *In re Skinner & Eddy Corp.*, 265 U.S. 86, 93-94 (1924); *see also Pilot Freight Carriers, Inc. v. Int'l Brotherhood of Teamsters*, 506 F.2d 914, 917 (5th Cir. 1975); *Plain Growers, Inc. By & Through Florists' Mut. Ins. Co. v. Ickes-Braun Glasshouses, Inc.,* 474 F.2d 250 (5th Cir. 1973).

Moreover, a "dismissal without prejudice does not alter the legal relationship of the parties," and thus does not confer "prevailing party" status, because the plaintiff is free to file another lawsuit. *Oscar v. Alaska Dept. of Ed. & Early Develop.*, 541 F.3d 978, 981 (9th Cir. 2008). In summary, because WOW dismissed the prior proceeding without prejudice, and because RMG cannot prove there was any improper motive in doing so, RMG cannot prove that the prior proceeding was pursued to a legal termination in RMG's favor.

**B. <u>RMG Fails to Prove That No Reasonable Person Would Have Believed There Were Reasonable Grounds to Bring the Lawsuit</u>**

WOW filed the first suit upon learning of RMG's state trademark registration for the PNS Mark (which included a specimen of use reflecting use of WOW's proprietary logo) and the assertions by RMG therein that RMG was using the PNS Mark. Upon learning of the state trademark registration, WOW reasonably believed that RMG was using WOW's exclusive logo/PNS Mark and WOW brought suit to enforce its rights. WOW plainly had reasonable grounds, i.e., probable cause, to bring the suit – indeed, when re-filed as a counterclaim, this Court denied RMG's motion to dismiss. Dkt. No. 28. RMG therefore fails on this element as well.

**C. <u>Plaintiffs Can Offer No Evidence That WOW Acted Primarily For A Purpose Other Than Succeeding on the Merits</u>**

Plaintiffs also fail to prove the prior lawsuit was brought with malice, i.e.,

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

for a purpose other than succeeding on the merits. As discussed above, WOW learned of RMG's use of WOW's proprietary logo and RMG's assertion that it had trademark rights in the PNS Mark. WOW, believing it to be the owner of the PNS Mark (and still believing that it is the owner of the PNS Mark, as set forth in its counterclaims in this proceeding), initiated the first suit to resolve the issue between the parties. Following early settlement discussions in the first suit, it became apparent that RMG was not actually using the PNS Mark so there was no longer an ongoing controversy. WOW also considered adopting a different mark but never did, and was obligated to use the PNS Mark pursuant to a lease for its flagship store in Anaheim. With no ongoing use, WOW dismissed its case, believing that if RMG again attempted to use WOW's PNS logo, WOW could again file suit. There is no evidence whatsoever of malice. Summary judgment in favor of WOW on RMG's malicious prosecution claim is warranted.

## VI. <u>RMG'S CALIFORNIA REGISTRATION SHOULD BE CANCELLED</u>

Under Cal. Bus. & Prof. Code § 14230, a California trademark registration shall be canceled if a district court finds, *inter alia*, that "The registrant is not the owner of the mark" or "The registration was obtained fraudulently." The Ninth Circuit applies analogous federal law in construing the statute. *See Grupo Gigante S.A. de C.V. v. Dallo & Co., Inc.*, 391 F.3d 1088, 1105-1106 (9th Cir. 2004).

### A. <u>RMG Cannot Prove Ownership of the PNS Mark</u>

As discussed at length above, RMG cannot prove ownership of the subject mark of the California trademark registration. Accordingly, the California trademark registration should be canceled because RMG is "not the owner of the mark." Cal. Bus. & Prof. Code § 14230(c)(2).

### B. <u>RMG Committed Fraud</u>

Under analogous federal law, "[a] party may seek cancellation of a registered trademark on the basis of fraud under 15 U.S.C. § 1064(c); *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990). The California application requires

LEWIS ROCA
655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

disclosure of any related federal applications. SUF 178-179. Despite the fact that as of March 5, 2020, RMG had previously filed ***two*** federal applications for a PIC 'N' SAVE mark (in 2012 and 2019), that both federal applications had been rejected as confusingly similar to an existing '606 PICK 'N SAVE Registration, and that the logo in the new California application was identical to the logo in the 2019 application, RMG failed to disclose either federal application (one abandoned/one pending at the time) to the California Secretary of State. SUF 80-185. RMG knew that its representation to the Secretary of State were false. *Id.*

This omission was material. The USPTO twice rejected RMG's application when it had knowledge of the existing '606 Registration. By misrepresenting that there were no related federal applications, the Secretary of State was unable to conduct a full, proper analysis of RMG's application for registration. *See* Cal. Bus. & Prof. Code § 14207(b). The only explanation for concealment was an intent to deceive so that the California Secretary of State would rely on the misrepresentation and issue the registration to RMG when the USPTO (twice) would not. Accordingly, RMG's California State Trademark Registration should be canceled as a matter of law.

## VII. CONCLUSION

Based on the foregoing, this Court should enter partial judgment dismissing RMG's infringement and unfair competition claims (RMG Complaint Counts 1 through 5), and malicious prosecution claim (RMG Count 6) (Dkt. No. 1) as to all Defendants, and cancel RMG's California trademark registration (WOW's Fifth Counterclaim) (Dkt. No. 12).

Dated: October 4, 2021 LEWIS ROCA

By /s/G. Warren Bleeker
G. Warren Bleeker
Attorneys for MARK MILLER and
WOW BARGAINS & CLOSEOUTS, INC.