# EXHIBIT 11

# Google Play

With the ability to publish rapidly to over 2 billion active Android devices, Google Play helps you grow a global audience for your apps and games and earn revenue.

Launch Play Console (https://play.google.com…

FEATURED

## #AndroidDevSummit is back!

(https://developer.android.co

Join us

(https://developer

FEATURED

## Check out the Indie Games Festival

Explore the finalist games from Europe,

m/events/dev-summit)

October 27-28 to hear about the latest updates in Android development directly from the Android team, and connect with Android developers around the world.



.android.com/events/dev-summit)

Japan and South Korea, meet the developers who made them, be the first to find out the winners, hang out with players and have fun.



Learn mo...

Join the ...

GUIDES

# Learn how to publish your



## first app using Google Play

Launch checklist (https://d...

# Find success on Google Play

Focus on what is right for your app and learn how Google can help you to do more for your audience.

(https://developer.android.com/distribute/console)

### Google Play Console

(https://developer.android.com/distribute/console)

From the Google Play Console you can manage all

(https://developer.android.com/distribute/google-play/about)

### Google Play

(https://developer.android.com/distribute/google-play/about)

When you publish on Google Play, you put your apps in front of over 1 billion active

phases of publishing and reach over 1 billion active Android users on Google Play.

**About Play Console** (http…

Android users, in more than 190 countries and territories around the world. Google Play helps you get discovered, earn revenue, and build a global business.

**About Play Store** (https://…

(https://developer.android.com/distribute/best-practices)

## Success guide

(https://developer.android.com/distribute/best-practices)

Learn how to develop Android apps and games and follow a simple guide to see that they're published on the Play store.

**See guides** (https://develop…

(https://developer.android.com/distribute/google-play/startups)

## Startups on Google Play

(https://developer.android.com/distribute/google-play/startups)

Take advantage of Google Play features to grow your startup

**Grow your startup** (https:/…

(https://developer.android.com/topic/performance/vitals)

## Android vitals
(https://developer.android.com/topic/performance/vitals)

Improve the stability and performance of your apps

(https://developer.android.com/distribute/best-practices/grow/go-global)

## Expand internationally
(https://developer.android.com/distribute/best-practices/grow/go-global)

Launch and grow your app in new markets

(https://developer.android.com/distribute/best-practices/grow/install-ads)

## Promote your app
(https://developer.android.com/distribute/best-practices/grow/install-ads)

Grow a valuable audience with ads across Google networks

(https://developer.android.com/google/play/billing/billing_subscriptions)

## Subscriptions
(https://developer.android.com/google/play/billing/billing_subscriptions)

Sell content, services, or features in your app with automated, recurring billing

Check... Grow ... Googl... Sell su...

# Latest news

View all news (https://android-developers.googleblog.com/search/labe




BLOG

## Evolving our business model to address developer needs

(https://android-developers.googleblog.com/2021/10/evolving-business-model.html)



BLOG

## Launching Data safety in Play Console: Elevating Privacy and Security



BLOG

## Improved Google Play Console user management: access requests,

When we started Android and Google Play more than a

**October 21, 2021**

## for your users

(https://android-developers.googleblog.com/2021/10/launching-data-safety-in-play-console.html)

We know that a big part of feeling safe online is having control over your dat...

**October 18, 2021**

## permission groups, and more

(https://android-developers.googleblog.com/2021/09/improved-google-play-console-user.html)

User management is an important responsibility for businesses of all...

**September 21, 2021**

# Latest videos

View all videos (https://www.youtube.com/user/androiddevelopers/se




YOUTUBE




YOUTUBE




YOUTUBE

## [AdMob and Play Ads Policy conversations](https://www.youtube.com/watch?v=VIl0FwFX3Rg)

(https://www.youtube.com/watch?v=VIl0FwFX3Rg)

September 8, 2021

## [Developer journey from PC/console to mobile](https://www.youtube.com/watch?v=AMw-mjZXmuE)

(https://www.youtube.com/watch?v=AMw-mjZXmuE)

July 12, 2021

## [All about battle passes: Insights and learnings from top mobile game developers](https://www.youtube.com/watch?v=N-glUIdFtCo)

(https://www.youtube.com/watch?v=N-glUIdFtCo)

July 12, 2021

# Additional resources

View all resources (https://developer.android.com/distribu

## Badge generat

Create badges for your app in just a few clicks, and download hi-res badge assets localized for a variety of languages.

