UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
REDACTED
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09505-CAS-AFMx | Date | November 9, 2021 |
| Title | RE-MARKETING GROUP, INC. V. MARK MILLER, ET AL. | | |

| | | |
|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | |
| D. Rojas for Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 46, filed October 04, 2021)

## I. INTRODUCTION

On October 16, 2020, plaintiff Re-Marketing Group, Inc. ("RMG") filed this action against defendants Mark Miller ("Miller") and WOW Bargains & Closeouts, Inc. ("WOW") (collectively, the "WOW Parties"). Dkt. 1 ("Compl."). RMG alleges that defendants infringed a group of unregistered trademarks related to the "Pic 'N' Save Outlets Bargains & Closeouts" brand (the "PNS Marks") following the dissolution of a potential joint venture between the parties that was intended to license the PNC marks. RMG's complaint alleges the following claims for relief: (1) trademark infringement pursuant to 15 U.S.C § 1125 ("the Lanham Act"); (2) California common law trademark infringement; (3) unfair competition pursuant to the Lanham Act; (4) California common law unfair competition; (5) unfair competition in violation of California Business and Professions Code § 17200, et. seq. ("UCL"); and (6) malicious prosecution. Id.

On December 18, 2020, the WOW Parties filed an answer to RMG's complaint. Dkt. 12 ("Answer"). The WOW Parties asserted eleven affirmative defenses and defendant WOW asserted five counterclaims against RMG and Gregory D. Sherwin ("Sherwin") (collectively, the "RMG Parties"): (1) trademark infringement pursuant to the Lanham Act (against all counterclaim defendants); (2) unfair competition pursuant to the Lanham Act (against RMG); (3) unfair competition in violation of the UCL (against RMG); (4) California common law unfair competition (against RMG); and (5) cancellation of

California Trademark Registration pursuant to Cal. Bus. & Prof. Code § 14230 (against RMG). Id.

On January 29, 2021, the RMG Parties moved to dismiss the counterclaim. Dkt. 20. On February 25, 2021, the Court denied the RMG Parties' motion to dismiss in its entirety. Dkt. 28.

On October 4, 2021, the WOW Parties filed a motion for partial summary judgment and dismissal with prejudice of Claims 1 through 6 of RMG's complaint, and for cancellation of RMG's California state trademark registration pursuant to WOW's Fifth Counterclaim. Dkt 46-1 ("Mot."). The WOW Parties also filed a request for judicial notice (Dkt. 46-2 ("WOW RJN")) and a statement of uncontroverted facts (Dkt. 47 ("WOW UF")). On October 15, 2021, RMG submitted its opposition to the WOW Parties' motion for partial summary judgment. Dkt. 55 ("Opp."). RMG also submitted a request for judicial notice (Dkt. 55-1 ("RMG RJN")), responses to the WOW Parties' statement of uncontroverted facts (Dkt. 56 at 2-62 ("WOW UF Opp.")), and a statement of additional uncontroverted material facts (Dkt. 56 at 63-78 ("RMG UF")). On October 25, 2021, the WOW Parties submitted their reply (Dkt. 64 ("Reply")), a response in support of their statement of uncontroverted facts (Dkt. 64-1 at 2-123 ("WOW UF REPLY")), a response to RMG's statement of additional uncontroverted material facts ("RMG UF Opp."), and an additional request for judicial notice (Dkt. 64-7 ("WOW RJN No. 2")).

The Court held a hearing on November 8, 2021. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.[1]

### A. The Parties

RMG is a California corporation with its principal place of business in Commerce, California. Compl. ¶ 1. RMG specializes in buying and remarking underused or unused assets on the wholesale and secondary markets. RMG UF No. 2. Although RMG's primary business operations focus on wholesale, RMG has also operated various retail outlets since 2013. Id. Gregory Sherwin is RMG's principal, and has served as RMG's CEO and President since 2007. Id. No. 1. RMG currently operates a store branded with the PNS Marks in Ontario, California. WOW UF No. 217; RMG UF Nos. 60-61.

WOW is a California corporation with its principal place of business in the Central District of California. Counterclaim ¶ 4. WOW operates a store branded with the PNS Marks in Anaheim, California, and intends to open additional stores in Southern California in the coming years. WOW UF Nos. 209, 215-216. Mark Miller is the Chairman, CEO and President of WOW. Dkt. 48 (Declaration of Mark J. Miller ("Miller Decl.")) ¶ 1.

[1] The parties assert numerous evidentiary objections to each other's evidence, including that it is irrelevant, that it is hearsay, or that certain declaration testimony contradicts prior deposition testimony. See Dkts. 55-3 (Evid. Objs. to Bleeker Decl.), 55-5 (Evid. Objs. to Miller Decl.), 64-4 (Reply to Evid. Objs. to Bleeker Decl.), 64-5 (Reply to Evid. Objs. to Miller Decl., 64-6 (Evid. Objs. to Decls. of M.A. Lazo, M. Lazo, C. Lopez, J. Masters, and J. Notrica), 67 (Evid. Objs. to Bleeker Reply Decl.), 68 (Evid. Objs. to Miller Reply Decl.). "In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." Capitol Records, LLC v. BlueBeat, Inc., 765 F. Supp. 2d 1198, 1200 (C.D. Cal. 2010). To the extent that the Court relies on objected-to evidence, it has considered and **OVERRULED** the applicable evidentiary objections because the objected-to-evidence is relevant and admissible. Evidence not considered by the Court is not addressed.

**B. Background Regarding Relevant Trademark Registrations and Applications**

Roundy's Inc., a Wisconsin Corporation, is the current owner U.S. Registration No. 1,443,606, for the service mark "Pick 'N' Save," which was first used in commerce in 1957, and is registered in connection with "Retail Grocery Store Services." Dkt. 64-8 (WOW RJN No. 2, Ex. 12). The registration was renewed on July 17, 2019, and is currently listed as "live." Id. In 1987, the United States Patent and Trademark Office ("USPTO") granted U.S. Registration No. 1,446,869 to National Merchandise Company, Inc., a Florida company, for the trademark "Pic 'N' Save," in connection with "Retail Grocery Store Services" and "Distributorship Services In The Field of Groceries." Dkt. 55-2 (RMG RJN, Exs. 2-3). U.S. Registration No. 1,446,869 was cancelled in 2008 due to a the owner's failure to file an affidavit of continuing use. Id., Ex. 3.

In 2012, RMG filed a trademark application with the USPTO for the use of a service mark titled "PIC 'N' SAVE Baragins.Closeouts." Dkt. 55-2 (RMG RJN, Ex. 1). The USPTO issued an Office Action challenging the application based on a likelihood of confusion with the service mark "Pick 'N' Save" in U.S. Registration No. 1,443,606, and RMG thereafter ceased its pursuit of the trademark application. RMG UF Nos. 5-7; Dkt. 46-3 (WOW RJN, Ex. 4). Even though Sherwin ceased his pursuit of federal trademark registration for the PNS Marks following the USPTO's Office Action, he continued to develop proof of concept for a discount retail store. RMG UF No. 5.

**C. The Parties Begin Discussions; Miller Commissions a Logo**

In 2018, Miller and Sherwin began discussions regarding the possibility of opening stores that would use a new version of the "Pic 'N' Save" trademark used in the western United States by the now defunct "Pic 'N' Save" retail chain between 1950 and 2002. WOW UF Nos. 4, 20; RMG UF Nos. 15-17. Miller was an executive at the original "Pic 'N' Save" Corporation from 1988 through its closure in 2002, although the parties disagree regarding Miller's role at the original "Pic 'N' Save" Corporation, including whether he was the President. See WOW UF No. 1; RMG UF No. 14.

The Parties dispute whether Sherwin and Miller ever agreed to form a new company, which would be jointly owned by Sherwin and Miller, for the purpose of operating the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09505-CAS-AFMx | Date | November 9, 2021 |
| Title | RE-MARKETING GROUP, INC. V. MARK MILLER, ET AL. | | |

proposed "Pic 'N' Save" ("PNS") retail operation. See RMG UF No. 17; RMG UF Opp. No. 17; WOW UF Nos. 39-42; WOW UF Opp. Nos. 39-42. In any event, it is undisputed that the terms of the joint venture between Sherwin and Miller, if any, were never finalized in a written agreement. WOW UF No. 42; WOW UF Opp. No. 42.

In February 2018, Miller commissioned a design firm to create a group of "Pic 'N' Save Outlets Bargains & Closeouts" logos, including the design reproduced below:

PNC Square Artwork




WOW UF Nos. 43, 46; see also Dkt. 48-1 (Miller Decl., Ex. 11). On September 18, 2019, the design firm purported to assign the exclusive copyright rights to the four logos it created to WOW.[2] Dkt. 48-1 (Miller Decl., Ex. 12). There was also an assignment of copyright to RMG prepared. RMG UF No. 26; RMG UF Opp. No. 26. However, while the assignment of copyright to WOW was signed and executed, the assignment of copyright to RMG is unsigned. See Dkt. 48-1 (Miller Decl., Ex. 12); Dkt. 55-9 (Declaration of Greg Sherwin ("Sherwin Decl."), Ex. 14). In any event, RMG

[2] RMG contends this assignment created no protectable copyrights because the design firm copied the logo design for the PNS mark from the one previously used by the former operator of PNS stores. WOW UF Opp. No. 47.

contends this distinction is irrelevant because "the logo was created as part of the parties' joint venture." WOW UF Opp. No. 129.