Cr...

## Genera device art

Drag and drop screenshots of your app into device artwork, for better looking promotional images and improved visual context.

Cr...

## Policy center

Understand Google Play's developer policies and deliver trusted apps to a global audience.

Le...

## Quality guideline

Test your Android apps against these quality guidelines to ensure you provide an excellent user experience and gain additional exposure available for Wear, TV, and Auto apps.

Vie...

# EXHIBIT 12

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Mon Oct 25 03:47:23 EDT 2021*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP

Logout Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

TSDR | ASSIGN Status | TTAB Status *( Use the "Back" button of the Internet Browser to return to TESS)*

# Typed Drawing

| | |
|---|---|
| **Word Mark** | PICK 'N SAVE |
| **Goods and Services** | IC 042. US 101. G & S: Retail Grocery Store Services. FIRST USE: 19570202. FIRST USE IN COMMERCE: 19570202 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 73430780 |
| **Filing Date** | June 17, 1983 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | May 8, 1984 |
| **Registration Number** | **1443606** |
| **Registration Date** | June 16, 1987 |
| **Owner** | (REGISTRANT) ROUNDY'S INC. CORPORATION WISCONSIN 23000 ROUNDY DRIVE PEWAUKEE WISCONSIN 53074<br><br>(LAST LISTED OWNER) ROUNDY'S SUPERMARKETS, INC. CORPORATION 875 EAST WISCONSIN AVENUE P. O. BOX 473 MILWAUKEE WISCONSIN 532010473 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Richard L. Kirkpatrick |
| **Prior Registrations** | 1049869 |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20170719. |
| **Renewal** | 2ND RENEWAL 20170719 |
| **Other Data** | SUBJECT TO CONCURRENT USE PROCEEDING WITH NATIONAL MERCHANDISE CO.. APPLICANT CLAIMS EXCLUSIVE USE FOR THE ENTIRE COUNTRY EXCEPT FOR THE STATES OF FLORIDA, GEORGIA, NORTH CAROLINA, SOUTH CAROLINA, VIRGINIA, ALABAMA, MISSISSIPPI, LOUISIANA AND TEXAS. |

| | |
|---|---|
| **Live/Dead Indicator** | LIVE |

TESS HOME NEW USER STRUCTURED FREE FORM BROWSE DICT SEARCH OG TOP HELP

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# EXHIBIT 13

| | |
|---|---|
| **To:** | The Re-Marketing Group, Inc. (mgrace@gracelaw.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 88325180 - PIC 'N SAVE OUTLETS BARGAINS & - PNS |
| **Sent:** | 5/15/2019 4:47:46 PM |
| **Sent As:** | ECOM101@USPTO.GOV |
| **Attachments:** | Attachment - 1<br>Attachment - 2<br>Attachment - 3<br>Attachment - 4<br>Attachment - 5<br>Attachment - 6<br>Attachment - 7<br>Attachment - 8 |

**UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)**
**OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION**

**U.S. APPLICATION SERIAL NO.** 88325180

**MARK:** PIC 'N SAVE OUTLETS BARGAINS &

*88325180*

**CORRESPONDENT ADDRESS:**
MICHAEL K. GRACE
GRACE AND GRACE LLP
P.O. BOX 412666
LOS ANGELES, CA 90041-9666

**CLICK HERE TO RESPOND TO THIS LETTER:**
http://www.uspto.gov/trademarks/teas/response_forms.jsp

VIEW YOUR APPLICATION FILE

**APPLICANT:** The Re-Marketing Group, Inc.

**CORRESPONDENT'S REFERENCE/DOCKET NO:**
PNS

**CORRESPONDENT E-MAIL ADDRESS:**
mgrace@gracelaw.com

## OFFICE ACTION

## STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW. A RESPONSE TRANSMITTED THROUGH THE TRADEMARK ELECTRONIC APPLICATION SYSTEM (TEAS) MUST BE RECEIVED BEFORE MIDNIGHT **EASTERN TIME** OF THE LAST DAY OF THE RESPONSE PERIOD.