### D. RMG's Failed Application for Federal Trademark Protection

On March 4, 2019, while Sherwin and Miller were working together cooperatively, a trademark attorney filed an intent-to-use trademark application for "PIC'N'SAVE OUTLETS BARGAINS & CLOSE-OUTS" on behalf of RMG. WOW UF No. 65. At the time, the Sherwin and Miller had not yet established the corporation that was intended to ultimately own the PNS marks and logos. Id. No. 52. Accordingly, the parties understood that the intent-to-use application would be filed in RMG's name and eventually licensed to the not-yet-created corporation. Id. Nos. 67, 68. On July 10, 2020, the USPTO issued an office action rejecting the application based on the likelihood of confusion with Roundy's Inc.'s U.S. Registration No. 1,433,606 for the service mark "Pick 'N' Save." Id. No. 124. RMG failed to respond to the USPTO's office action within the six-month response period, and on January 21, 2021, RMG's federal in-to-use application for "PIC'N'SAVE OUTLETS BARGAINS & CLOSE-OUTS" was deemed abandoned by the USPTO. Id. No. 125.

### E. The Formation of WOW and the Dissolution of Sherwin and Miller's Relationship

On April 18, 2019, Miller changed the name of his prior company, Dynamic Candles Collections, Inc. ("Dynamic Candle"), into a new business named WOW Bargains & Closeouts, Inc.[3] WOW UF No. 75; RMG UF Nos. 29-31. Miller became the CEO of

[3] RMG contends that part of the reason Miller chose to change Dynamic Candle into WOW instead of creating a new entity is that a third-party named Punit Gyanendra accused Miller of infringing on his trademark rights through Dynamic Candle. RMG UF No. 32. While WOW disputes this (RMG UF Opp. No. 32), Miller testified at deposition that he knew had to change the name of Dynamic Candle because "that was someone else's trademark." Dkt. 58-2 (Declaration of RMG attorney Gabriel G. Green ("Green Decl."), Ex. 2 at 160-165).

WOW, whereas Sherwin has never been an employee, officer, or director of WOW.[4] WOW UF Nos. 76, 83. Other than Miller, only monetary investors were granted equity in WOW. WOW UF No. 98; WOW UF Opp. No 98. While Sherwin never invested any money into WOW, RMG contends Sherwin did invest "sweat equity" into the purported joint venture, and Sherwin testified at deposition that he did not invest in WOW in part because he was never asked to invest in WOW. WOW UF Opp. Nos. 84, 103-106. Notwithstanding his "sweat equity," Sherwin was left out of the WOW entirely. RMG UF No. 44. Miller received a seventy percent equity interest in WOW, although the parties dispute whether Miller invested in WOW. WOW UF No. 102; RMG UF No. 45; RMG UF Opp. No. 45.

In and around August 2019, WOW used office space at RMG's offices in Commerce, California, free of charge, and began displaying temporary signage outside the space that incorporated the PNS Marks. RMG UF. No 36; WOW UF No. 92. The parties disagree as to whether a lease for WOW's use of RMG's office space in Commerce was ever agreed to or formally executed.[5] WOW UF Nos. 111-112; WOW UF Opp. Nos. 111-112. The unsigned lease for the office space "included a provision which stated that the space would be utilized for 'WOW Bargains & Closeouts, Inc. dba Pic 'N' Save Outlets.'" RMG UF Nos. 38.

In August 2019, Sherwin sent an email to Miller requesting a meeting to discuss their roles in the purported joint venture. RMG UF No. 39. This meeting occurred on or around September 30, 2019. RMG UF No. 41. At the meeting, Sherwin expressed a desire to obtain 15% equity in WOW.[6] Id. No. 44. However, Miller informed Sherwin that the

[4] Prior to the creation of WOW, in email communications with third parties regarding the PNS venture, Miller referred to Sherwin as his "partner in this project" and as a "partner in this deal." Dkt. 55-9 (Sherwin Decl., Ex. 16); Dkt. 55-10 (Sherwin Decl., Ex. 17).
[5] The version of the lease that the WOW Parties contend is the "final version" is unsigned. See Dkt 48-2 (Miller Decl., Ex. 26).
[6] At deposition, Sherwin testified that the 15 percent equity was agreed upon from "day one." Dkt. 46-5 (Bleeker Decl., Ex. 1). Sherwin stated that "it doesn't have to be a written contract between friends to be a deal . . . I assumed both of us were in the best interest of each other." Id.

only way to receive equity in WOW was to invest, that he would not be awarded any "sweat" equity. Id. In response, Sherwin stated that RMG owned the rights to use the PNS marks, that he would utilize those marks if he did not receive equity in WOW, and that he was willing to go to Court to enforce RMG's rights in the PNS marks. Id. No. 46. The day after the meeting, Miller sent Sherwin a handwritten note where he apologized for "over-reacting" to Sherwin's statement that he was "not afraid of Court." Id. No. 47; see also Dkt. 55-10 (Sherwin Decl., Ex. 22). At deposition, Sherwin testified that he decided not to license the PNS Marks to the WOW Parties "when [he] found out that [he] wasn't going to get the equity that [the parties] had agreed upon." Dkt. 46-5 (Bleeker Decl., Ex. 1).

Shortly after the meeting, WOW left the office space they were leasing from RMG, though in accordance with a sixty-day notice provision in the parties' unsigned lease agreement, WOW paid rent through December 22, 2019 for the office space. RMG UF Nos. 49-50; RMG UF Opp. Nos. 49-50; WOW UF No. 122; WOW UF Opp. No. 122. The parties dispute whether a signboard at the Commerce office space featuring the PNS Marks was "abandoned" by WOW or "stolen" by RMG. RMG UF Nos. 49-50; RMG UF Opp. Nos. 49-50. In November 2019, WOW moved its business offices to a location in Vernon, California. WOW UF No. 120.

**F. The Parties' Retail Stores**

In November 2019, RMG opened a pop-up retail store (the "RMG Pop-Up") using the PNS Marks. RMG UF No. 52. The RMG Pop-Up was open intermittently between November or December of 2019 until March or April 2020. Id.; RMG UF Opp. No. 52. RMG did not regularly keep its cash register receipt tapes for its sales at the RMG Pop-Up. WOW UF No. 151. Those that were kept indicate that all sales at the RMG Pop-Up were cash sales, and that RMG did not charge any sales tax to its customers for those sales. Id. Nos. 153-155. RMG has produced cash register receipts showing sales at the RMG Pop-Up that date back to December 2019. Id. No 156. However, RMG did not determine the total volume of sales generated by the RMG Pop-Up. Id. No. 160.

To advertise the RMG Pop-Up, in December 2019, Sherwin and RMG distributed approximately 1,000 flyers featuring the PNS Marks in the local community. RMG UF

No. 55; RMG UF Opp. No. 55. The RMG Parties also hung banners featuring the PNS marks in the neighborhood near the store's location and featured the "abandoned"/"stolen" PNS signage inside the store. RMG UF Nos. 52, 54. The WOW Parties contend that "[t]he only signage inside the [RMG Pop-Up]" was the signboard that WOW left at RMG's office space:




RMG UF Opp. No 52; WOW UF No. 145; see also Dkt. 46-6 (Bleeker Decl, Ex. 9) at RMG_000002. RMG also used a "holiday warehouse sale" sign that includes a PNS Mark in December 2019. WOW UF No. 146. All of the items sold at the RMG Pop-Up were "salvaged" goods. Id. No. 168.

In November 2020, the RMG Parties opened a location in Ontario, California (the "RMG Ontario Store") that features signage that utilizes the PNS Marks, and is advertised through online advertisements and direct mailings that incorporate the PNS Marks. RMG UF Nos. 59-61. The RMG Ontario Store was originally scheduled to open in July 2020, but was delayed due to COVID-19. Id. No. 59. The exterior of the RMG Ontario Store and associated promotional materials display the below "Pic 'N' Save Outlets Bargains & Close-Outs" branding:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09505-CAS-AFMx | Date | November 9, 2021 |
| Title | RE-MARKETING GROUP, INC. V. MARK MILLER, ET AL. | | |







See Dkt. 55-11 (Sherwin Decl., Exs. 29-33).

WOW began taking steps to open retail outlets using the PNS Marks in the summer of 2019, including by searching for retail space and using the PNS Marks on business materials. WOW UF Nos. 87-88, 91. RMG contends that, during the summer of 2019, as WOW was taking these initial steps, Sherwin was still involved in decisions being made on behalf of the purported joint venture. WOW UF Opp. No. 91.

In June 2020, WOW entered into a lease agreement for retail space at the Anaheim Towne Center in Anaheim, CA. WOW UF No. 205. On November 12, 2020, WOW opened its "Pic 'N' Save Bargains" store in Anaheim (the "WOW Anaheim Store"), using the "Pic 'N' Save Bargains" mark on store signage, grocery bags, and its website. WOW UF Nos. 207, 209. From November 12, 2020 through August 31, 2021, the WOW Anaheim Store has had sales totaling close to [redacted]. WOW UF No. 213. WOW also contends that, prior to opening the WOW Anaheim Store, WOW made an additional [redacted] in sales associated with the PNS Marks from its business offices in Vernon (although the timing of the sales is unclear). Id. No. 214. The WOW Anaheim Store uses

the below "Pic 'N' Save Bargains" logo, which is slightly different from the logo RMG uses at the RMG Ontario Store:

See Dkt. 48-3 (Miller Decl., Ex. 32).