**ISSUE/MAILING DATE: 5/15/2019**

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

**Summary of Issues**

- Section 2(d) Refusal—Likelihood of Confusion
- Disclaimer Required
- Color Claim and Mark Description Amendment Required

**Section 2(d) Refusal—Likelihood of Confusion**

Registration of the applied-for mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 1443606. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.* See the attached registration.

Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the services of the parties. *See* 15 U.S.C. §1052(d). Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors"). *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017). Only those factors that are "relevant and of record" need be considered. *M2 Software, Inc. v. M2 Commc'ns, Inc.* , 450 F.3d 1378, 1382, 78 USPQ2d 1944, 1947 (Fed. Cir. 2006) (citing *Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1241, 73 USPQ2d 1350, 1353 (Fed. Cir. 2004)); *see In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1744 (TTAB 2018).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis: (1) the similarities between the compared marks and (2) the relatedness of the compared services. *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP §1207.01.

***Comparison of the Marks***

Applicant's applied-for mark contains the literal element of PIC 'N' SAVE OUTLETS BARGAINS & CLOSEOUTS for "Retail store services featuring deeply discounted consumer goods."

Registrant's mark is PICK 'N SAVE for "Retail grocery store services."

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)); TMEP §1207.01(b).

Here, the proposed mark contains the literal element of PIC 'N' SAVE OUTLETS BARGAINS & CLOSEOUTS. The attached evidence from the *American Heritage Dictionary* shows that the terms "OUTLETS", "BARGAINS", and "CLOSEOUTS" are merely descriptive of applicant's services and as addressed below, must therefore be disclaimed. As such, the dominant element of applicant's applied-for mark is PIC 'N' SAVE, which is the phonetic equivalent of registrant's mark, PICK 'N SAVE.

Although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression. See In re Detroit Athletic Co., 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (citing In re Dixie Rests., 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)); TMEP §1207.01(b)(viii), (c)(ii). Matter that is descriptive of or generic for a party's services is typically less significant or less dominant in relation to other wording in a mark. See Anheuser-Busch, LLC v. Innvopak Sys. Pty Ltd., 115 USPQ2d 1816, 1824-25 (TTAB 2015) (citing In re Chatam Int'l Inc., 380 F.3d 1340, 1342-43, 71 USPQ2d 1944, 1946 (Fed. Cir. 2004)). Similarly, disclaimed matter that is descriptive of or generic for a party's services is typically less significant or less dominant when comparing marks. In re Detroit Athletic Co., 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (citing In re Dixie Rests., Inc., 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)); TMEP §1207.01(b)(viii), (c)(ii). Thus, consumers are likely to focus on the dominant word portions of the marks in this comparison, which is the legally identical wording of "PICK 'N SAVE."

Lastly, although the applicant's mark contains minor stylized elements, the dominant word portions of the marks are nearly identical in appearance, sound, connotation, and commercial impression; therefore, the addition of a design element does not obviate the similarity of the

marks in this case. *See In re Shell Oil Co.*, 992 F.2d 1204, 1206, 26 USPQ2d 1687, 1688 (Fed. Cir. 1993); TMEP §1207.01(c)(ii).

***Comparison of the Services***

The compared services need not be identical or even competitive to find a likelihood of confusion. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000); TMEP §1207.01(a)(i). They need only be "related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that services emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i).

Determining likelihood of confusion is based on the description of the services stated in the application and registration at issue, not on extrinsic evidence of actual use. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1307, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018) (citing *In re i.am.symbolic, llc*, 866 F.3d 1315, 1325, 123 USPQ2d 1744, 1749 (Fed. Cir. 2017)).