**G. RMG's California State Trademark Registration**

On March 5, 2020, RMG filed a trademark application with the California Secretary of State for the mark "PIC 'N' SAVE OUTLETS BARGAINS & CLOSEOUTS" in connection with "retail store services featuring deeply discounted consumer goods." WOW UF No. 175; RMG UF No. 58. The only specimen of use RMG submitted with its California trademark application was the flyer RMG used in conjunction with the RMG Pop-Up. WOW UF No. 177. The trademark image that RMG submitted to the California Secretary of State in March 2020 was the same one that RMG submitted to the USPTO in March 2019 in connection with RMG's failed federal intent-to-use trademark application. WOW UF No. 184; WOW UF Opp. No. 184. In its March 5, 2020 California trademark application, RMG did not disclose its previous USPTO applications, even though the official form submitted to the California Secretary of State asks each application to identify "U.S. Patent and Trademark Information" including "File Date", Serial/File Number"; "Status of Application"; and "If Refused, Why?" WOW UF Nos. 179, 185. Sherwin has stated that he provided his trademark attorney with information regarding RMG's prior applications to the USPTO, and that he left it to her "to ensure that the application was treated appropriately." Dkt. 55-7 (Sherwin Decl.) ¶ 73.

Around March 20, 2020, WOW filed four California trademark applications for the mark "Pic 'N' Save Bargains." RMG UF No. 62. At deposition, Miller testified that WOW applied for the California registrations even though it knew that RMG already had a registration associated with the PNS Marks. Dkt. 58-2 (Green Decl., Ex. 2) at 72-73.

### H. Litigation

On or around June 18, 2020, RMG sent a cease-and-desist letter to the WOW Parties demanding that they stop using the PNS Marks. RMG UF No. 69; RMG UF Opp. No. 69. On June 19, 2020, WOW filed suit in the United States District Court for the Central District of California, Case No. 8:20-cv-01090-DOC-KES, against Sherwin and RMG, bringing claims of, inter alia, trademark infringement and copyright infringement. WOW UF No. 189; RMG UF No. 70. On September 16, 2020, Sherwin and Miller attended a mediation in front of the Hon. James L. Smith (Ret.). WOW UF No. 202. The case did not settle. Id. On September 22, 2020, WOW voluntarily dismissed its lawsuit without prejudice. Id. No. 203. On October 16, 2020, RMG filed the lawsuit currently before this Court. RMG UF No. 80.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out "specific facts showing a genuine issue for trial" in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter

of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

### A. Requests for Judicial Notice

Federal Rule of Evidence 201 empowers a court to take judicial notice of facts that are either "(1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); see also Mullis v. U. S. Bankr. Court for Dist. of Nevada, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987).

Here, the parties have filed unopposed requests for the the Court take judicial notice of applications and registrations associated with the USPTO and the California trademark office, filings from the parties' previous litigation, website printouts, and documents from government agencies. Specifically, the WOW Parties request that the Court judicially notice: (1) U.S. Registration No. 1,443,606, dated June 16, 1987, (2) a website printout from https://www.roundys.com, (3) a website printout from https://www.picnsav.com/mystore/ store-locator, (4) a USPTO Office Action, dated July 23, 2012, regarding U.S. Trademark Application Serial No. 85590566, (5) a website printout from http://rmgdeals.com, (6) the Articles of Incorporation for Dynamic Candle Collections, Inc., filed with the California Secretary of State on April 18, 2019, (7) the Final Office Action, dated July 10, 2020, regarding U.S. Trademark Application Serial No. 88325180, (8) a USPTO Notice of Abandonment, dated January 21, 2021, for U.S. Trademark Application Serial No. 88325180, (9) a California Trademark/Service Mark Application, dated March 5, 2020, filed with the California Secretary of State by RMG on March 5, 2020 for "PIC 'N' SAVE OUTLETS BARGAINS & CLOSEOUTS," (10)

WOW's Notice of Voluntary Dismissal Without Prejudice, filed September 22, 2020 by WOW in Case No. 8:20-cv-01090-DOC-KES (the "Previous Litigation"), (11) a printout from Google Play's website for android developers, (12) a Trademark Electronic Search System (TESS) printout from the USPTO for the word mark PICK 'N SAVE, Registration No. 1443606, and (13) a USPTO Office Action, dated May 15, 2019, regarding U.S. Trademark Application Serial No. 88325180. See WOW RJN; WOW RJN No. 2. For its part, RMG requests that the Court judicially notice: (1) RMG's 2012 U.S. Trademark Application, Serial No. 85590566, (2) U.S. Registration No. 1,446,869, dated July 7, 1987, (3) a printout from the USPTO online database related to U.S. Trademark Registration No. 1,446,869, (4) WOW's complaint, filed June 19, 2020, in the Previous Litigation, (5) the RMG Parties' notice of motion and motion to dismiss, filed on July 29, 2020, in the Previous Litigation, (6) the RMG Parties' memorandum in support of their motion to dismiss, filed on July 29, 2020, in the Previous Litigation, (7) a printout from the website for the California Department of Tax and Fee Administration, (8) the Court's order on WOW's Notice of Voluntary Dismissal Without Prejudice, filed on September 23, 2020, in the Previous Litigation, (9) U.S. Registration No. 1,049,836, dated October 5, 1976, and (10) U.S. Registration No. 861,815, dated December 10, 1968. See RMG RJN.

The Court finds that judicial notice of the various materials from the USPTO and California Secretary of State, and the documents from governmental websites, is warranted. See Champion Courage Ltd. v. Fighter's Mkt., Inc., No. 17-CV-01855-AJB-BGS, 2018 WL 1920201, at *2 (S.D. Cal. Apr. 24, 2018) (taking judicial notice of trademark materials generated by the USPTO and California Secretary of State); Benabou v. Seng Jin Cheo, No. 2:19-CV-04619-R-SS, 2019 WL 8017820, at *3 (C.D. Cal. Nov. 8, 2019) (judicially noticing a group of "government trademark records"); U.S., ex rel. Modglin v. DJO Glob. Inc., 114 F. Supp. 3d 993, 1008 (C.D. Cal. 2015) ("[T]he court can take judicial notice of [p]ublic records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies.") (citations and quotation marks omitted). Likewise, the Court finds that judicial notice of filings in the Previous Litigation is warranted as "a court may take judicial notice of matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Finally, with respect to the documents from non-governmental website, courts in this circuit have held

that documents on "publicly available websites" are proper subjects of judicial notice. See Calhoun v. Google LLC, No. 20-CV-05146-LHK, 2021 WL 1056532, at *5 (N.D. Cal. Mar. 17, 2021). Accordingly, the Court takes judicial notice of each of the documents submitted by the WOW Parties and RMG. While the Court takes judicial notice of the parties' judicially noticed exhibits, it does not accept them for the truth of the matters asserted therein. Lee, 250 F.3d at 688–89.

Accordingly, the WOW Parties' requests for judicial notice are **GRANTED**, and RMG's request for judicial notice is **GRANTED**.

**B. RMG's Trademark and Unfair Competition Claims**

The WOW Parties move for partial summary judgment of RMG's trademark and unfair competition claims, namely, RMG's claims for (1) trademark infringement pursuant to 15 U.S.C § 1125 ("the Lanham Act"); (2) California common law trademark infringement; (3) unfair competition pursuant to the Lanham Act; (4) California common law unfair competition; (5) unfair competition in violation of California Business and Professions Code § 17200, et. seq. ("UCL").

When trademark and unfair competition claims are based on the same allegedly infringing conduct, courts apply the same analysis to those claims. See 15 U.S.C. §§ 1114, 1125(a); see also E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1288 n.2 (9th Cir. 1992) (noting that elements of infringement and unfair competition claims are essentially the same, and their respective rulings "stand or fall together"); Ingrid & Isabel, LLC v. Baby Be Mine, LLC, 70 F. Supp. 3d 1105, 1134 (N.D. Cal. 2014) ("To successfully maintain an action for . . . false designation of origin [or] unfair competition under the Lanham Act or California law, plaintiff must show that it has a valid trademark and that defendant's use of the mark is likely to cause confusion"). WOW has also alleged claims for California statutory and common law unfair competition, and because these California claims are "substantially congruent" with Lanham Act claims, these claims can be analyzed simultaneously with plaintiff's other trademark infringement and unfair competition claims. Playboy Enters. v. Netscape. Commc'ns Corp., 354 F.3d 1020, 1024 n. 10 (9th Cir. 2004). Finally, courts in the Ninth Circuit jointly analyze claims for federal trademark infringement and California common law trademark

infringement. See Ketab Corp. v. Mesriani L. Grp., No. 2:14-cv-07241-RSWL (MRW), 2015 WL 12655670, at *3 (C.D. Cal. Feb. 6, 2015). As such, for purposes of the instant motion, the Court will address RMG's first through fifth claims together.