In this case, the application uses broad wording to describe "retail store services featuring deeply discounted consumer goods", which presumably encompasses all services of the type described, including some of registrant's "grocery store services." *See, e.g., In re Solid State Design Inc.*, 125 USPQ2d 1409, 1412-15 (TTAB 2018); *Sw. Mgmt., Inc. v. Ocinomled, Ltd.*, 115 USPQ2d 1007, 1025 (TTAB 2015). Thus, applicant's and registrant's services are legally identical. *See, e.g., In re i.am.symbolic, llc*, 127 USPQ2d 1627, 1629 (TTAB 2018) (citing *Tuxedo Monopoly, Inc. v.Gen. Mills Fun Grp., Inc.*, 648 F.2d 1335, 1336, 209 USPQ 986, 988 (C.C.P.A. 1981); *Inter IKEA Sys. B.V. v. Akea, LLC*, 110 USPQ2d 1734, 1745 (TTAB 2014); *Baseball Am. Inc. v. Powerplay Sports Ltd.*, 71 USPQ2d 1844, 1847 n.9 (TTAB 2004)).

Additionally, the services of the parties have no restrictions as to nature, type, channels of trade, or classes of purchasers and are "presumed to travel in the same channels of trade to the same class of purchasers." *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (quoting *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1268, 62 USPQ2d 1001, 1005 (Fed. Cir. 2002)). Thus, applicant's and registrant's services are related.

Because applicant's and registrant's marks are similar and the services are related, there is a likelihood of confusion and applicant's applied-for mark must be refused under Section 2(d) of the Lanham Act.

Although applicant's mark has been refused registration, applicant may respond to the refusal(s) by submitting evidence and arguments in support of registration. However, if applicant responds to the refusal(s), applicant must also respond to the requirement(s) set forth below.

**Disclaimer Required**

Applicant must provide a disclaimer of the unregistrable parts of the applied-for mark even though the mark as a whole appears to be registrable. *See* 15 U.S.C. §1056(a); TMEP §§1213, 1213.03(a). A disclaimer of an unregistrable part of a mark will not affect the mark's appearance. *See Schwarzkopf v. John H. Breck, Inc.*, 340 F.2d 978, 979-80, 144 USPQ 433, 433 (C.C.P.A. 1965).

In this case, applicant must disclaim the wording "OUTLETS" and "BARGAINS & CLOSE-OUTS" because it is not inherently distinctive. These unregistrable terms at best are merely descriptive of a characteristic or feature of applicant's services. *See* 15 U.S.C. §1052(e)(1); *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1251, 103 USPQ2d 1753, 1755 (Fed. Cir. 2012); TMEP §§1213, 1213.03(a).

The terms "OUTLETS" and "BARGAINS & CLOSE-OUTS" are descriptive for the applicant's services because they indicate a characteristic or feature of applicant's identified "retail store services featuring deeply discounted consumer goods." The attached evidence from the *American Heritage Dictionary* shows the word "OUTLET" means "a commercial market for goods or services"; "BARGAIN" means "something offered or acquired at a price advantageous to the buyer"; and "CLOSEOUT" means "a sale in which all remaining stock is disposed of, usually at greatly reduced prices." Thus, the wording merely describes applicant's services because they indicate that applicant provides retail store services featuring reduced price goods.

Applicant may respond to this issue by submitting a disclaimer in the following format:

> **No claim is made to the exclusive right to use "OUTLETS" and "BARGAINS & CLOSE-OUTS" apart from the mark as shown.**

For an overview of disclaimers and instructions on how to satisfy this issue using the Trademark Electronic Application System (TEAS), see the Disclaimer webpage.

**Color Claim and Mark Description Amendment Required**

Applicant must submit an amended description of the mark that agrees with the mark on the drawing. 37 C.F.R. §2.37; *see* TMEP §§808.01, 808.02. The current description is inconsistent with the mark on the drawing and thus is inaccurate. 37 C.F.R. §2.37; *see* TMEP §§808.01, 808.02. Descriptions must be accurate and identify only those literal and design elements appearing in the mark. *See* 37 C.F.R. §2.37; TMEP §§808.02, 808.03(d).

Applicant must also amend the color claim and description to accurately identify all the colors in the drawing of the mark. *See* 37 C.F.R. §2.52(b)(1); TMEP §807.07(a)-(a)(ii). The following color has been omitted from the description: black.