To prevail on a claim for trademark infringement under the Lanham Act, a plaintiff must prove: (1) ownership of a valid trademark; (2) use of the mark without its consent; and (3) that such use is likely to cause confusion. Credit One Corp v. Credit One Financial, Inc., 661 F. Supp. 2d 1134, 1137 (C.D. Cal. 2009); see also Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1202 (9th Cir. 2012). The ownership of a valid trademark is established through priority of use in commerce. Sengoku Works Ltd. v. RMC Int'l, Ltd., 96 F.3d 1217, 1219 (9th Cir.), as modified, 97 F.3d 1460 (9th Cir. 1996). A mark is "deemed to be in use in commerce … on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce. Rearden, 683 F.3d at 1204. In determining whether the two elements of the "use in commerce" test are satisfied, the Ninth Circuit follows a "totality of the circumstances" approach that turns on showing: (1) adoption of the mark, and (2) use that is "sufficiently public to identify or distinguish marked goods in an appropriate segment of the public mind." Id. "'Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena.'" Rearden LLC, 683 F.3d at 1202 (quoting Interstellar Starship Servs., Ltd. v. Epix Inc., 184 F.3d 1107, 1109 (9th Cir.1999))

The WOW Parties argue that the Court should grant summary judgment on RMG's trademark and unfair competition claims because RMG cannot prove ownership of the PNS Marks, because RMG fails to prove WOW's use of the RMG's marks is without its consent, and because the PNS Marks, as used by RMG, are descriptive and not entitled to trademark protection. The WOW Parties also contend that any common law trademark rights owned by RMG are limited in geographic scope. The Court now addresses these arguments in turn.

1. Ownership of the PNS Marks

The Lanham Act requires "'the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a mark.'" Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1156 (9th Cir. 2001) (quoting 15 U.S.C. § 1127). "For both goods and services, the

'use in commerce' requirement includes (1) an element of actual use, and (2) an element of display." Id. at 1159. As noted previously, in the Ninth Circuit, "the totality of the circumstances must be employed to determine whether a service mark has been adequately used in commerce so as to gain the protection of the Lanham Act." Chance, 242 F.3d 1151 at 1156. "In applying this approach, the district courts should be guided in their consideration of non-sales activities by factors . . . such as the genuineness and commercial character of the activity, the determination of whether the mark was sufficiently public to identify or distinguish the marked service in an appropriate segment of the public mind as those of the holder of the mark, the scope of the non-sales activity relative to what would be a commercially reasonable attempt to market the service, the degree of ongoing activity of the holder to conduct the business using the mark, the amount of business transacted, and other similar factors which might distinguish whether a service has actually been 'rendered in commerce'" Id.

The parties' arguments center around whether there is a triable issue of material fact regarding whether RMG, through the RMG Pop-Up, adequately used the PNS Marks in commerce so as to gain the protection of the Lanham Act. With respect to the RMG Pop-Up, the WOW Parties argue that "none of the salvaged goods RMG sold were even marked with 'Pic 'N' Save,'" that "[t]he only signage inside the store was WOW's own signboard, wrapped in plastic, sitting inconspicuously among the salvaged goods," and that "RMG cannot show that its minimal use of WOW's logo featuring the PNS Mark created an association among consumers generally between the mark and RMG." Mot. at 22-23 (emphases excluded). Moreover, the WOW Parties contend that "[a] product or service that is 'rushed to market solely to reserve its right in the mark' is 'not bona fide use in commerce'" (quoting Soc. Techs. LLC v. Apple Inc., 4 F.4th 811, 819 (9th Cir. 2021)), and that "RMG's rush to haphazardly sell a few fire-damaged goods from a warehouse is merely an attempt to reserve rights to later sue WOW," especially where "RMG fully knew that WOW was planning to open retail stores under the PNS Marks." Mot. at 24.

In opposition, RMG contends that its commercial use of the PNS Outlets mark predates the WOW Parties' use of the PNS Bargains marks. Opp. at 15-18 (citing RMG UF Nos. 63-67; Dkt 6, ¶ 35). In particular, RMG contends that it opened the RMG Pop-Up in November 2019 under the PNS Outlets mark, and advertised the store through signage inside the store, banners outside the store, 1,000 flyers distributed throughout the

community, and online advertisements. Opp. at 17. Moreover, RMG claims that "[a]lthough the pop-up store closed in March 2020 due to the Covid-19 health crisis, RMG continued to use and develop its marks by obtaining a California trademark registration and by opening a store in Ontario, California." Id. Finally, RMG contends that the WOW Parties' argument that the RMG Pop-Up was opened for the purpose of reserving rights against WOW is not supported by any evidence. Id. at 21-22.

In reply, the WOW Parties contend that the RMG Pop-Up and RMG's corresponding advertising efforts failed to "distinguish the mark in an appropriate segment of the public" and therefore fail establish RMG's ownership of any trademark rights over the PNS Marks. Reply at 6-11 (citing Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp., 174 F.3d 1036, 1052 (9th Cir. 1999)). The WOW Parties add the RMG's burden in creating an association with the PNS Marks "is made even harder where, as here, there are numerous other third parties making consumer impressions with the same or similar marks before [or] at the same time," which "'undermines any association' in the public that RMG might have made." Reply at 10 (quoting Future Domain Corp. v. Trantor Sys. Ltd., No. C 93 0812 TEH, 1993 WL 270522, at *8 (N.D. Cal. May 3, 1993)). Moreover, the WOW Parties contend that RMG "offers zero evidence" that "consumers who saw RMG's use of PIC 'N' SAVE associated that use with RMG, and not with another entity." Reply at 10-11. The WOW Parties also contend that, to the extent RMG obtained common law trademark rights from the RMG Pop-Up, those trademark rights ended when RMG closed the RMG Pop-Up in March 2020. Id. at 11. Finally, the WOW Parties maintain their contention that RMG opened the RMG Pop-Up to reserve rights to later sue WOW because "RMG provides no other remotely believable motive for rushing to open a pop-up warehouse store in the back of a warehouse in Commerce, CA for a few months while RMG looked for other retail space." Id. at 21-23.

The Court finds and concludes that there is a triable issue of material fact regarding whether RMG has met the "use in commerce" test, and that therefore there is a triable issue of material fact regarding whether RMG has valid ownership rights in the PNS Marks. "For both goods and services, the 'use in commerce' requirement includes (1) an element of actual use, and (2) an element of display." Chance, 242 F.3d at 1159. Here, RMG used the PNS Marks in conjunction with sales made at the RMG Pop-Up between November or December 2019 and March or April 2020. The PNS Marks were displayed inside the RMG

Pop-Up, as well as distributed to the local community via flyers. Then, after the RMG Pop-Up closed during the pandemic, RMG proceeded to open the Ontario Store in November 2020 (the same month that WOW opened its Anaheim Store). The Ontario Store likewise features an element of use and display, including a prominent exterior sign featuring the PNS Marks. Moreover, it is undisputed that RMG used the PNS Marks in connection with the actual sale of goods prior to any such use by WOW. See Sengoku Works Ltd., 96 F.3d at 1219 ("To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."). Accordingly, in the fact intensive trademark dispute context, where summary judgment is disfavored, RMG has raised a triable issue of material fact regarding ownership of the PNS Marks.

The WOW Parties ask this Court to conclude as a matter of law that RMG opened the RMG Pop-Up to reserve rights to later sue WOW. This inquiry is appropriate given that the Lanham Act requires "'the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a mark.'" Chance, 242 F.3d at 1156 (quoting 15 U.S.C. § 1127). However, while the RMG Pop-Up was somewhat informal, that is the nature of pop-up business, and the Court cannot conclude as a matter of law that RMG Pop-Up was developed "merely to reserve" the PNS Marks. The Court notes that the evidence is undisputed that RMG was exploring business opportunities featuring the PNS Marks as far back as 2012, when it filed a trademark application with the USPTO for the use of a mark titled "PIC 'N' SAVE Baragins.Closeouts." Dkt. 55-2 (RMG RJN, Ex. 1). Moreover, even without the RMG Pop-Up, Sherwin and Miller's complex and highly disputed business relationship prior to their falling out and the near-simultaneous openings of RMG's Ontario Store and WOW's Anaheim Store would create factual issues regarding ownership of the PNS Marks that would preclude summary judgment. Finally, the WOW Parties' arguments regarding consumer impressions and consumer associations are fact-intensive and unsupported by any consumer research.

The WOW Parties rely on Soc. Techs. LLC, where the Ninth Circuit upheld a district court's decision to enter summary judgment for defendant alleged infringer because it found that plaintiff's use of the "MEMOJI" mark did not constitute bona fide "use in commerce" under the Lanham Act. 4 F.4th at 819. The Court finds that the facts in Soc.

Techs. LLC are distinguishable from those here in that, there, "the evidence unequivocally showed that [plaintiff] had no bona fide use of the MEMOJI mark in commerce, and that it rushed to release its Memoji application solely to reserve its rights in the MEMOJI mark and form the basis of a lawsuit against [defendant]." Id. at 820. Here, the evidence does not "unequivocally" show that RMG had no bona fide use of the PNS Marks in commerce, or that it rushed the RMG Pop-Up "solely to reserve its rights . . . and form the basis of a lawsuit." Id. Moreover, even in Soc. Techs. LLC, the Ninth Circuit stated that "[b]y their nature, trademark disputes are highly fact intensive inquiries, so we are reluctant to decide them at the summary judgment stage except where it is unequivocally clear that there is no triable issue of fact." Id. at 820.