A complete color claim must reference all the colors appearing in the drawing of the mark. *See* 37 C.F.R. §2.52(b)(1); TMEP §§807.07(a) *et seq.* Similarly, a complete description of a mark depicted in color must specify where the colors appear in the literal and design elements of the mark. *See* 37 C.F.R. §§2.37, 2.52(b)(1); TMEP §§807.07(a) *et seq.* If black, white, and/or gray represent background, outlining, shading, and/or transparent areas and are not part of the mark, applicant must so specify in the description. *See* TMEP §807.07(d).

The following color claim and description are suggested, if accurate:

Color claim: " **The colors yellow, red, and black are claimed as a feature of the mark.**"

Description: " **The mark consists of the wording "PIC 'N' SAVE OUTLETS BARGAINS & CLOSE-OUTS" in black on a yellow rectangular background with a thin red line as a rectangular border.**"

**Assistance**

Please call or email the assigned trademark examining attorney with questions about this Office action. Although the trademark examining attorney cannot provide legal advice or statements about applicant's rights, the trademark examining attorney can provide applicant with additional explanation about the refusal(s) and/or requirement(s) in this Office action. *See* TMEP §§705.02, 709.06. Although the USPTO does not accept emails as responses to Office actions, emails can be used for informal communications and will be included in the application record. *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05.

**TEAS PLUS OR TEAS REDUCED FEE (TEAS RF) APPLICANTS – TO MAINTAIN LOWER FEE, ADDITIONAL REQUIREMENTS MUST BE MET, INCLUDING SUBMITTING DOCUMENTS ONLINE:** Applicants who filed their application online using the lower-fee TEAS Plus or TEAS RF application form must (1) file certain documents online using TEAS, including responses to Office actions (see TMEP §§819.02(b), 820.02(b) for a complete list of these documents); (2) maintain a valid e-mail correspondence address; and (3) agree to receive correspondence from the USPTO by e-mail throughout the prosecution of the application. *See* 37 C.F.R. §§2.22(b), 2.23(b); TMEP §§819, 820. TEAS Plus or TEAS RF applicants who do not meet these requirements must submit an additional processing fee of $125 per class of goods and/or services. 37 C.F.R. §§2.6(a)(1)(v), 2.22(c), 2.23(c); TMEP §§819.04, 820.04. However, in certain situations, TEAS Plus or TEAS RF applicants may respond to an Office action by authorizing an examiner's amendment by telephone or e-mail without incurring this additional fee.

/Catherine Caycedo/
Catherine Caycedo
Trademark Examining Attorney
Law Office 101
(571) 272-7066
Catherine.Caycedo@uspto.gov

**TO RESPOND TO THIS LETTER:** Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp. Please wait 48-72 hours from the issue/mailing date before using the Trademark Electronic Application System (TEAS), to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov. For questions about the Office action itself, please contact the assigned trademark examining attorney. **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/. Please keep a copy of the TSDR status screen. If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

**Print: May 14, 2019** **73430780**

**TYPED DRAWING**

**Serial Number**
73430780

**Status**
REGISTERED AND RENEWED

**Word Mark**
PICK 'N SAVE

**Standard Character Mark**
No

**Registration Number**
1443606

**Date Registered**
1987/06/16

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(1) TYPED DRAWING

**Owner**
ROUNDY'S SUPERMARKETS, INC. CORPORATION 875 EAST WISCONSIN AVENUE P. O. BOX 473 MILWAUKEE WISCONSIN 532010473

**Goods/Services**
Class Status -- ACTIVE. IC 042. US 101. G & S: Retail Grocery Store Services. First Use: 1957/02/02. First Use In Commerce: 1957/02/02.

**Concurrent Use Statement**
SUBJECT TO CONCURRENT USE PROCEEDING WITH NATIONAL MERCHANDISE CO.. APPLICANT CLAIMS EXCLUSIVE USE FOR THE ENTIRE COUNTRY EXCEPT FOR THE STATES OF FLORIDA, GEORGIA, NORTH CAROLINA, SOUTH CAROLINA, VIRGINIA, ALABAMA, MISSISSIPPI, LOUISIANA AND TEXAS.