As a final note, there is an active federal registration for the service mark "Pick 'N' Save," which is owned by Roundy's Inc, a Wisconsin corporation. Dkt. 64-8 (WOW RJN No. 2, Ex. 12). According to the record currently before the Court, Roundy's Inc. does not appear to currently utilizing the "Pick 'N' Save" service mark in Southern California (or anywhere else). "[I]t is use, not registration, that creates the underlying exclusive right to a mark." Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n., 333 F. Supp. 2d 975, 980 (D. Or. 2004). Accordingly, Roundy's Inc.'s ownership of a federal trademark registration for "Pick 'N' Save," which does not appear to be currently in use in commerce in Southern California, is not an appropriate basis for granting summary judgment to the WOW Parties on RMG's trademark infringement claims. See Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1127 (9th Cir. 2006).

*a. The Lawfulness of RMG's Use of the PNS Marks*

Another set of arguments revolves around whether RMG's use of the PNS Marks in connection with the RMG Pop-Up was unlawful, and therefore fails to give rise to trademark priority. "It has long been the policy of the PTO's Trademark Trial and Appeal Board that use in commerce only creates trademark rights when the use is lawful. . . . [the Ninth Circuit] [] agree[s] with the PTO's policy and hold that only lawful use in commerce can give rise to trademark priority." CreAgri, Inc. v. USANA Health Scis., Inc., 474 F.3d 626, 630 (9th Cir. 2007). However, "unlawful conduct [does] not preclude trademark protection if it [is] 'immaterial,' namely if it [is] not 'of such gravity and significance that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09505-CAS-AFMx | Date | November 9, 2021 |
| Title | RE-MARKETING GROUP, INC. V. MARK MILLER, ET AL. | | |

the usage [of the mark] . . . as a matter of law, [can] create no trademark rights.'" S. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 931 (9th Cir. 2014) (quoting CreAgri, Inc., 474 F.3d at 633).

The WOW Parties argue that RMG's use of the PNS Marks was unlawful because "RMG had no right to use WOW's exclusive logo" and because RMG "admits it failed to collect sales tax on any sale." Mot. at 23-24.

RMG contends that its use of the PNS Outlets mark was not unlawful. Opp. at 18. With respect to the WOW Parties' argument that RMG illegally used WOW's logo, RMG claims that "the evidence shows that there exists triable issues of fact regarding who owned the rights to the logos," in that they were "created for the benefit of the joint venture." Id. at 18. Moreover, RMG argues that established case law confirms that the WOW Parties are not entitled to any copyright protection in the PNS Marks, because they do not possess sufficient creativity. Id. at 19 (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991)). With respect to the sales tax issue, RMG argues that the applicable law "does not require a retailer to collect sales tax from its customers, but rather to pay taxes based off of a percentage of its gross sales." Opp. at 20 (citing Cal. Rev. and Tax Code § 6051). RMG contends it satisfied this legal obligation by reporting the RMG-Pop-Up's daily sales for tax purposes, and that the WOW Parties submit no evidence to the contrary. Id. Finally, RMG cites case law suggesting that only material violations of law will defeat a party's trademark rights, and RMG's failure to keep certain corporate records is not material to the trademark claims at issue here. Id. at 20-21 (citing S. Cal. Darts Ass'n, 762 F.3d at 931-932).

In reply, the WOW Parties reiterate their argument that RMG cannot derive common law rights from sales at the RMG Pop-Up because "RMG's purported sales were not bona fide or lawful retail sales." Reply at 12-16. In response to RMG's argument that it paid the appropriate sales taxes, the WOW Parties contend that "[a] retailer in California is required to specifically collect the tax from the consumer or post a visible notice that the tax is included in the sales price." Id. at 12 (citing Cal. Code. Regs., Title 18, § 1700; Civil Code §1656.1). The WOW Parties add RMG's argument that the logo was created as a "joint venture" is unavailing given that Miller paid for the logo and that the rights for the logo were assigned only to WOW. Reply at 16-17. Along the same lines, the WOW Parties

claim that RMG has not presented any evidence that Sherwin and Miller established a joint venture, which under California law requires that the parties to a joint venture 'agree to share the profits and losses of the business,' that each party 'has an ownership interest in the business,' and that each member 'have joint control over the business.'" Id. at 17 (citing Judicial Council of California Civil Jury Instruction (CACI) No. 3712). Finally, the WOW Parties contend that even if WOW owns no copyrights in the logos, "RMG's unauthorized use of WOW's logo is unlawful based on unfair competition and conversion." Reply at 19. With respect to unfair competition, the WOW Parties' note that "[t]he tort of unfair competition is extremely flexible, and courts are given wide discretion to determine whether conduct is 'unfair.'" Id. at 19 (citing See 1 J. McCarthy, Trademarks and Unfair Competition, §§ 1.3–1.4 (2d ed. 1984)). With respect to conversion, the WOW Parties argue that "even conversion of intangible property constitutes conversion." Reply at 19 (citing Welco Elecs., Inc. v. Mora, 223 Cal. App. 4th 202, 209 (2014)).

While the evidence suggests RMG failed to collect sales taxes from its customers at the RMG Pop-Up, the evidence is inconclusive regarding whether RMG nevertheless paid the appropriate sales taxes.[7] The WOW Parties submit no evidence demonstrating that RMG failed to pay the appropriate sales taxes, instead arguing that RMG should have either collected sales taxes from its customers or posted a visible notice at the RMG Pop-Up stating that the sales tax was included in the sales price. In S. Cal. Darts Ass'n, the Ninth Circuit held that "[e]ven assuming that SoCal unlawfully failed to pay taxes, its misconduct

[7] At oral argument, counsel for the WOW Parties argued that RMG failed to adduce evidence creating a triable issue of fact regarding whether RMG paid sales taxes for the sales it made at the RMG Pop-Up. Specifically, counsel for the WOW Parties pointed to the portions of Sherwin's deposition testimony wherein he stated RMG did not determine the total volume of sales for the RMG Pop-Up, and that RMG's accountant handled calculating RMG's taxable revenue from the RMG Pop-Up using bank deposits. See Dkt. 46-5 (Bleeker Decl., Ex. 1 (Sherwin Depo. Tr.) at 48). The Court finds that this argument fails to take into account the fact that the WOW Parties failed to satisfy their initial burden of demonstrating that RMG failed to pay the appropriate sales taxes. If anything, Sherwin's deposition testimony emphasizes that, on the record before it, the Court is unable to conclusively determine whether RMG paid the appropriate sales taxes.

would be unrelated to the purpose of the federal trademark laws and, therefore, collateral and immaterial." 762 F.3d at 931-32. The same reasoning applies here.[8] Accordingly, granting summary judgment on the grounds that RMG failed to collect sales taxes or failed to post a visible notice regarding the inclusion of the sales tax in the purchase price would be inappropriate. At minimum, there is a triable issue of material fact regarding whether RMG actually paid the necessary taxes, which precludes summary judgment.

Likewise, the Court finds the WOW Parties' argument that RMG's use of the PNS Marks was unlawful because RMG had no right to use WOW's exclusive logo assumes facts that are not in evidence. While the WOW Parties paid for and commissioned the logo in February 2018, they did so during a period in time where Sherwin and Miller were working together cooperatively. There was even an assignment of copyright to RMG prepared, although it was not executed. Over a year after the logo was commissioned, in March 2019, it was RMG that filed a federal an intent-to-use trademark application for "PIC'N'SAVE OUTLETS BARGAINS & CLOSE-OUTS." At this time, the parties understood that any trademark rights arising from the intent-to-use application would be licensed to a new corporation created to exploit the PNS Marks. Given the disputed nature

[8] At oral argument, counsel for the WOW Parties attempted to distinguish S. Cal. Darts Ass'n on the grounds that, there, the plaintiff entity had been in existence for many years and had been using the mark at issue for a substantial amount of time, including periods of time where their use of the mark was unquestionably lawful. Despite this argument, the Court reiterates that the Ninth Circuit in S. Cal. Darts Ass'n unambiguously stated, without specific reference to the facts in the case, that "[e]ven assuming that [plaintiff] unlawfully failed to pay taxes, its misconduct would be unrelated to the purpose of the federal trademark laws and, therefore, collateral and immaterial." 762 F.3d at 931–32. Moreover, in reaching its conclusion, the S. Cal. Darts Ass'n court noted that "[defendant] has offered only unsubstantiated accusations of [plaintiff's] alleged illegal acts . . . therefore, [there is] no basis upon which a reasonable fact finder could conclude that SoCal's use of the contested marks has been 'unlawful,' let alone unlawful in a relevant way." Id. at 932. Accordingly, even if the failure to pay taxes *could* preclude trademark priority, as was the case in S. Cal. Darts Ass'n, there remains a fact dispute regarding whether RMG violated tax law that precludes granting summary judgment.

of the relationship between Sherwin and Miller at the time the logo was commissioned in February 2018, which includes disputes regarding whether a joint venture was ever created, the Court concludes that there is a triable issue of material fact regarding whether the WOW Parties are the sole owners of the PNS logo commissioned in February 2018. The issue of fact precludes granting summary judgment on the grounds that RMG's use of the PNS logo was unlawful.