**Prior Registration(s)**
1049869

**Filing Date**
1983/06/17

**Examining Attorney**

**Print: May 14, 2019** **73430780**

UNKNOWN

**Attorney of Record**
Richard L. Kirkpatrick

The American Heritage® dictionary of the English Language

Search

**HOW TO USE THE DICTIONARY**

To look up an entry in *The American Heritage Dictionary of the English Language*, use the search window above. For best results, after typing in the word, click on the "Search" button instead of using the "enter" key.

Some compound words (like *bus rapid transit, dog whistle*, or *identity theft*) don't appear on the drop-down list when you type them in the search bar. For best results with compound words, place a quotation mark before the compound word in the search window.

GUIDE TO THE DICTIONARY

**close·out** (klōz out′)

Share: Tweet

n.

A sale in which all remaining stock is disposed of, usually at greatly reduced prices.

The American Heritage® Dictionary of the English Language, Fifth Edition copyright ©2019 by Houghton Mifflin Harcourt Publishing Company. All rights reserved.

## Indo-European & Semitic Roots Appendices

Thousands of entries in the dictionary include etymologies that trace their origins back to reconstructed proto-languages. You can obtain more information about these forms in our online appendices:

Indo-European Roots

Semitic Roots

The Indo-European appendix covers nearly half of the Indo-European roots that have left their mark on English words. A more complete treatment of Indo-European roots and the English words derived from them is available in our Dictionary of Indo-European Roots.

**AMERICAN HERITAGE DICTIONARY APP**

The new American Heritage Dictionary app is now available for iOS and Android.

**THE AMERICAN HERITAGE DICTIONARY BLOG**

The articles in our blog examine new words, revised definitions, interesting images from the fifth edition, discussions of usage, and more.

THE USAGE PANEL

The Usage Panel is a group of nearly 200 prominent scholars, creative writers, journalists, diplomats, and others in occupations requiring mastery of language. Annual surveys have gauged the acceptability of particular usages and grammatical constructions.

THE PANELISTS

NEED HELP SOLVING A CROSSWORD PUZZLE?

Go to our Crossword Puzzle Solver and type in the letters that you know, and the Solver will produce a list of possible solutions.

THE 100 WORDS®

See word lists from the best-selling 100 Words Series!

FIND OUT MORE!

INTERESTED IN DICTIONARIES?

Check out the Dictionary Society of North America at http://www.dictionarysociety.com

This website is best viewed in Chrome, Firefox, Microsoft Edge, or Safari. Some characters in pronunciations and etymologies cannot be displayed properly in Internet Explorer.

Home | About Us | Careers | Contact Us | FAQs

Houghton Mifflin Harcourt

Privacy Policy | Terms & Conditions of Use

The *You Are Your Words* word cloud generator is no longer available.

Copyright 2019 Houghton Mifflin Harcourt. All rights reserved.

The AMERICAN HERITAGE® dictionary of the English Language

Search

**bar·gain** (bär gĭn)

Share: Tweet

n.

**1.** An agreement between parties fixing obligations that each promises to carry out. See Synonyms at **agreement**.

**2.**

**a.** An agreement establishing the terms of a sale or exchange of goods or services: reached a bargain with the antique dealer over the lamp.

**b.** Property acquired or services rendered as a result of such an agreement.

**3.** Something offered or acquired at a price advantageous to the buyer: That silk dress is a bargain at that price.

v. **bar·gained**, **bar·gain·ing**, **bar·gains**

v.intr.

**1.** To negotiate the terms of an agreement, as to sell or exchange.

**2.** To engage in collective bargaining.

**3.** To arrive at an agreement.

v.tr.

To exchange; trade: bargained my watch for a meal.

***Phrasal Verb:***

***bargain for (or on)***

To count on; expect: *"I never bargained for this tearing feeling inside me" (Anne Tyler).*

**HOW TO USE THE DICTIONARY**

To look up an entry in *The American Heritage Dictionary of the English Language*, use the search window above. For best results, after typing in the word, click on the "Search" button instead of using the "enter" key.

Some compound words (like *bus rapid transit, dog whistle*, or *identity theft*) don't appear on the drop-down list when you type them in the search bar. For best results with compound words, place a quotation mark before the compound word in the search window.

GUIDE TO THE DICTIONARY

**AMERICAN HERITAGE DICTIONARY APP**

The new American Heritage Dictionary app is now available for iOS and Android.