*b. The Lanham Act's Interstate Commerce Requirement*

The Lanham Act provides that the term "commerce" as used therein "means all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. Accordingly, the Supreme Court has stated that the Lanham Act has a "sweeping reach." Steele v. Bulova Watch Co., 344 U.S. 280, 287 (1952); see also Larry Harmon Pictures Corp. v. Williams Rest. Corp., 929 F.2d 662, 666 (Fed. Cir. 1991) ("The Lanham Act by its terms extends to all commerce which Congress may regulate.").

The WOW Parties argue that "[t]rademark rights under the Lanham Act require use in interstate commerce," and that "RMG failed to produce any evidence of any use of any PNS mark in interstate commerce." Mot. at 25 (citing 15 U.S.C. §§ 1125, 1127).

In opposition, RMG argues that the Lanham Act's interstate commerce requirement is satisfied here because RMG purchased goods from out of state to sell at the RMG Pop-Up, and because RMG "posted online advertisements through websites like OfferUp and Craigslist.org." Opp. at 23 (citing Sherwin Decl., ¶ 63). Moreover, RMG argues that "the Lanham Act's interstate commerce requirement can be satisfied through intrastate commerce which affects interstate commerce." Opp. at 23 (citing Thompson Tank & Mfg. Co. v. Thompson, 693 F.2d 991, 993 (9th Cir. 1982)).

In reply, the WOW Parties assert that RMG's arguments are without merit. Reply at 23-24. First, the Wow Parties argue that the fact that RMG purchased goods from out of state for the RMG Pop-Up is not sufficient evidence of trademark use in interstate commerce because "RMG is claiming common law trademark rights for a service (retail sales), not goods. RMG is therefore required to prove that it used its mark, as a source identifier, in connection with services that it rendered in more than one state." Id. at 23 (citing 15 U.S.C. § 1127). With respect to RMG's use of online advertisements, the WOW

Parties contend that RMG kept no evidence of such advertisements, and that "RMG failed to offer any documentation to corroborate that the words PIC 'N' SAVE were used at all, let alone used as a source identifier." Reply at 24. Moreover, the WOW Parties Submit, given that "RMG deleted and therefore failed to produce any evidence of how the words Pic 'N Save or any logo actually appeared on any purported app . . . [t]hese ads [] cannot form the basis of any claim of use at all, let alone use in interstate commerce." Id.

The Court finds and concludes there is a triable issue of fact regarding whether RMG satisfies the Lanham Act's interstate commerce requirement. "Communications made on public websites are made in interstate commerce." Nat'l Grange of the Ord. of Patrons of Husbandry v. California Guild, 334 F. Supp. 3d 1057, 1065 (E.D. Cal. 2018) (citing United States v. Sutcliffe, 505 F.3d 944, 952-53 (9th Cir. 2007)). Moreover, "[i]t is well settled that [interstate] 'commerce' includes intrastate commerce which 'affects' interstate commerce." Thompson Tank & Mfg. Co., 693 F.2d at 993. Accordingly, viewing the evidence in the light most favorable to RMG, the Court finds that the sales at the RMG Pop-Up *and* at RMG's Ontario Store, and associated online advertisements, are sufficient to raise a triable issue regarding whether RMG has met the Lanham Act's interstate commerce requirement. See Golden Door, Inc. v. Odisho, 437 F. Supp. 956, 962 (N.D. Cal. 1977) (Online advertisements intended to draw clients from out-of-state sufficient for services provided only locally.); Iglesia Ni Cristo v. Cayabyab, No. 18-CV-00561-BLF, 2019 WL 3997474 (N.D. Cal. Aug. 23, 2019) ("Plaintiffs' allegations of Defendants' online use of [plaintiffs'] trademarks as their own is sufficient to meet the interstate commerce requirement"); Stauffer v. Exley, 184 F.2d 962, 966 (9th Cir. 1950) ("An infringement committed in intrastate commerce but affecting interstate commerce could clearly be regulated by Congress and thus would be within the present [Lanham] Act.").

2. Consent to WOW's Use of the PNS Marks

As noted previously, to prevail on a claim for trademark infringement under the Lanham Act, a plaintiff must prove that the use of the mark was without its consent. Credit One Corp., 661 F. Supp. 2d at 1137.

The WOW Parties argue that RMG cannot prove WOW's use of the PNS logo is without RMG's consent because WOW's ownership of the rights to the PNS logo

"precludes such a claim." Mot. at 25. Moreover, the WOW Parties argue that "RMG entered into a written lease agreement with WOW in September 2019, the terms of which require WOW to use the PNS marks in connection with retail services." Id. According to the WOW Parties, this lease constitutes consent. Further, the WOW Parties argue that "in March of 2019, when RMG was going to be the placeholder until the new company was created, RMG agreed to exclusively license any rights it may gain in the PNS Mark to NewCo, i.e., WOW, and then assign the rights if it obtained a trademark registration." Id. at 26. Finally, the WOW Parties contend that RMG is legally estopped from seeking to enjoin WOW's use of the PNS Marks because "[b]ased on Mr. Sherwin's representations and also on WOW's contractual obligations, WOW sought and obtained investors for its stores operating under the PNS Mark and sought and obtained leases to open its retail stores using the PNS Mark." Id. at 26.

In opposition, RMG claims that "Defendants' efforts to argue that an unsigned written lease provides proof of consent overlooks the fact that the lease was being negotiated amidst the parties' joint venture when WOW's use of the PNS Outlets mark was with permission of RMG and that RMG expressly revoked its permission at the September 30, 2019 meeting when Miller disclosed that he would no longer participate in the joint venture." Opp. at 23-24. Moreover, RMG contends that "material questions of fact exist with respect to Defendants' claim that RMG promised to assign its trademark rights to WOW. The evidence establishes that the agreement all along was that RMG would license its rights to WOW and that no assignment would take place unless RMG was given an equity interest in the parties' venture." Id. at 24. Finally, with respect to the WOW Parties' estoppel argument, RMG argues that defendants have not proved that "RMG made misrepresentations or promises regarding its intent to assign its trademark rights to Defendants and that Defendants relied on those statements to their detriment" given that Sherwin repeatedly referenced a license of the PNS marks, not an assignment. Id.

In reply, the WOW Parties contend that the parties "understood the lease terms were valid and operated under those terms." Reply at 25. Accordingly, the WOW Parties contend that "RMG cannot (and does not) claim it did not know of any consent to WOW's use of the PNS marks through at least December 21, 2019." Id. at 26. With respect to the WOW Parties' estoppel argument, the WOW Parties assert that Miller relied on Sherwin's "written promises in March 2019 to license trademark rights and then assign the rights once

a registration issues, without precondition . . . to set up WOW, entice investors, and start a company that would use PIC 'N' SAVE as a mark." Id. Finally, the WOW Parties argue that even if Sherwin revoked consent on September 30, 2019, "WOW had already relied on Mr. Sherwin's written statements that RMG would assign and license any rights, with no other preconditions." Id.

The Court finds that, to the extent RMG consented to WOW's use of the PNS Marks, including pursuant to the parties' lease agreement, such consent was revoked during Sherwin and Miller's September 30, 2019 meeting, wherein Sherwin stated that he believed RMG owned the rights to use the PNS Marks, and that he was willing to go to Court to enforce RMG's purported rights in the PNS Marks. See RMG UF No. 44. Clearly, the key issue in this case is ownership, and not consent.

With respect to the WOW Parties' estoppel argument, the Court finds that, at a minimum, there is a triable issue of material fact regarding whether Sherwin agreed on behalf of RMG to license any rights in the PNS Marks "without precondition," given that Sherwin only intended to license the PNS Marks from RMG to WOW prior to the parties' falling out on September 30, 2019. And, even then, the record does not establish that any license of the PNS Marks from RMG to WOW would be free-of-charge or otherwise without any preconditions. Accordingly, an issue of material fact exists regarding whether WOW's use of the PNS marks is with RMG's consent. See Anlin Indus., Inc. v. Burgess, No. 1:05cv1317 DLB, 2009 WL 1884364, at *6 (E.D. Cal. June 26, 2009) (denying summary judgment of trademark infringement claims because "[g]enuine issues of material fact remain as to consent, i.e., if and when consent was given").

3. Descriptiveness of the PNS Marks

"To be a trademark, a designation must be 'distinctive.'" J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 4:13 (5th ed. 2021). In the Ninth Circuit, "the imagination test is [the] 'primary criterion' for evaluating distinctiveness." Zobmondo Ent., LLC v. Falls Media, LLC, 602 F.3d 1108, 1116 (9th Cir. 2010). The imagination test "asks whether 'imagination or a mental leap is required in order to reach a conclusion as to the nature of the product being referenced.'" Id. at 1115 (quoting Rudolph Int'l, Inc. v. Realys, Inc., 482 F.3d 1195, 1198 (9th Cir. 2007). "[T]he burden to

show that there is no genuine issue of material fact is on the moving party. . . while the non-moving party [] gets the benefit of reasonable inferences." Zobmondo Ent., LLC, 602 F.3d at 1115.