**THE AMERICAN HERITAGE DICTIONARY BLOG**

The articles in our blog examine new words, revised definitions, interesting images from the fifth edition, discussions of usage, and more.

***Idiom:***
**into/in the bargain**
Over and above what is expected; in addition.

[Middle English, from Old French bargaigne, haggling, from bargaignier, to haggle, of Germanic origin; see **bhergh-**[1] in the Appendix of Indo-European roots.]

**bar gain·er** *n.*

The American Heritage® Dictionary of the English Language, Fifth Edition copyright ©2019 by Houghton Mifflin Harcourt Publishing Company. All rights reserved.

## Indo-European & Semitic Roots Appendices

Thousands of entries in the dictionary include etymologies that trace their origins back to reconstructed proto-languages. You can obtain more information about these forms in our online appendices:

**Indo-European Roots**

**Semitic Roots**

The Indo-European appendix covers nearly half of the Indo-European roots that have left their mark on English words. A more complete treatment of Indo-European roots and the English words derived from them is available in our **Dictionary of Indo-European Roots**.

### THE USAGE PANEL

The Usage Panel is a group of nearly 200 prominent scholars, creative writers, journalists, diplomats, and others in occupations requiring mastery of language. Annual surveys have gauged the acceptability of particular usages and grammatical constructions.

THE PANELISTS

### NEED HELP SOLVING A CROSSWORD PUZZLE?

Go to our Crossword Puzzle Solver and type in the letters that you know, and the Solver will produce a list of possible solutions.

### THE 100 WORDS®

See word lists from the best-selling 100 Words Series!

FIND OUT MORE!

### INTERESTED IN DICTIONARIES?

Check out the Dictionary Society of North America at http://www.dictionarysociety.com

This website is best viewed in Chrome, Firefox, Microsoft Edge, or Safari. Some characters in pronunciations and etymologies cannot be displayed properly in Internet Explorer.



The *You Are Your Words* word cloud generator is no longer available.

Copyright 2019 Houghton Mifflin Harcourt. All rights reserved.

https://ahdictionary.com/word/search.html?q=outlets 05/14/2019 12:17:06 PM

The AMERICAN HERITAGE® dictionary of the English Language

Search

**HOW TO USE THE DICTIONARY**

To look up an entry in *The American Heritage Dictionary of the English Language*, use the search window above. For best results, after typing in the word, click on the "Search" button instead of using the "enter" key.

Some compound words (like *bus rapid transit, dog whistle*, or *identity theft*) don't appear on the drop-down list when you type them in the search bar. For best results with compound words, place a quotation mark before the compound word in the search window.

GUIDE TO THE DICTIONARY

**out·let** (out lĕt′, -lĭt)

Share: Tweet

n.

**1.**
**a.** A passage for escape or exit; a vent.
**b.** A means of release or gratification, as for energies, drives, or desires: exercised as an outlet for frustration.

**2.**
**a.** A stream that flows out of a lake or pond.
**b.** The point where a stream flows out of a lake or pond.
**c.** The mouth of a river where it flows into a larger body of water.
**d.** The point of intersection of a driveway and a road, especially in a rural area.

**3.**
**a.** A commercial market for goods or services.
**b.** A store that sells the goods of a particular manufacturer or wholesaler.

**4.** A receptacle, especially one mounted in a wall, that is connected to a power supply and equipped with a socket for a plug.

The American Heritage® Dictionary of the English Language, Fifth Edition copyright ©2019 by Houghton Mifflin Harcourt Publishing Company. All rights reserved.

**AMERICAN HERITAGE DICTIONARY APP**

The new American Heritage Dictionary app is now available for iOS and Android.

**THE AMERICAN HERITAGE DICTIONARY BLOG**

The articles in our blog examine new words, revised definitions, interesting images from the fifth edition, discussions of usage, and more.

### THE USAGE PANEL

The Usage Panel is a group of nearly 200 prominent scholars, creative writers, journalists, diplomats, and others in occupations requiring mastery of language. Annual surveys have gauged the acceptability of particular usages and grammatical constructions.