The WOW Parties claim that "the PNS Mark, as used by RMG, is a descriptive mark" that is entitled to protection "'only if it has acquired distinctiveness through secondary meaning.'" Mot. at 26 (quoting Marketquest Grp., Inc. v. BIC Corp., 316 F. Supp. 3d. 1234, 1257 (S.D. Cal. 2018)). The WOW Parties argue that RMG "failed to offer any evidence to support a claim of secondary meaning" and that therefore "[a]n order that RMG does not own trademark rights in the PNS Mark is [] warranted." Mot. at 27. Moreover, the WOW Parties assert that RMG has admitted that the words "Pic 'N' Save" is descriptive in nature. Id. at 26 (citing Dkt. No. 46-5 (Sherwin Depo. Tr.) at 213:21-23 (Q: Do the words "Pic 'N' Save describe the type of retail store you're operating? A: Yes.))

In opposition, RMG contends that the PNS Marks are "suggestive," rather than "descriptive," in that "a consumer must engage in an imaginative leap to understand that the phrase "Pic N Save" refers to a retail outlet where consumers can purchase a wide variety of quality products at below market prices." Opp. at 26. Moreover, RMG contends that the WOW Parties "make no effort to explain how or why Mr. Sherwin's testimony establishes the distinctive nature of the marks." Id. at 24-25. Finally, RMG contends that "the fact that other federal registrations were issued for the mark 'PIC 'N' SAVE' provides further proof of the descriptiveness of RMG's PNS Outlets mark." Id. at 26.

In reply, the WOW Parties claim that RMG offers no evidence suggesting that its use of "Pic N Save" is suggestive, including no surveys or expert opinions. Reply at 26-27. The WOW Parties also reiterate their assertion that Sherwin admitted at his deposition that "the words Pic 'N Save describe the services that RMG provided." Id. at 26. Finally, with respect to the federal registrations for marks similar to those at issue in this litigation, the WOW Parties argue that "[h]ow other companies use a mark is irrelevant to how RMG uses the mark." Id. at 27.

Whether the PNS Marks, as used by RMG, are descriptive, and, if so, whether they have acquired secondary meaning, are clearly questions of fact. Undoubtedly, these questions of fact are made more complex by the prior use of variations of the PNS Marks.

In any event, the Court is unable to meaningfully analyze these questions on the factual record before it. In order to determine protectability, consumer surveys or other research is necessary. However, neither RMG nor the WOW Parties have submitted such evidence. Moreover, both parties, based on their business activity and their claims in this litigation, are working to establish the PNS Marks as protectible trademarks. Accordingly, it is plain that the parties believe that the PNS Marks may have secondary meaning.

This Court's attempt to apply the imagination test is inconclusive. It may require a mental leap to understand that RMG associates "Pic 'N' Save" the phrase with the sale of a variety discount retail goods. In Zobmondo Ent., LLC, the Ninth Circuit stated that "[g]iven the record before us, which lacks comprehensive consumer surveys, we cannot say with confidence precisely what consumers will understand the [the phrase at issue] to mean, nor are we confident that our own understanding of the phrase is an adequate substitute." 602 F.3d at 1116. Accordingly, "giv[ing] all reasonable inferences" to the non-movant, the Zobmondo Ent., LLC court "concluded that that the imagination test is inconclusive by itself to determine if the challenged mark is descriptive or suggestive[.]" Id. at 1117. The same reasoning applies here. Summary judgment premised on the purported descriptiveness of the PNS Marks is inappropriate based on the factual record currently before the Court. The fact that the USPTO has granted federal registrations for "Pic 'N' Save" and "Pick 'N' Save" (see Dkt. 64-8 (WOW RJN No. 2, Ex. 12); Dkt. 55-2 (RMG RJN, Exs. 2-3)) counsels against finding as a matter of law that the PNS Marks, as used by RMG, are descriptive.

4. The Geographic Scope of RMG's Use of the PNS Marks

"To establish common law trademark rights in the absence of federal registration, a plaintiff must plead and prove that it is the senior user of the mark with sufficient market penetration to preclude the defendant from using the mark in a specific geographic market." Hanginout, Inc. v. Google, Inc., 54 F. Supp. 3d 1109, 1118 (S.D. Cal. 2014). "The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion." Brookfield Commc'ns, Inc., 174 F.3d at 1047.

The WOW Parties argue that "[t]o the extent there was any bona fide use at all prior to WOW's use, or use sufficient to create an association between the mark and the source, it was limited, at best, to the City of Commerce, California and such use ended in March 2019 and has never resumed." Mot. at 27.

In opposition, RMG contends that WOW misstates the law in that "the fact that RMG does not have records to show the geographic origin of the pop-up store's customers is not fatal to RMG's trademark infringement claims against WOW" because "under relevant Ninth Circuit law, RMG can still seek to enjoin WOW's use of the infringing marks by demonstrating that WOW is using the marks in an area that falls within RMG's 'zone of natural expansion.'" Opp. at 26 (citing Brookfield Commc'ns, Inc., 174 F.3d at 1047). RMG contends discussions regarding opening stores in different areas of Southern California, including Orange County, along with RMG's online advertisements, establish that RMG "intended for the store's reach to extend beyond the City of Commerce." Opp. at 27.

In reply, the WOW Parties contend that RMG's attempt to rely on the "Zone of Natural Expansion" is inappropriate because RMG "fails to prove that it established sufficient 'market penetration in a specified geographic area' to rely on this theory." Reply at 27 (quoting Hanginout, Inc., 54 F. Supp. 3d at 1124). Moreover, the WOW Parties reiterate that "whatever common law rights RMG had obtained as of March 2020 (if any at all), ended when it closed its pop-up warehouse store." Reply at 28 (citing Bazaar Del Mundo Inc., 448 F.3d at 1127). Accordingly, the WOW Parties claim that "any common law rights were limited (at best) to Commerce, CA, and RMG's claims seeking to enjoin RMG's use outside of Commerce, CA therefore fail as a matter of law." Id.

This Court has already determined that RMG has raised a triable issue of material fact regarding whether it has sufficiently used the PNS Marks in commerce so as to gain the protection of the Lanham Act. With respect to the question of whether RMG has established "sufficient market penetration in a specified geographic area" to be able to rely upon the "zone of natural expansion" theory in order to enjoin WOW's activities outside of Commerce, CA, the Court likewise holds that a triable issue of material facts exist, and declines to grant summary judgment on this basis. Importantly, the WOW Parties rely on cases where courts denied a preliminary injunction on the basis that the

movant failed to present sufficient evidence of market penetration in a specific geographic area. See Hanginout, Inc., 54 F. Supp. 3d at 1136 ("Hanginout has failed to present sufficient evidence of its market penetration in a specific geographic area to warrant preliminary injunctive relief at this juncture."); Bazaar Del Mundo Inc., 448 F.3d at 1124 ("Without the State adducing sufficient evidence of ownership of the marks, and in view of the registration and continued use of the marks by Bazaar del Mundo, we cannot say that the district court abused its discretion in declining to enjoin Bazaar del Mundo's use of the marks[.]"). Here, however, RMG's burden is only to raise a triable issue of material fact. The RMG Pop-Up and RMG's Ontario Store, in conjunction with online advertisements and discussions regarding expansion, are sufficient to raise a triable issue of material fact regarding whether RMG has sufficient "market penetration in a specified geographic area," and therefore may rely upon the "zone of natural expansion" to enjoin WOW's use of the PNS Marks.[9] Given that the parties are both using the PNS Marks in Southern California, and in the exact same industry, narrowly limiting RMG's rights to Commerce, California would not provide a practicable solution to the dispute currently before the Court.

The WOW Parties' contention that RMG forfeited its common law rights in the PNS Marks because of the closure of the RMG Pop-Up in March or April of 2020, at the beginning of the pandemic, glosses over the fact that RMG continued its effort to exploit the PNS Marks despite the closure of the RMG Pop-Up, including applying for California state trademark registration and opening the Ontario Store in November 2020. This is far different from the factual situation in case the WOW Parties rely upon, Bazaar Del Mundo Inc., where the Ninth Circuit found that the use of the marks at issue "more than thirty-five years ago . . . was merely transitory," and therefore concluded that "even had

[9] At oral argument, counsel for the WOW Parties argued that, with respect to whether RMG has sufficient "market penetration in a specified geographic area," the Court should consider only evidence relating to the RMG Pop-Up. However, while the Court does not necessarily agree given the nearly concurrent openings of WOW's Anaheim Store and RMG's Ontario Store in November 2020, even if the Court only considered evidence related to the RMG Pop-Up, the inconclusive factual record regarding the extent of the RMG Pop-Up's market penetration would counsel against granting summary judgment.

[plaintiff] acquired seniority of use at one time, its failure to continue to use the marks in commerce would have allowed [defendant] as a junior user to acquire priority." 448 F.3d at 1127.

In accordance with the foregoing, the Court **DENIES** the WOW Parties' motion for partial summary judgment of RMG's claims for (1) trademark infringement pursuant to the Lanham Act; (2) California common law trademark infringement; (3) unfair competition pursuant to the Lanham Act; (4) California common law unfair competition; (5) unfair competition in violation of California Business and Professions Code.