THE PANELISTS

### NEED HELP SOLVING A CROSSWORD PUZZLE?

Go to our Crossword Puzzle Solver and type in the letters that you know, and the Solver will produce a list of possible solutions.

## Indo-European & Semitic Roots Appendices

Thousands of entries in the dictionary include etymologies that trace their origins back to reconstructed proto-languages. You can obtain more information about these forms in our online appendices:

**Indo-European Roots**

**Semitic Roots**

The Indo-European appendix covers nearly half of the Indo-European roots that have left their mark on English words. A more complete treatment of Indo-European roots and the English words derived from them is available in our **Dictionary of Indo-European Roots**.

### THE 100 WORDS®

See word lists from the best-selling 100 Words Series!

FIND OUT MORE!

### INTERESTED IN DICTIONARIES?

Check out the Dictionary Society of North America at http://www.dictionarysociety.com

This website is best viewed in Chrome, Firefox, Microsoft Edge, or Safari. Some characters in pronunciations and etymologies cannot be displayed properly in Internet Explorer.

Home | About Us | Careers | Contact Us | FAQs

Houghton Mifflin Harcourt

Privacy Policy | Terms & Conditions of Use

The *You Are Your Words* word cloud generator is no longer available.

Copyright 2019 Houghton Mifflin Harcourt. All rights reserved.

| | |
|---|---|
| **To:** | The Re-Marketing Group, Inc. (mgrace@gracelaw.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 88325180 - PIC 'N SAVE OUTLETS BARGAINS & - PNS |
| **Sent:** | 5/15/2019 4:47:50 PM |
| **Sent As:** | ECOM101@USPTO.GOV |
| **Attachments:** | |

**UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)**

# IMPORTANT NOTICE REGARDING YOUR U.S. TRADEMARK APPLICATION

USPTO OFFICE ACTION (OFFICIAL LETTER) HAS ISSUED
ON **5/15/2019** FOR U.S. APPLICATION SERIAL NO. 88325180

Please follow the instructions below:

**(1) TO READ THE LETTER:** Click on this link or go to http://tsdr.uspto.gov, enter the U.S. application serial number, and click on "Documents."

The Office action may not be immediately viewable, to allow for necessary system updates of the application, but will be available within 24 hours of this e-mail notification.

**(2) TIMELY RESPONSE IS REQUIRED:** Please carefully review the Office action to determine (1) how to respond, and (2) the applicable response time period. Your response deadline will be calculated from **5/15/2019** (*or sooner if specified in the Office action*). A response transmitted through the Trademark Electronic Application System (TEAS) must be received before midnight **Eastern Time** of the last day of the response period. For information regarding response time periods, see http://www.uspto.gov/trademarks/process/status/responsetime.jsp.

**Do NOT hit "Reply" to this e-mail notification, or otherwise e-mail your response** because the USPTO does NOT accept e-mails as responses to Office actions. Instead, the USPTO recommends that you respond online using the TEAS response form located at http://www.uspto.gov/trademarks/teas/response_forms.jsp.

**(3) QUESTIONS:** For questions about the contents of the Office action itself, please contact the assigned trademark examining attorney. For *technical* assistance in accessing or viewing the Office action in the Trademark Status and Document Retrieval (TSDR) system, please e-mail TSDR@uspto.gov.

## WARNING

**Failure to file the required response by the applicable response deadline will result in the ABANDONMENT of your application.** For more information regarding abandonment, see http://www.uspto.gov/trademarks/basics/abandon.jsp**.**

**PRIVATE COMPANY SOLICITATIONS REGARDING YOUR APPLICATION:** Private companies **not** associated with the USPTO are using information provided in trademark applications to mail or e-mail trademark-related solicitations. These companies often use names that closely resemble the USPTO and their solicitations may look like an official government document. Many solicitations require that you pay "fees."

Please carefully review all correspondence you receive regarding this application to make sure that you are responding to an official document from the USPTO rather than a private company solicitation. All official USPTO correspondence will be mailed only from the "United States Patent and Trademark Office" in Alexandria, VA; or sent by e-mail from the domain "@uspto.gov." For more information on how to handle private company solicitations, see http://www.uspto.gov/trademarks/solicitation_warnings.jsp.