**C. RMG's Malicious Prosecution Claim**

The WOW Parties also move for partial summary judgment of RMG's malicious prosecution claim. See Mot. at 28-30. "The elements of the tort of malicious prosecution are (1) a prior action commenced by or at the direction of the defendant and pursued to a legal termination in his favor; (2) brought without probable cause; and (3) initiated with malice." Lunsford v. Am. Guarantee & Liab. Ins. Co., 18 F.3d 653, 655 (9th Cir. 1994). "A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him." Soukup v. L. Offs. of Herbert Hafif, 39 Cal. 4th 260, 292 (2006) (citations and quotations omitted). "The 'malice' element . . . relates to the subjective intent or purpose with which the defendant acted in initiating the prior action. . . . The plaintiff must plead and prove actual ill will or some improper ulterior motive. Id. (citations and quotation omitted).

The WOW Parties contend that RMG's malicious prosecution claim fails because voluntary dismissal is not a decision on the merits. Mot. at 28-29. Moreover, the WOW Parties claim that probable cause is present given that when WOW re-filed its suit as a counterclaim, this Court denied RMG's motion to dismiss the counterclaim. Id. at 29 (citing Dkt. 28). Finally, the WOW Parties claim there is no evidence of malice. Mot. at 29-30.

In opposition, RMG contends that "a 'voluntary dismissal may be an implicit concession that the dismissing party cannot maintain the action and may constitute a decision on the merits.'" Opp. at 28 (quoting Eells v. Rosenblum, 36 Cal. App. 4th 1848,

1855 (1995)). Further, RMG argues "[w]here an action is voluntarily dismissed . . . the court must examine the records to 'see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed.'" Opp. at 28 (quoting Sycamore Ridge Apartments, LLC v. Naumann, 157 Cal. App. 4th 1385, 1399 (2007). In accordance with the foregoing, RMG asserts that the WOW Parties "voluntarily dismissed the prior action on the eve of the Court deciding RMG's Motion to Dismiss . . . because they knew that they would not prevail." Opp. at 29. Finally, with respect to the malice element, RMG contends that "'[b]ecause malice concerns the former plaintiff's actual mental state, it necessarily presents a question of fact.'" Opp. at 31 (quoting Drummond v. Desmarais, 176 Cal. App. 4th 439, 452 (2009).

In reply, the WOW Parties contend that RMG fails to raise triable issues of material fact because a voluntary dismissal "is not a decision on the merits" and "it is undisputed that WOW re-filed its claims against RMG in this case, and this Court denied RMG's motion to dismiss, holding that WOW has properly alleged facts to support its claims." Reply at 28. Moreover, the WOW Parties contend that even if the Court were to look into the reasons for dismissing, "RMG fails to offer any evidence of any improper motive." Id. The WOW Parties also argue that "WOW had reasonable grounds to bring suit after learning that Mr. Sherwin had used WOW's exclusive logo and trademark without WOW's permission." Id. at 29. In sum, the WOW Parties contend that "RMG fails to meet its burden to show how any reasonable juror could conclude WOW's primary purpose in seeking to stop RMG's use of WOW's logo and trademark was for any purpose other than to protect its logo, brand, and business." Id.

The Previous Litigation, which WOW filed on June 19, 2020 and voluntarily dismissed on September 22, 2020, included each of the five claims for relief WOW includes in its counterclaim, i.e., (1) trademark infringement pursuant to the Lanham Act (against all counterclaim defendants); (2) unfair competition pursuant to the Lanham Act (against RMG); (3) unfair competition in violation of the UCL (against RMG); (4) California common law unfair competition (against RMG); and (5) cancellation of California Trademark Registration pursuant to Cal. Bus. & Prof. Code § 14230 (against

RMG).[10] See Dkt. 12; Dkt 55-2 (WOW RJN NO. 1, Ex. 4). Moreover, the Previous Litigation contained substantially similar factual allegations as those alleged in WOW's counterclaim. Id. In sum, it is clear that the previous lawsuit included substantially the same claims, and was based on substantially the same facts, as the counterclaim currently before this Court. Id. Given that the Court denied the RMG Parties' motion to dismiss WOW's counterclaim in its entirely, the Court concludes that the Previous Lawsuit, which was based on substantially same claims and facts, was brought with probable cause. Accordingly, RMG is unable to raise a triable issue of fact regarding the second element of a malicious prosecution claim, i.e., that the prior action was brought without probable cause. See Lunsford, 18 F.3d at 655.

Moreover, while "[a] voluntary dismissal may be an implicit concession that the dismissing party cannot maintain the action and may constitute a decision on the merits," Eells, 36 Cal. App. 4th at 1855, RMG's contention that WOW "knew that [it] would not prevail" in the Previous Litigation is not supported by any evidence, and is belied by this Court's denial of the RMG Parties' motion to dismiss WOW's counterclaim. Accordingly, the Court **GRANTS** the WOW Parties' motion for partial summary judgment of RMG's malicious prosecution claim.

**D. WOW's Claim for Cancellation of RMG's California Trademark Registration**

Under Cal. Bus. & Prof. Code § 14230, "[t]he secretary shall cancel from the register . . . [a]ny registration concerning a mark with regard to which a court of competent jurisdiction finds any of the following: . . . (2) The registrant is not the owner of the mark. . . . (4) The registration was obtained fraudulently." Cal. Bus. & Prof. Code § 14230; see also Robi v. Five Platters, Inc., 918 F.2d 1439, 1444 (9th Cir. 1990) ("A party may seek cancellation of a registered trademark on the basis of fraud under 15

[10] In the Previous Litigation, WOW also asserted claims for Federal Copyright Infringement Under 17 U.S.C. §§ 101 et seq. (against RMG and Sherwin), California Copyright Infringement Pursuant to Cal. Civ. Code §§ 980 et seq. (against RMG and Sherwin), and conversion (against RMG). Dkt 55-2 (WOW RJN NO. 1, Ex. 4).

U.S.C. § 1064(c) by proving a false representation regarding a material fact, the registrant's knowledge or belief that the representation is false, the intent to induce reliance upon the misrepresentation and reasonable reliance thereon, and damages proximately resulting from the reliance."). Interpreting California's trademark statute with reference to analogous federal case law, the Ninth Circuit concluded in Grupo Gigante SA De CV v. Dallo & Co. that cancellation of a trademark on grounds of fraud requires a showing of "intent to deceive." 391 F.3d 1088, 1106 (9th Cir. 2004).

Pursuant to its counterclaim, the WOW Parties contend that RMG's California trademark registration should be cancelled because "RMG cannot prove ownership of the subject mark" and because RMG "committed fraud" in connection with its California trademark registration due to its failure to disclose RMG's failed federal applications associated with the PNS Marks. Mot. at 30-31.

In opposition, RMG reiterates that it has set forth "sufficient evidence to establish that it is the owner of the PNS Mark," and that therefore "WOW's request that RMG's California registration be cancelled . . . is without merit." Opp. at 32. Moreover, RMG notes that "a party seeking summary judgment on a cancellation claim must show that the registrant acted with an intent to deceive." Opp. at 32 (citing Grupo Gigante S.A. de C.V., 391 F.3d at 1105 (9th Cir. 2004); Robi, 918 F.2d at 1444). Applying this standard, RMG contends that the WOW Parties' have offered no evidence "show[ing] that Plaintiffs acted with an intent to deceive when they failed to include their federal applications in their California trademark registration." Opp. at 32.

In reply, the WOW Parties reiterate that RMG's "failed to provide evidence of bona fide, lawful, actual trademark use sufficient to obtain common law rights, and for this reason alone its state registration should be cancelled." Reply at 29. With respect to the question of fraudulent intent, the WOW Parties argue that after "getting rejected twice by the USPTO," "its failure to disclose when under an obligation to do so[] is evidence of fraudulent intent." Id. at 30. Finally, the WOW Parties contend that "RMG['s] attempt to throw its attorney under the bus by purporting to disclaim any knowledge of the application filed on its behalf" fails because "RMG provides no declaration from its attorney providing any other reason for failing to provide the required information for the Secretary of State to consider." Id. at 30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09505-CAS-AFMx | Date | November 9, 2021 |
| Title | RE-MARKETING GROUP, INC. V. MARK MILLER, ET AL. | | |

WOW "must establish beyond controversy every essential element of its" affirmative claim for cancellation of RMG's state trademark registration. S. California Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003). Here, genuine issues of material fact regarding RMG's intent preclude granting partial summary judgment of WOW's cancellation claim. See California Expanded Metal Prod. Co. v. Klein, No. C18-0659JLR, 2018 WL 6065644, at *9 (W.D. Wash. Nov. 20, 2018); see also Money Store v. Harriscorp Fin., Inc., 689 F.2d 666, 670 (7th Cir. 1982) ("Fraud will be deemed to exist only when there is a deliberate attempt to mislead the Patent Office into registering the mark."). The Court has already determined that there is a triable issue of material fact with respect to RMG's ownership of the PNS Marks, so it declines to grant summary judgment on the WOW Parties' cancellation claim pursuant to WOW's argument that RMG cannot prove ownership of the PNS Marks.

Accordingly, the Court **DENIES** WOW's motion for partial summary judgment of its fifth counterclaim for cancellation of RMG's California trademark registration pursuant to Cal. Bus. & Prof. Code § 14230.

## V. CONCLUSION

In accordance with the foregoing, the Court orders as follows:

1. The Court **GRANTS** the WOW Parties' requests for judicial notice.
2. The Court **GRANTS** RMG's request for judicial notice.
3. The Court **GRANTS** in part and **DENIES** in part the WOW Parties' motion for partial summary judgment.

IT IS SO ORDERED.

:

Initials of Preparer DR